Charles L. Post, State Bar No. 160443
Lukas J. Clary, State Bar No. 251519
**weintraub tobin chediak coleman grodin**
LAW CORPORATION
400 Capitol Mall, 11th Floor
Sacramento, California   95814
Telephone:   916/558-6000
Facsimile:   916/446-1611
Email: cpost@weintraub.com
            lclary@weintraub.com

Attorneys for Plaintiff
California Restaurant Association

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RESTAURANT ASSOCIATION, a California nonprofit mutual benefit corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY OF EMERYVILLE, a California municipal corporation,<br><br>        Defendant. | Case No.<br><br>COMPLAINT FOR:<br><br>(1) VIOLATION OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I, § 19 OF THE CALIFORNIA CONSTITUTION (TAKINGS);<br>(2) VIOLATION OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I, § 2 OF THE CALIFORNIA CONSTITUTION (FREE SPEECH);<br>(3) VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTIUTION AND ART. I, § 7 OF THE CALIFORNIA CONSTITUTION (EQUAL PROTECTION);<br>(4) VIOLATION OF ARTICLE VI, CLAUSE 2 OF THE UNITED STATES CONSTITUTION (SUPREMACY CLAUSE), AND THE INTERNAL REVENUE CODE (26 U.S.C. § 3102, 3402); 18 CALIFORNIA CODE OF REGULATIONS  § 1603; THE FAIR LABOR STANDARDS ACT OF 1938, AS AMENDED, 29 U.S.C. § 201 *et seq.*; AND THE CALIFORNIA LABOR CODE §§ 350 *et seq.*;<br>(5) DECLARATORY RELIEF;<br>(6) INJUNCTIVE RELIEF. |

Upon information and belief, Plaintiff, CALIFORNIA RESTAURANT ASSOCIATION ("CRA"), a California nonprofit mutual benefit corporation, alleges as against Defendant CITY OF EMERYVILLE ("Defendant" or "the City"), a California municipal corporation, as follows:

I.   <u>NATURE OF ACTION</u>

1.   CRA on behalf of itself and its members with restaurants in Emeryville, California ("the Members"), brings this action for declaratory and injunctive relief against the City based on the City's unlawful and unconstitutional regulation of mandatory service charges imposed by hospitality employers on their customers.

2.   For decades, Federal and California tax and labor laws have recognized that mandatory service charges imposed by restaurants and similar businesses on their patrons are general revenues that belong to the business.  The City, however, has enacted an ordinance that runs headlong into these decades of statutory and regulatory determinations and offends Constitutional protections.

3.   Few distinctions are as fundamental to the operation of a business, as the distinction between wages that belong to workers, and general revenues from which a business pays wages.  To be sure, the earning of revenues and the payment of wages are connected (without one, the other cannot likely be sustained) but the concepts are not interchangeable.  A fundamental proposition of American capitalism is that what a business charges its customers belongs to it. *See, e.g.,* 26 U.S.C. § 61(a)(1), (2); Cal. Rev. & Tax. § 25120(a); *Wells v. Wells*, 148 P.2d 126, 128 (1944).   Yes, that property can be audited and taxed, but it can't (absent due process and compensation) be transmuted into someone else's property.

4.   Now the City, without compensation, due process, or any regulatory mechanism by which this unlawful transmutation can be avoided, changes that fundamental proposition. Emeryville Municipal Code section 5-37.04 requires that mandatory, involuntary charges to restaurant customers now belong, not to the restaurant making the charge, but to its employees.   This ordinance is a constitutionally invalid taking of private property from the restaurants.

weintraub tobin chediak coleman grodin
law corporation

5.     The ordinance is also preempted by both state and federal tax and labor laws that define such service charges as employer property, rather than employee property.

6.     By penalizing the Members based on the manner in which they communicate their charges to patrons, the ordinance also violates both the First Amendment and Article I, Section II of the California Constitution because it improperly restricts freedom of speech without a rational basis for doing so.

7.     Finally, the ordinance violates constitutional equal protection rights by irrationally singling out only those businesses it defines as "Hospitality Employers," while exempting all other businesses that may impose service charges.

8.     As a result of the above, this action seeks an order (1) declaring the City's actions in applying Section 5-37.04 in conflict with the governing federal and state law to be without authority, invalid and unlawful; (2) declaring the City's requirement that "Hospitality Workers" turn "Service Charges" over in their entirety to employees to be without authority, invalid, and unlawful; and (3) enjoining the City from further action in conflict with and in derogation of the governing federal and state laws.  CRA seeks a declaration of the invalidity of enforcement of City of Emeryville Municipal Code § 5-37.04, as well as the corresponding portions of §§ 5-37.07 and 3-1.141 (together, the "Ordinance") and seeks to restrain the City from continued unlawful application of the Ordinance as against the Members.

## II.     PARTIES AND STANDING

9.     CRA is a nonprofit mutual benefit corporation formed under the laws of the State of California with its principal office in the County of Sacramento, State of California.  CRA serves the California restaurant industry by promoting, protecting, and working to improve the interests of restaurateurs and operators of like industries in the State.  Its members include eating and hospitality establishments owned and operated by parties who prepare and serve food to the public.  CRA strives to improve the business environment for its members by advocating on a slate of national, state, and local issues affecting their businesses.  CRA also represents its members by litigating issues of widespread concern in the restaurant industry.  CRA's members are located throughout the State of California, with several specifically located

weintraub tobin chediak coleman grodin
law corporation

in the City of Emeryville.

10.     CRA has standing to bring this lawsuit under the standard set forth in *Coho Salmon v. Pac. Lumber Co.*, 61 F.Supp. 2d 1001 (9th Cir. 1999) because: (1) each of the Members would have independent standing as they are denied constitutional and statutory rights and prevented from complying with statutory obligations; (2) the interests CRA seeks to redress by this action are germane to its fundamental purpose as set forth above; and (3) the claims asserted herein seek only declaratory and injunctive relief, and therefore do not require participation of individual members.

11.     The City is a California municipal corporation.  At all relevant times, the City has been a public entity duly organized and existing under and by virtue of the laws of the State of California.  With the exception of powers pertaining to municipal revenues that are not pertinent to this lawsuit, the City operates as a general law city that may make and enforce only those ordinances that are not in conflict with the general laws of the State of California.

### III.     JURISDICTION

12.     This Court has jurisdiction over the subject matter of this suit pursuant to 28 U.S.C. Sections 1331 and 2201, as CRA alleges claims arising under the Constitution and other federal laws and seeks redress of deprivation of rights, privileges, and immunities secured by the Constitution and federal law by persons purportedly acting under color of local municipal law.   Specifically, CRA's claims arise under Article VI of the United States Constitution (Supremacy Clause) as well as the First, Fifth, and Fourteenth Amendments to the Constitution, the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.*, and the Internal Revenue Code, 26 U.S.C. §§ 3102, 3402.   This Court has supplemental jurisdiction over CRA's substantially related state law claims arising under the same set of facts and circumstances.

13.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b), as this Court is sited in the federal judicial district where the events giving rise to CRA's claims have occurred, are now occurring, and will occur in the future if not prevented through the actions of this Court.  Members of CRA are situated in this district and will continue to be adversely affected

**weintraub tobin chediak coleman grodin**
law corporation

by the irreparable harms sought to be remedied and prevented by this Court's action upon this Complaint.

14.    An actual controversy exists in that the Members are being deprived of constitutional rights.   Specifically, the Members' private property interests in service charges have been unconstitutionally taken, their right of free speech has been chilled, and they face a Hobson's choice of complying with the Ordinance or losing the right to do business in the City. Alternatively, CRA's claims are immune from ripeness requirements.

## IV.    FACTUAL BACKGROUND

### A.    California and Federal Law Have Long Recognized that Mandatory "Service Charges" Belong to the Business that Charges Them

15.    Federal tax and labor laws, their California counterparts, and the respective federal and state enforcement agencies tasked with enforcing those laws have uniformly and consistently defined compulsory service charges as revenue to and, thus, property of the businesses that charge them.  To that end, businesses are free to utilize service charges as they see fit, including determining whether or not to turn the charges over to employees.   Under these laws, the key distinction between mandatory service charges and voluntary tips left by patrons is the delineation of property rights between businesses and their employees: while tips belong to the employees, service charges belong to the business.  Below is an illustrative list of such laws:

California Tax Law:

16.    Pursuant to California Revenue & Taxation Code section 7051, the California Board of Equalization promulgated the following regulation, 18 Cal. Code Regs., § 1603, which provides in pertinent part:

"(h)  Tips, Gratuities, and Service Charges. (On and after January 1, 2015)

[…]

An optional payment designated as a tip, gratuity, or service charge is not subject to tax. A mandatory payment designated as a tip, gratuity, or service charge is included in taxable gross receipts, even if it is subsequently paid by the

weintraub tobin chediak coleman grodin
law corporation

retailer to employees. For purposes of this subdivision, "amount" means a payment designated as a tip, gratuity, service charge, or any other separately stated payment for services associated with the purchase of meals, food, or drinks."

<u>California Employment Law and the Division of Labor Standards Enforcement</u>:

17.     Pursuant to California Unemployment Insurance Code sections 305, 306, 926, and 927, the California Employment Development Department promulgated the following regulation, 22 Code Regs., § 927-1, which provides in pertinent part:

"(e)  Service charges, even if designated as banquet tips or other name including the word "tips", are not tips and are wages under Section 926 of the code. The term "service charge" refers to a sum of money which the patron pays to the employer and which meets two or more of the following criteria: (1) The employer determines whether or not such a sum of money must be paid; (2) The employer determines, or negotiates with the patron, the exact amount of the sum which the patron must pay, and (3) **The employer determines to which employee(s), <u>if any</u>, the sum is to be paid.** (emphasis added)

18.     The California Division of Labor Standards Enforcement ("DLSE") has expressed the following opinion with regard to service charges:

"[T]he Division takes the position that **a flat service fee imposed for banquets is income to the employer** and not a gratuity.  The Division had, at one time, taken the position that these "mandatory banquet service charges," were to be considered in the category of tips which had to be distributed among the workers.  However, in the face of a decision by the office of Administrative Law which the Division agreed properly analyzed "mandatory charges," **the Division subsequently has taken the position that any charge which the patron <u>must</u> pay, cannot be considered in the category of a "tip" which is defined in Labor Code § 350(e) as a "gratuity."**

DLSE Opinion Letter No. 2002.11.02 at p. 2 (emphasis added).

19.     Similarly, the California Labor Code provides the following distinction between tips and service charges:

> "Gratuity" includes any tip, gratuity, money, or part thereof that has been paid or given to or left for an employee by a patron of a business **over and above the actual amount due the business for services rendered** or for goods, food, drink, or articles sold or served to the patron.

Cal. Labor Code § 350(e) (emphasis added).

20.     The California Labor Code further states:

> No employer or agent shall collect, take, or receive any gratuity or a part thereof that is paid, given to, or left for an employee by a patron, or deduct any amount from wages due an employee on account of a gratuity, or require an employee to credit the amount, or any part thereof, of a gratuity against and as a part of the wages due the employee from the employer. Every gratuity is hereby declared to be the sole property of the employee or employees to whom it was paid, given, or left for. An employer that permits patrons to pay gratuities by credit card shall pay the employees the full amount of the gratuity that the patron indicated on the credit card slip, without any deductions for any credit card payment processing fees or costs that may be charged to the employer by the credit card company. Payment of gratuities made by patrons using credit cards shall be made to the employees not later than the next regular payday following the date the patron authorized the credit card payment.

Cal. Labor Code § 351(c).

The U.S. Department of Labor's Position on Service Charges:

21.     The U.S. Dept. of Labor has also concluded that, because service charges are employer property, employers are free to choose how to utilize the funds received:

> It is our position that compulsory charges which are added to members' bills are gross receipts to an employer. Therefore, the employer has complete discretion in choosing the manner in which the compulsory charge is to be used, which

would include using it to pay employees. Where compulsory charges are imposed and the employee receives no tips, the employer must pay the entire minimum wage and overtime required by the FLSA. Whether the member believes the automatic fee is distributed to the servers does not change our position.

U.S. D.O.L. Op. Letter of July 12, 1999 at p. 2-3 (emphasis added).

We wish to point out that it is our position that compulsory service charges which are added to customers' bills are not considered to be tips from the customers to the employees. **They are gross receipts to an employer and may be used by the employer in any way he or she chooses,** including using the service charges to pay employees. Pursuant to your request, we will presume that the amount of money your client distributes to these employees for working at these functions is funded only by service charge revenue.

U.S. D.O.L. Op. Letter of February 8, 1985 at p. 2-3 (emphasis added).

The method of distributing the service charge funds to these groups and departments would not affect any of our responses. **As explained earlier, compulsory service charges are gross receipts to an employer and may be used by the employer in any way he or she chooses.**

U.S. D.O.L. Op. Letter of February 8, 1985 at p. 8 (emphasis added).

<u>Federal Tax Law</u>:

22.     The IRS has also defined service charges as employer property rather than tips, which are employee property.  The IRS promulgated Revenue Rule 59-252, which provides:

[A tip] must be presented by the customer free from compulsion; he must have the unrestricted right to determine the amount thereof; and such amount should not be the subject of negotiation or dictated by employer policy. Generally, the customer has the right to determine precisely who shall be the recipient of his generosity. **The absence of any of these factors creates a serious doubt as to whether the payment is really a tip and indicates that it is in fact a service charge**

weintraub tobin chediak coleman grodin
law corporation

for the use of certain facilities.

*Rev.Rul. 59-252.*

23. This distinction between a tip and service charge is reiterated by the IRS in *Rev. Rul. 2012-18*, which states in pertinent part:

QUESTIONS AND ANSWERS

IN GENERAL

Q1. Is the characterization of a payment as a "tip" by the employer determinative for FICA tax purposes under section 3121 of the Code?

A1. No. The employer's characterization of a payment as a "tip" is not determinative. For example, an employer may characterize a payment as a tip, when in fact the payment is a service charge. **The criteria of Rev. Rul. 59-252, 1959-2 C.B. 215, should be applied to determine whether a payment made in the course of employment is a tip or non-tip wages under section 3121 of the Code. The revenue ruling provides that the absence of any of the following factors creates a doubt as to whether a payment is a tip and indicates that the payment may be a service charge: (1) the payment must be made free from compulsion; (2) the customer must have the unrestricted right to determine the amount; (3) the payment should not be the subject of negotiation or dictated by employer policy; and (4) generally, the customer has the right to determine who receives the payment.** All of the surrounding facts and circumstances must be considered. For example, Rev. Rul. 59-252 holds that the payment of a fixed charge imposed by a banquet hall that is distributed to the employees who render services (*e.g.*, waiter, busser, and bartender) is a service charge and not a tip. Thus, to the extent any portion of a service charge paid by a customer is distributed to an employee it is wages for FICA tax purposes.

**B.    The City Enacts the Ordinance in Direct Contrast with These Laws**

24. On June 2, 2015, Emeryville passed and adopted Ordinance No. 15-004, which adds Chapter 37 to Title 5 of the Emeryville Municipal Code, effective July 2, 2015 ("the

weintraub tobin chediak coleman grodin
law corporation

weintraub tobin chediak coleman grodin
law corporation

Ordinance"). Chapter 37 is entitled "Minimum Wage, Paid Sick Leave, and Other Employment Standards." A copy of the Ordinance is attached hereto as Exhibit A. [1]

25. As set forth in the preamble to the measure adopting the Ordinance, the City's stated purpose and intent in adopting this new chapter was to provide for a higher minimum wage standard than that provided under state and federal law. Most pertinent here, the Ordinance provides the following as pertains to service charges:

(a)  Definitions. The following definitions shall apply to this section:

(1)  "Service charge" means all separately-designated amounts collected by a hospitality employer from customers that are for service provided by hospitality workers, or are described in such a way that customers might reasonably believe that the amounts are for those services, including but not limited to those charges designated on receipts under the term "service charge," "delivery charge," or "porterage charge."

(2)  "Hospitality employer" means an employer who owns, controls, or operates any part of a hotel or restaurant or banquet facilities within the City, including as a subcontractor thereto, but does not include any governmental agency.

(3)  "Hospitality worker" means an employee who works for a hospitality employer and who performs a service for which a hospitality employer imposes a service charge. "Hospitality worker" does not include a managerial employee.

(b)  Hospitality Employers' Responsibilities.

(1)  Service charges shall not be retained by the hospitality employer but shall be paid over in their entirety to the hospitality worker(s) performing services for the customers from whom service charges are to be collected. No part of these charges may be paid to supervisors except for any portion of their work time spent on nonsupervisory work serving these customers, and then at no higher rate of compensation than the average of what is paid other hospitality workers performing similar customer service. The service charges shall be distributed to the hospitality workers not later than the next payroll following the work or collection of the charge from the customer, whichever is later. Without limitation of the foregoing:

(i)  Service charges collected for banquets or catered meetings shall be paid to the hospitality workers who actually work the banquet or catered meeting;

(ii)  Service charges collected for room service shall be paid to the hospitality workers who actually deliver food and beverage associated with the charge; and

(iii)  Service charges collected for porterage service shall be paid to the hospitality workers who actually carry the baggage associated with the charge.

---

[1] In addition, Chapter 37 features sections providing for a higher minimum wage (5-37.02) and paid sick leave beyond the mandated state minimums (5-37.03).

(2)   Each hospitality employer shall disclose in writing to employees its plan of distribution of service charges to hospitality workers and shall report to employees on each payroll date the amount of service charges collected and amounts distributed to hospitality workers for the pay period in question.

(3)   No hospitality employer or agent thereof shall deduct any amount from wages due an employee on account of a service charge, or require a hospitality employee to credit the amount, or any part thereof, of a service charge, against and as a part of the wages due the hospitality employee from the hospitality employer.

(4)   This section does not apply to any tip, gratuity, money, or part of any tip, gratuity, or money that has been paid or given to or left for a hospitality worker by customers over and above the actual amount due for services rendered or for goods, food, drink, or articles sold or served to the customer.

26.     Notably, the Ordinance does not apply to business owners who collect Service Charges from customers but who do not fall within the definition of "Hospitality Employers." The Ordinance also expressly exempts Government Agencies from its requirements.

27.     The chapter also includes an enforcement mechanism whereby employees can report violations under the chapter and the City can investigate and seek to remedy those violations (5-37.06).  Should compliance not be obtained through informal resolution efforts, the Chapter entitles the City to impose fines for violations, and allows both the City and aggrieved employees to enforce the section through civil proceedings, where employers can be subject to back pay, civil penalties, interest, and attorney fees (5-37.07).

28.     The Ordinance also added Section 3-1.141 to Chapter 1 of Tile 3 of the Emeryville Municipal Code, "Business Taxes."  Under that section, the City conditions issuance of a business tax certificate to Hospitality Employers upon compliance with Chapter 37. Emeryville Mun. Code § 3-1.141.

## FIRST CAUSE OF ACTION

### (VIOLATION OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 19 OF THE CALIFORNIA CONSTITUTION)

### (TAKINGS)

29.     CRA reasserts and incorporates by reference each and every allegation set forth in paragraphs 1 through 28 of this Complaint as if set forth in full.

30.     The Fifth Amendment, made applicable to the States through the Fourteenth Amendment, provides that private property shall not be taken for public use without just

weintraub tobin chediak coleman grodin
law corporation

compensation.

31.     As established by the statutes, regulations, and guidance letters above, "service charges" that the Members impose on their customers are revenue earned by and belonging to the Members.  Once the Members elect to impose service charges on their patrons, and then collect those charges, the Members are in possession of specific, traceable and identifiable property interests.

32.     The Ordinance effects an uncompensated taking by requiring the Members to turn over their Service Charges to employees. First, under a "physical taking" analysis, the Ordinance effects an uncompensated taking because the City is mandating that the Members relinquish a specific, identifiable property interest.  This constitutes a per se taking.

33.     Second, under an "unconstitutional condition" analysis, the Ordinance constitutes an uncompensated taking because the Members' right to engage in business in the City is conditioned upon a monetary exaction that is not sufficiently related to the social costs of running a business.  Specifically, by enacting Emeryville Municipal Code section 3-1.141, the City refuses to provide business tax certificates to Hospitality Employers who do not turn mandatory service charges over to a third party, their employees.

34.     There is no nexus or rough proportionality between the transfer of Service Charges to employees and the social costs of operating a business in the City.  There is no identifiable social cost that is mitigated by the transfer of Service Charges—especially not a cost unique to Hospitality Employers—that is not already mitigated by the payment of wages.

35.     Requiring the Members to turn over Service Charges to employees does not constitute a public use.  Rather, the Ordinance forces private parties to pay money to other private parties.

36.     Even if the Ordinance's mandate was held to be a public use, the Ordinance does not provide compensation for the Service Charges taken.

37.     As a result of the above, the Ordinance is 1) an uncompensated physical taking; (2) an unconstitutional condition; and/or 3) an impermissible taking for private use, all in violation of the Fifth Amendment as well as Article I, Section 19 of the California Constitution.

weintraub tobin chediak coleman grodin
law corporation

weintraub tobin chediak coleman grodin
law corporation

## SECOND CAUSE OF ACTION

## (VIOLATION OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 2 OF THE CALIFORNIA CONSTITUTION)

### (FREE SPEECH)

38.   CRA reasserts and incorporates by reference each and every allegation set forth in paragraphs 1 through 37 of this Complaint as if set forth in full.

39.   The manner in which the Members convey their pricing to customers constitutes expression protected by the First Amendment.

40.   A compulsory service charge that the Members impose upon their customers is revenue to the business under both federal and California tax law.

41.   The Ordinance's mandate that such revenue be turned over to "Hospitality workers" imposes a financial burden on the Members in that they are being required to turn over business revenue.

42.   The Ordinance does not impose the same financial burden upon "Hospitality employers" or similar businesses who wish to describe pricing in a manner other than a "service charge," or similar phrase.  For example, a Hospitality employer who wishes to offset the City's minimum wage increase by increasing what it charges patrons may choose one of two options.   If the Hospitality employer describes a 25% price increase in the form of increased menu prices (e.g., from $20 to $25), it is not required to turn that extra revenue over to employees.  But if the Hospitality employer describes the same price increase as a service charge (e.g., $20 item plus $5 service charge), the Ordinance compels that Hospitality employer to turn the increased revenue over to its Hospitality employees.

43.   As a result, the Ordinance imposes a financial burden on the Members based purely on the content of their speech—i.e., the way they describe their pricing.   The sole distinction between the two options for increasing prices is what the Members choose to say to their customers.

44.   There is nothing unlawful or misleading about a restaurant's choice to describe pricing on its menu as a "service charge," "delivery charge," "porterage charge," or similar

phrase.

45.     The City has no substantial interest in justifying the regulation, nor does the regulation directly advance any governmental interest.

46.     Even if the City had a substantial interest in justifying the Ordinance, a blanket requirement that service charges always be turned over to Hospitality Workers is not the least restrictive means to enforce this interest, nor is it narrowly tailored to such an interest.

47.     For the reasons set forth above, the Ordinance is an impermissible restriction on the Members' speech in violation of both the First Amendment and Article I, Section 2 of the California Constitution.

## THIRD CAUSE OF ACTION

### (VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTIUTION AND ARTICLE I, SECTION 7 OF THE CALIFORNIA CONSTITUTION)

### (EQUAL PROTECTION)

48.     CRA reasserts and incorporates by reference each and every allegation set forth in paragraphs 1 through 47 of this Complaint as if set forth in full.

49.     The Equal Protection clauses of the federal and state Constitutions guarantee to persons equal protection of the laws. A corporation is considered a 'person' entitled to the constitutional guarantee of equal protection.  The Members are "persons" entitled to equal protection under the Constitution.

50.     The Members are similarly situated to other employers in the city that employ persons who receive tips and who may seek to offset the City's minimum wage increase by imposing service charges. This class includes valet parking enterprises, car washes and similar service businesses.

51.     The Ordinance violates the guarantees of equal protection because it: (1) singles out "Hospitality employers," including the Members, and does not apply to other employer's whose employees receive tips and who may seek to offset the increase of minimum wages within the City; and (2) does not cover Governmental Agencies.

///

weintraub tobin chediak coleman grodin
law corporation

52.     The Ordinance was enacted at the same time as other worker protection legislation, including an increase in the minimum wage and increased sick leave mandates. These benefits apply to all workers in the City, but the Ordinance applies only to "Hospitality employers" and "Hospitality workers."

53.     As set forth in the preamble to the Ordinance, the City's rationale in enacting section 5-37.04 is to provide for "equitable disbursement of hospitality service charges." Given that rationale, there is no rational basis for limiting the Ordinance to those members who meet the definition of Hospitality employers while leaving out other service workers (such as valet car attendants, car wash workers, golf course caddies and barbers) whose employers may respond to the City's minimum wage increase by imposition of service charges.

54.     For the reasons set forth above, the Ordinance denies the Members' equal protection in violation of both the Fourteenth Amendment and Article I, Section 7 of the California Constitution.

## FOURTH CAUSE OF ACTION

(VIOLATION OF ARTICLE VI, CLAUSE 2 OF THE UNITED STATES CONSTITUTION (SUPREMACY CLAUSE), THE INTERNAL REVENUE CODE (26 U.S.C. § 3102, 3402),18 CALIFORNIA CODE OF REGULATIONS  § 1603, THE FAIR LABOR STANDARDS ACT OF 1938, AS AMENDED, 29 U.S.C. § 201 et seq., AND THE CALIFORNIA LABOR CODE §§ 350 et seq.)

(PREEMPTION)

55.     CRA reasserts and incorporates by reference each and every allegation set forth in paragraphs 1 through 54 of this Complaint as if set forth in full.

The Ordinance is Preempted by Federal Law

56.     The Supremacy Clause provides a clear rule that federal law shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any State to the Contrary notwithstanding.  To that end, municipal laws are preempted where it is impossible for a private party to comply with both federal and state laws ("impossibility preemption"), as well as when the relevant municipal law is an obstacle to

weintraub tobin chediak coleman grodin
law corporation

1  the accomplishment and execution of the relevant federal law in accordance with Congress's

2  purposes and objectives ("obstacle preemption").

3  <u>Federal Tax Law</u>

4      57.    The Ordinance is preempted by United States tax law because it disrupts the

5  well-established federal process for taxing employee tips.    The ordinance mandates that

6  "Service Charges" be treated as tips (i.e., turned over to workers without deduction) whereas the

7  Internal Revenue Code provides that tips are not subject to deduction or withholding by an

8  employer.

9      58.    Internal Revenue Code section 3102(c)(1) provides that required withholding of

10  taxes on tips will be made from the other wages of the employee (excluding tips).  By contrast,

11  federal tax law mandates that service charges, if provided to employees, should be taxed

12  directly by the employer.   Subsection (b)(4) of the Ordinance flatly prohibits this mandate,

13  stating that: "No hospitality employer or agent thereof shall deduct **any amount from wages**

14  **due** an employee on account of a service charge…" (Emphasis added.) This conflict is

15  irreconcilable.  As a result, the Ordinance is preempted.

16  <u>Federal Labor Law</u>

17      59.    The Federal Fair Labor Standards Act 29 U.S.C. §§ 201-219 ("FLSA"), sets a

18  national floor for wage and hour standards.   Under the FLSA, an obligatory service charge is

19  not a tip or a gratuity. 29 C.F.R. § 531.55(a) ("A compulsory charge for service … imposed on

20  a customer by an employee's establishment is not a tip …"). Further, an employer may not

21  consider a mandatory service charge as a tip for purposes of invoking the federal tip credit

22  under 29 U.S.C. § 203(m), and may not consider such charges, if paid to the employee (as

23  required by the Ordinance) as falling under the "tip exclusion: permitted in calculation of a

24  worker's "regular rate of pay" for overtime. 29 U.S.C. § 207; 29 C.F.R. § 531.60 ("Any tips

25  received by the employee in excess of the tip credit [for minimum wage] need not be included

26  in the regular rate.").

27      60.    Consistent with this notion, DOL has issued numerous opinion letters indicating

28  its position that, under the FLSA, a service charge belongs solely to the employer, who may

**weintraub tobin chediak coleman grodin**
law corporat.on

1  decide whether or not to pay it over to service employees.  U.S. D.O.L. Op. Letter of July 12,

2  1999 at p. 2-3 ("the employer has complete discretion in choosing the manner in which the

3  compulsory charge is to be used."); U.S. D.O.L. Op. Letter of February 8, 1985 at p. 2-3

4  (Service charges "are gross receipts to an employer and may be used by the employer in any

5  way he or she chooses, including using the service charges to pay employees").

6        61.    The Ordinance disrupts all this. As described above, the Ordinance is an

7  improper obstacle to the accomplishment of federal objectives.   At the very least, the

8  Ordinance upsets the FLSA overtime provisions in punitive manner.

9  The Ordinance is Preempted by State Law

10        62.    Pursuant to Article XI, Section 7 of the California Constitution, local ordinances

11  and regulations are subordinate to state law.  Insofar as local regulation conflicts with state

12  law, it is preempted and invalid.

13  California Tax Law

14        63.    California's sales tax scheme provides that mandatory charges paid by the

15  Members' patrons are revenue to and property of the Members and, as such, subject to sales

16  tax.  By contrast, tips are considered voluntary payments by the Members' patrons left for a

17  waiter or waitress, and are not subject to sales tax.

18        64.    The California State Board of Equalization ("SBE") is alone entitled to determine

19  what business revenues will be classifiable as taxable for purposes of state sales tax.  Through

20  California Code of Regulations section 1603, the SBE has determined that involuntary, non-

21  optional service charges that a customer must pay (under peril of criminal law) are subject to

22  sales tax, while voluntary tips left for employees are not.

23        65.    Yet, the City has mandated the re-characterization of what is clearly and legally

24  the property of an employer (which must be taxed as part of the owner's taxable revenue), as

25  the property of employees.  The Ordinance conflicts with the SBE Regulation 1603.  What

26  section 1603 defines as the Members' revenue has been transmuted into employee property.

27  This municipal transmutation of property creates a conflict that is irreconcilable and complete.

28  ///

weintraub tobin chediak coleman grodin
l·a· ccrporat on

California Labor Law

66.    The California Labor Code recognizes a distinction between mandatory charges for services rendered, which are due to a business, and tips, which are due to the business's service employees.

67.    The California Department of Labor Standards Enforcement ("DLSE"), the agency tasked with enforcing California's labor laws, has acknowledged this dichotomy, providing in guidance letters that ownership of the funds is the key distinction between a tip and service charge:

> "[T]he Division takes the position that **a flat service fee imposed for banquets is income to the employer** and not a gratuity.  The Division had, at one time, taken the position that these "mandatory banquet service charges," were to be considered in the category of tips which had to be distributed among the workers.  However, in the face of a decision by the office of Administrative Law which the Division agreed **properly analyzed "mandatory charges," the Division subsequently has taken the position that any charge which the patron _must_ pay, cannot be considered in the category of a "tip" which is defined in Labor Code § 350(e) as a "gratuity."**

DLSE Opinion Letter No. 2002.11.02 at p. 2 (emphasis added).

68.    By attempting to redefine Service Charges as property belonging to Hospitality Workers rather than the businesses that impose the charge, the Ordinance directly conflicts with both the express language of the California Labor Code and the DLSE's persuasive interpretation letters.  As such, the Ordinance is preempted.

69.    The Ordinance impermissibly conflicts with Labor Code Sections 350-356. Those sections plainly distinguish between charges imposed by restaurants for "services rendered' which a customer _must_ pay and voluntary amounts which a patron _may_ pay.  _See_ Cal. Labor Code § 350(e). These sections of the Labor Code plainly permit employers to profit from the services provided by service employees.  The Ordinance (and other ordinances like it) impermissibly blurs this sharp statutory distinction.

///

**weintraub tobin chediak coleman grodin**
law corporation

70.     As a general law city in all respects other than for purposes of taxation, the City cannot enact laws that conflict with State law.  The Ordinance is therefore preempted because it directly conflicts with the California Labor Code and corresponding regulations.

### PRAYER FOR RELIEF

### PRAYER AS TO THE CLAIM FOR DECLARATORY RELIEF

71.     For a judicial determination and declaration of the Members and the City's respective rights and duties under the conflicting local, state, and federal laws with respect to the issues raised in this Complaint including, but not limited to, a declaration that the City's enforcement of § 5-37.04 via §§ 3-1.141, 5-37.06, and 5-37.07 and is unauthorized, invalid, unlawful and unenforceable as such actions violate the Internal Revenue Code, the Fair Labor Standards Act, the California Labor Code, the California Taxation and Revenue Code, regulations promulgated under each of these statutes, and/or the United States and California Constitutions.

### AS TO THE CLAIM FOR INJUNCTIVE RELIEF

72.     For an order requiring the City to show cause, if any it has, why it should not be enjoined as hereinafter set forth, during the pendency of this action.

73.     For a preliminary injunction and a permanent injunction, requiring the City and its respective officers, directors, agents, attorneys, servants and employees, and all persons acting under, in concert with, or for the City:

(a) To refrain from enforcing Emeryville Municipal Code section 5-37.04 with respect to requiring Hospitality Employers to turn over compulsory Service Charges in their entirety to the Hospitality Workers who provide the service;

(b) To refrain from purporting to enforce any penalties, assessments or sanctions against Hospitality Employers (as defined by the Ordinance) under Emeryville Municipal Code section 5-37.07 on the grounds that the Hospitality Employer has failed to pay service charges to Hospitality Workers (as defined by the Ordinance); and

(c) To refrain from refusing to issue business tax certificates to Hospitality Employers (as defined by the Ordinance) under Emeryville Municipal Code section 3-1.141 on

1    the grounds that the Hospitality Employer has failed to pay service charges to Hospitality

2    Workers (as defined by the Ordinance).

3                              **AS TO ALL CLAIMS FOR RELIEF**

4         74.    For an award of attorney fees as permitted by law; and

5         75.    For such other and further relief as the Court deems just and proper.

7    Dated:  November 16, 2016         **WEINTRAUB TOBIN CHEDIAK COLEMAN GRODIN**
                                       a law corporation

9                                      By: _____/s/   Lukas J. Clary_____
10                                          Lukas J. Clary, State Bar No. 251519

11                                          Attorneys for Plaintiff
12                                          CALIFORNIA RESTAURANT ASSOCIATION

EXHIBIT A

## ORDINANCE NO. 15-004

**AN ORDINANCE OF THE CITY COUNCIL OF THE CITY OF EMERYVILLE ADDING CHAPTER 37 TO TITLE 5 OF THE EMERYVILLE MUNICIPAL CODE, "MINIMUM WAGE, PAID SICK LEAVE, AND OTHER EMPLOYMENT STANDARDS" AND ADDING SECTION 3-1.141 TO CHAPTER 1 OF TITLE 3 OF THE EMERYVILLE MUNICIPAL CODE, "BUSINESS TAXES"**

**WHEREAS**, the current Federal minimum wage rate is $7.25 per hour, and the California minimum wage is $9.00 per hour; and

**WHEREAS**, in an effort to help working households achieve economic security and acknowledging the higher relative cost of living in San Francisco Bay Area, the City Council of the City of Emeryville wishes to enact a citywide minimum wage that is higher than the minimum wage required by the federal and state rates; and

**WHEREAS**, a higher minimum wage rate protects the public health, safety and welfare by requiring that employees are compensated in such a manner as to enable and facilitate their individual self-reliance within the City of Emeryville; and

**WHEREAS**, the City of Emeryville may adopt a higher minimum wage pursuant to the powers vested in the City under the laws and Constitution of the State of California including but not limited to the police powers vested in the City pursuant to Article XI, Section 7 of the California Constitution, section 1205(b) of the California Labor Code and section 16000 of the California Business and Professions Code;

**NOW, THEREFORE, THE CITY COUNCIL OF THE CITY OF EMERYVILLE HEREBY ORDAINS AS FOLLOWS:**

**SECTION ONE.** <u>**PURPOSE AND INTENT**</u>

The purpose and intent of this Ordinance is to adopt a new Chapter 37 of Title 5 of the Emeryville Municipal Code, "Minimum Wage, Sick Leave, and Other Employment Standards," to provide standards for minimum wages paid to employees, paid sick leave, and equitable disbursement of hospitality service charges above and beyond the requirements of state law. It is the intent of the City Council of the City of Emeryville that this Ordinance provide for a higher minimum wage for employees than provided in any state statute which purports to preempt this Ordinance.

It is also the purpose and intent of this Ordinance to add section 3-1.141 to Chapter 1 of Title 3 of the Emeryville Municipal Code, "Business Taxes," to provide that all persons engaging in business in Emeryville shall comply with the provisions of Chapter 37 of Title 5 of the Emeryville Municipal Code as a condition of issuance of a business tax certificate.

## SECTION TWO.  ADDING CHAPTER 37 TO TITLE 5 OF THE EMERYVILLE MUNICIPAL CODE

Chapter 37 is hereby added to Title 5 of the Emeryville Municipal Code to read as follows:

### Chapter 37 - Minimum Wage, Paid Sick Leave, and Other Employment Standards

### 5-37.01 Definitions

As used in this Chapter, the following terms shall have the following meanings:

a) "Calendar week" shall mean a period of seven consecutive days starting on Sunday.

b) "City" shall mean the City of Emeryville.

c) "Employee" shall mean any person who:

   1) In a calendar week performs at least two (2) hours of work within the geographic boundaries of the City for an Employer; and

   2) Qualifies as an employee entitled to payment of a minimum wage from any employer under the California minimum wage law, as provided under Section 1197 of the California Labor Code and wage orders published by the California Industrial Welfare Commission. Employees shall include Learners, as defined by the California Industrial Welfare Commission.

d) "Employer" shall mean any person (including a natural person, corporation, nonprofit corporation, general partnership, limited partnership, limited liability partnership, limited liability company, business trust, estate, trust, association, joint venture, agency, instrumentality, or any other legal or commercial entity, whether domestic or foreign), who directly or indirectly (including through the services of a temporary services or staffing agency or similar entity) employs or exercises control over the wages, hours or working conditions of any Employee.

e) "Paid Sick Leave" shall mean paid "sick leave" as defined in California Labor Code section 233(b)(4), except that the definition here extends beyond the Employee's own illness, injury, medical condition, need for medical diagnosis or

treatment, or medical reason, to also encompass time taken off work by an Employee for the purpose of providing care or assistance to other persons specified below with an illness, injury, medical condition, or need for medical diagnosis or treatment.

f) "Minimum Wage" shall have the meaning set forth in Section 5-37.02 of this Chapter.

g) "Small Business" shall mean an Employer for which normally fifty five (55) or fewer Employees work for compensation during a given week. In determining the number of Employees performing work for an Employer during a given week, all Employees performing work for the Employer for compensation on a full- time, part-time, or temporary basis shall be counted, including Employees made available to work through the services of a temporary services or staffing agency or similar entity.

## 5-37.02.  Minimum Wage

a) Employers shall pay Employees no less than the Minimum Wage for each hour worked within the geographic boundaries of the City.

b) Beginning on July 1, 2015, the Minimum Wage paid by Employers which are not Small Businesses shall be an hourly rate of $14.44. To prevent inflation from eroding its value, beginning on the 1st of July 2016, and then each year thereafter on the 1st of July, the Minimum Wage shall increase by an amount corresponding to the prior calendar year's increase, if any, in the Consumer Price Index for all urban consumers for the San Francisco-Oakland-San Jose, CA metropolitan statistical area (or if such index is discontinued, then in the most similar successor index).

c) For Employers which are Small Businesses, the Minimum Wage rate shall  be as follows:

   1) Beginning July 1, 2015, the Minimum Wage shall be an hourly rate of $12.25 per hour.

   2) Beginning July 1, 2016, the Minimum Wage shall be an hourly rate of $13.00 per hour.

   3) Beginning July 1, 2017, the Minimum Wage shall be an hourly rate of $14.00 per hour.

    4) Beginning July 1, 2018, the Minimum Wage shall be an hourly rate of $15.00 per hour.

    5) Beginning July 1, 2019, the Minimum Wage shall be the then-current Minimum Wage rate for Employers which are not Small Businesses. To prevent inflation from eroding its value, beginning on the 1st of July 2020, and then each year thereafter on the 1st of July, the Minimum Wage shall increase by an amount corresponding to the prior calendar year's increase, if any, in the Consumer Price Index for all urban consumers for the San Francisco-Oakland-San Jose, CA metropolitan statistical area (or if such index is discontinued, then in the most similar successor index).

d) An Employee who is a Learner, as defined by the California Industrial Welfare Commission, shall be paid no less than 85 percent of the applicable Minimum Wage provided in the Chapter for the first 160 hours of employment. Thereafter the Employee shall be paid the applicable Minimum Wage rate provided in this Chapter.

e) Consistent with state law, an Employer may not deduct any amount from wages due an Employee on account of any tip or gratuity, or credit the amount or any part thereof, of a tip or gratuity, against and as a part of the wages due the Employee from the Employer. Further, the value of any Employer provided benefits, including health care benefits, shall not be deducted or credited against wages due an Employee.

## 5-37.03.  Paid Sick Leave

a) Purpose and Intent

It is the purpose and intent of this Chapter to provide Paid Sick Leave benefits beyond the requirements of AB 1522, the Health Workplaces, Healthy Families Act of 2014. The provisions of AB 1522 shall apply to Paid Sick Leave requirements of this Chapter, unless otherwise provided by the provisions of this Chapter herein.

b) Accrual of Paid Sick Leave

For Employees of Small Businesses, there shall be a cap of 48 hours of accrued Paid Sick Leave. For Employees of all other Employers, there shall be a cap of 72 hours of accrued Paid Sick Leave. Accrued Paid Sick Leave for Employees carries over from year to year (whether calendar year or fiscal year), but is limited to the aforementioned cap. Nothing herein precludes an Employer

Ordinance No. 15-004
Page 5 of 15

from establishing a higher cap or no cap on the number of accrued hours.

c) Use of Paid Sick Leave

1) An Employee may use Paid Sick Leave not only when he or she is ill or injured or for the purpose of the Employee's receiving medical care, treatment, or diagnosis, as specified more fully in California Labor Code section 233(b)(4), but also to aid or care for a family member of Employee when the family member or members  is or are ill or injured or receiving medical care, treatment, or diagnosis. For purposes of this subsection, "family member" shall have the meaning provided in Labor Code section 245.5.  If the Employee has no spouse or registered domestic partner, the Employee may designate one person as to whom the Employee may use paid sick leave to aid or care for that person in lieu of a spouse or registered domestic partner. The Employee may use all or any percentage of his or her Paid Sick Leave to aid or care for the aforementioned persons. The opportunity to make such a designation shall be extended by the Employer to the Employee no later than 30 calendar days after the date on which the Employee begins to accrue Paid Sick Leave pursuant to this Chapter. There shall be a window of 14 calendar days for the Employee to make this designation after notice from the Employer. Thereafter, the opportunity to make such a designation, including the opportunity to change such a designation previously made, shall be extended by the Employer to the Employee on an annual basis by January 31st of each year, with a window of 14 calendar days for the Employee to make the designation after notice from the Employer. An Employee may use Paid Sick Leave to aid or care for a guide dog, signal dog, or service dog, as those terms are defined by the California Disabled Persons Act, Civil Code section 54.1, of the Employee, Employee's family member, or the person designated by the Employee pursuant to this section.

2) An Employer may require Employees to give reasonable notification of an absence from work for which Paid Sick Leave is or will be used.

3) In each year of employment, an Employee may use up to the total number of Paid Sick Leave hours accrued, subject to the maximum number of accruable Paid Sick Leave hours, as provided in this section.

### 5-37.04.  Hospitality Service Charges

a)  Definitions: The following definitions shall apply to this section:

1)  "Service Charge" means all separately-designated amounts collected by a Hospitality Employer from customers that are for service provided by Hospitality Workers, or are described in such a way that customers might reasonably believe that the amounts are for those services, including but not limited to those charges designated on receipts under the term "service charge," "delivery charge," or "porterage charge."

2)  "Hospitality Employer" means an Employer who owns, controls, or operates any part of a hotel or restaurant or banquet facilities within the City, including as a subcontractor thereto, but does not include any governmental agency.

3)  "Hospitality Worker" means an Employee who works for a Hospitality Employer and who performs a service for which a Hospitality Employer imposes a Service Charge. "Hospitality Worker" does not include a managerial employee.

b)  Hospitality Employers' Responsibilities

1)  Service Charges shall not be retained by the Hospitality Employer but shall be paid over in their entirety to the Hospitality Worker(s) performing services for the customers from whom Service Charges are to be collected.  No part of these charges may be paid to supervisors except for any portion of their work time spent on nonsupervisory work serving these customers, and then at no higher rate of compensation than the average of what is paid other Hospitality Workers performing similar customer service. The Service Charges shall be distributed to the Hospitality Workers not later than the next payroll following the work or collection of the charge from the customer, whichever is later. Without limitation of the foregoing:

a)      Service charges collected for banquets or catered meetings shall be paid to the Hospitality Workers who actually work the banquet or catered meeting;

b)      Service charges collected for room service shall be paid to the Hospitality Workers who actually



deliver food and beverage associated with the charge; and

   c)      Service charges collected for porterage service shall be paid to the Hospitality Workers who actually carry the baggage associated with the charge.

2) Each Hospitality Employer shall disclose in writing to Employees its plan of distribution of service charges to Hospitality Workers and shall report to Employees on each payroll date the amount of service charges collected and amounts distributed to Hospitality Workers for the pay period in question.

3) No Hospitality Employer or agent thereof shall deduct any amount from wages due an Employee on account of a service charge, or require a Hospitality Employee to credit the amount, or any part thereof, of a service charge, against and as a part of the wages due the Hospitality Employee from the Hospitality Employer.

4) This section does not apply to any tip, gratuity, money, or part of any tip, gratuity, or money that has been paid or given to or left for a Hospitality Worker by customers over and above the actual amount due for services rendered or for goods, food, drink, or articles sold or served to the customer.

### 5-37.05. Notice and Posting

a) By April 1 of each year, the City shall publish and make available to Employers a bulletin announcing the adjusted Minimum Wage rate, which shall take effect on July 1 of that year. In conjunction with this bulletin, the City shall by May 1 of each year publish and make available to Employers, in English and other languages as provided in any implementing regulations, a notice suitable for posting by Employers in the workplace informing Employees of the current Minimum Wage rate and of their rights under this Chapter.

b) Each Employer shall give written notification to each current Employee and to each new Employee at time of hire, of his or her rights under this Chapter. The notification shall be in English and other languages as provided in any implementing regulations, and shall also be posted prominently in areas at the work site where it will be seen by all Employees. Every Employer shall also provide each Employee at the time of hire with the Employer's name, address, and telephone number in writing. Failure to post such notice shall render the Employer subject to administrative citation,

pursuant to the provisions of this Chapter. The City is authorized to prepare sample notices and Employer use of such notices shall constitute compliance with this subsection.

## 5-37.06. Implementation

### a) Regulations

City shall be authorized to coordinate implementation and enforcement of this Chapter and may promulgate appropriate guidelines or rules for such purposes. Any guidelines or rules promulgated by City shall have the force and effect of law and may be relied on by Employers, Employees and other parties to determine their rights and responsibilities under this Chapter. Any guidelines or rules may establish procedures for ensuring fair, efficient and cost-effective implementation of this Chapter, including supplementary procedures for helping to inform Employees of their rights under this Chapter, for monitoring Employer compliance with this Chapter, and for providing administrative hearings to determine whether an Employer has violated the requirements of this Chapter.

### b) Reporting Violations

An aggrieved Employee may report to City in writing any suspected violation of this Chapter. City shall keep confidential, to the maximum extent permitted by applicable laws, the name and other identifying information of the Employee reporting the violation. Provided, however, that with the authorization of such Employee, City may disclose his or her name and identifying information as necessary to enforce this Chapter or other employee protection laws.

### c) Investigation

City may investigate any possible violations of this Chapter by an Employer. City shall have the authority to inspect workplaces, interview persons and subpoena records or other items relevant to the enforcement of this Chapter.

### d) Informal Resolution

If the City elects to investigate a complaint, City shall make every effort to resolve complaints informally and in a timely manner. The City's investigation and pursuit of informal resolution does not limit or act as a prerequisite for an Employee's right to bring a private action against an Employer as provided in this Chapter.

### 5-37.07. Enforcement

a) Enforcement by City

Where compliance with the provisions of this Chapter is not forthcoming, City may take any appropriate enforcement action to ensure compliance, including but not limited to the following:

1) City may issue an Administrative Citation pursuant to provisions of the Emeryville Municipal Code. The amount of this fine shall vary based on the provision of this Chapter violated, as specified below:

 A. A fine may be assessed for retaliation by an Employer against an Employee for exercising rights protected under this Chapter. The fine shall be one thousand dollars ($1,000.00) for each Employee retaliated against.

 B. A fine of five hundred dollars ($500.00) may be assessed for any of the following violations of this Chapter:

  i. Failure to post notice of the Minimum Wage rate.
  ii. Failure to provide notice of right to designate person in-lieu of spouse or registered domestic partner to use paid sick leave to aid or care for that person.
  iii. Failure to maintain payroll records for the minimum period of time as provided in this Chapter.
  iv. Failure to allow the City access to payroll records.

 C. A fine equal to the total amount of appropriate remedies, pursuant to subsection c) of this section. Any and all money collected in this way that is the rightful property of an Employee, such as back wages, interest, and civil penalty payments, shall be disbursed by the City in a prompt manner.

2) Alternatively, City may pursue administrative remedies in accordance with the following procedures:

Ordinance No. 15-004
Page 10 of 15

A.    Whenever City determines that a violation of any provision of this Chapter is occurring or has occurred, City may issue a written compliance order to the Employer responsible for the violation.

B.    A compliance order issued pursuant to this chapter shall contain the following information:

i.    The date and location of the violation;

ii.   A description of the violation;

iii.  The actions required to correct the violation;

iv.   Either a copy of this Chapter or an explanation of the consequences of noncompliance with this Chapter and a description of the hearing procedure and appeal process;

v.    A warning that the compliance order shall become final unless a written request for hearing before the City is received within fourteen (14) days receipt of the compliance order.

C.    Following receipt of a timely request for a hearing, the City shall provide the Employer responsible for the violation with a hearing before a Hearing Officer designated by City and, if necessary, a subsequent appeal to the City Manager that affords the Employer due process. During the pendency of the hearing and any subsequent appellate process, the City will not enforce any aspect of the compliance order. The decision of the Hearing Officer shall be final with no further right of administrative review.

3) The City may initiate a civil action for injunctive relief and damages and civil penalties in a court of competent jurisdiction

b)  **Private Rights of Action**

An Employee claiming harm from a violation of this Chapter may bring an action against the Employer in court to enforce the provisions of this Chapter and shall be entitled to all remedies available to remedy any violation of this Chapter, including but not limited to back pay, reinstatement, injunctive relief, and or civil penalties as provided herein. The prevailing party in an action to enforce this Chapter is entitled to an award of reasonable attorney's fees, witness fees and costs.

c)  **Remedies**

1)  The remedies for violation of this Chapter include but are not limited to:

A.  Reinstatement, the payment of back wages unlawfully withheld, and the payment of an additional sum as a civil penalty in the amount of $50 to each Employee whose rights under this Chapter were violated for each day or portion thereof that the violation occurred or continued, and fines imposed pursuant to other provisions of this Chapter or state law.

B.  Interest on all due and unpaid wages at the rate of interest specified in subdivision (b) of Section 3289 of the California Civil Code, which shall accrue from the date that the wages were due and payable as provided in Part 1 (commencing with Section 200) of Division 2 of the California Labor Code, to the date the wages are paid in full.

C.  Reimbursement of the City's administrative costs of enforcement and reasonable attorney's fees.

D.  If a repeated violation of this Chapter has been finally determined in a period from July 1 to June 30 of the following year, the City may require the Employer to pay an additional sum as a civil penalty in the amount of $50 to the City for each Employee or person whose rights under this Chapter were violated for each day or portion thereof that the violation occurred or

continued, and fines imposed pursuant to other provisions of this Code or state law.

2) The remedies, penalties and procedures provided under this Chapter are cumulative and are not intended to be exclusive of any other available remedies, penalties and procedures established by law which may be pursued to address violations of this Chapter. Actions taken pursuant to this Chapter shall not prejudice or adversely affect any other action, administrative or judicial, that may be brought to abate a violation or to seek compensation for damages suffered.

3) No criminal penalties shall attach for any violation of this Chapter, nor shall this Chapter give rise to any cause of action for damages against the City.

d) Retaliation Barred

1) An Employer shall not discharge, reduce the compensation of nor otherwise discriminate against any Employee for making a complaint to the City, participating in any of City's proceedings, using any civil remedies to enforce his or her rights, or otherwise asserting his or her rights under this Chapter. Within 120 days of an Employer being notified of such activity, it shall be unlawful for the Employer to discharge any Employee who engaged in such activity unless the Employer has clear and convincing evidence of just cause for such discharge.

2) No Employer may fund increases in compensation required by this Chapter, nor otherwise respond to the requirements of this Chapter, by reducing the wage rate paid to any Employee, nor by increasing charges to them for parking, meals, uniforms or other items, nor by reducing the vacation or other non-wage benefits of any such Employee, except to the extent such prohibition would be preempted by the federal Employee Retirement Income Security Act.

e) Waiver

1) Waiver Through Collective Bargaining

Except to the extent required by law, all or any portion of the applicable requirements of this Chapter may be waived in a bona fide collective bargaining agreement, provided that such waiver is explicitly set forth in such agreement in clear

and unambiguous terms that the parties thereto intend to and do thereby waive all of or a specific portion(s) of this Chapter.

f) Retention of Records

Each Employer shall maintain for at least three years for each Employee a record of his or her name, hours worked, pay rate, Paid Sick Leave accrual and usage, and Service Charge collection and distribution. Each Employer shall provide each Employee a copy of the records relating to such Employee upon the Employee's reasonable request.

g) City Access

Each Employer shall permit access to work sites and relevant records for authorized City representatives for the purpose of monitoring compliance with this Chapter and investigating employee complaints of noncompliance, including production for inspection and copying of its employment records, but without allowing social security numbers to become a matter of public record.

## 5-37.08. No Preemption of Higher Standards

The purpose of this Chapter is to ensure minimum labor standards. This Chapter does not preempt or prevent the establishment of superior employment standards (including higher wages) or the expansion of coverage by ordinance, resolution, contract, or any other action of the City. This Chapter shall not be construed to limit a discharged Employee's right to bring a common law cause of action for wrongful termination.

## 5-37.09. Severability

If any provision or application of this Chapter is declared illegal, invalid or inoperative, in whole or in part, by any court of competent jurisdiction, the remaining provisions and portions thereof and applications not declared illegal, invalid or inoperative shall remain in full force or effect. Nothing herein may be construed to impair any contractual obligations of City. This Chapter shall not be applied to the extent it will cause the loss of any federal or state funding of City activities.

## SECTION THREE.  ADDING SECTION 3-1.141 TO CHAPTER 1 OF TITLE 3 OF THE EMERYVILLE MUNICIPAL CODE

Section 3-1.141 of Chapter 1 of Title 3 of the Emeryville Municipal Code is hereby added to provide as follows.

### 3-1.141   Compliance With Minimum Wage, Paid Sick Leave, and Other Employment Standards

Any person engaging in business in the City of Emeryville shall comply with the requirements of Chapter 37 of Title 5 of this Code as a condition of issuance of a business tax certificate. No person shall engage in business in the City of Emeryville without complying with the requirements of Chapter 37 of Title 5 of this Code.

## SECTION FOUR.  CEQA DETERMINATION

The City Council finds, pursuant to Title 14 of the California Administrative Code, section 15061(b)(3) and section 15378(a), that this Ordinance is exempt from the requirements of the California Environmental Quality Act (CEQA) in that it is not a Project that has the potential for causing a significant effect on the environment.  This action is further exempt from the definition of a Project in section 15378(b)(3) in that it concerns general policy and procedure making.

## SECTION FIVE.  SEVERABILITY

Every section, paragraph, clause, and phrase of this Ordinance is hereby declared severable. If, for any reason, any section, paragraph, clause, or phrase is held to be invalid or unconstitutional, such invalidity or unconstitutionality shall not affect the validity or constitutionality of the remaining section, paragraphs, clauses, or phrases.

## SECTION SIX.  EFFECTIVE DATE

This Ordinance shall take effect thirty (30) days after its final passage. The City Clerk is directed to cause copies of this Ordinance to be posted or published as required by Government Code section 33693.

Ordinance No 15-
Page 15 of 15

## SECTION SEVEN.  CODIFICATION
Sections Two and Three of this Ordinance shall be codified in the Emeryville Municipal Code.   Sections One, Four, Five, Six and Seven shall not be so codified.

This Ordinance was introduced and first read by the City Council of the City of Emeryville at a regular meeting held on Tuesday, May 19, 2015, and **PASSED AND ADOPTED** by the City Council at a regular meeting held on Tuesday, June 2, 2015.

_____
MAYOR


ATTEST:                                              APPROVED AS TO FORM:


_____          _____
CITY CLERK                                          CITY ATTORNEY


CITY OF EMERYVILLE