J. Leah Castella (SBN 205990)
E-mail:  lcastella@bwslaw.com
Benjamin L. Stock (SBN 208774)
E-mail:  bstock@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
1901 Harrison Street, Suite 900
Oakland, CA  94612-3501
Tel:  510.273.8780    Fax:  510.839.9104

Attorneys for Defendant
CITY OF EMERYVILLE

FILING FEE EXEMPT PURSUANT TO
GOVERNMENT CODE § 6103

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CALIFORNIA RESTAURANT
ASSOCIATION, a California nonprofit
mutual benefit corporation,

                    Plaintiff,

v.

CITY OF EMERYVILLE, a California
municipal corporation,

                    Defendant.

Case No.  3:16-cv-06660-JST

**OPPOSITION OF DEFENDANT CITY OF
EMERYVILLE TO MOTION BY
PLAINTIFF CALIFORNIA RESTAURANT
ASSOCIATION FOR PRELIMINARY
INJUNCTION**

Date:        **March 9, 2017**
Time:        **2:00 p.m.**
Place:       **Courtroom 9 – 19th Floor**

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4852-4890-2979 v3

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
3:16-CV-06660-JST

1

**TABLE OF CONTENTS**

2

**Page**

3  INTRODUCTION ............................................................................................... 1

4  STANDARD OF REVIEW ................................................................................ 2

   ARGUMENT ...................................................................................................... 2

5  I.      CRA HAS NOT ESTABLISHED IRREPARABLE INJURY .......................... 2

6  II.     CRA HAS NOT ESTABLISHED PROBABILITY OF SUCCESS ON ITS
           CLAIMS ................................................................................................... 4

7          A.    CRA is Not Likely to Succeed on its Takings Claim ............................ 5

8                1.    CRA Does Not Have Standing to Bring a Takings Claim ........................ 6

9                2.    CRA Does Not Have a Probability of Success on its Takings
                       Claims .......................................................................................... 7

10         B.    CRA is Not Likely to Succeed on its First Amendment Claim ........... 11

11               1.    The Service Charge Requirement Regulates Conduct Not Speech .......... 11

12               2.    The Service Charge Requirement is a Valid Regulation on
                       Commercial Speech ..................................................................... 13

13         C.    CRA is Not Likely to Succeed on its Equal Protection Claim............. 16

           D.    CRA Is Not Likely to Succeed on Its Pre-Emption Claims ................. 18

14               1.    The Service Charge Requirement Does Not Conflict with Federal or
                       State Tax Law .............................................................................. 21

15                     a.    The Service Charge Requirement Does Not Convert Service
16                           Charges to Tips .................................................................... 21

17                     b.    State and Federal Law Do Not Preclude Local Governments
                             From Requiring Employers to Distribute Service Charges to
18                           Employees ............................................................................ 22

19               2.    The Service Charge Requirement Does Not Conflict with Federal or
                       State Labor Law ........................................................................... 23

20 III.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST TIP SHARPLY IN
           THE CITY'S FAVOR ...................................................................................... 26

21 CONCLUSION................................................................................................... 28

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Federal Cases

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
   559 F.3d 1046 (9th Cir. 2009)..................................................................................2

*American Academy of Pain Management v. Joseph*,
   353 F.3d 1099 (9th Cir. 2004)................................................................................15

*American Hotel & Lodging Ass'n*,
   119 F.Supp.3d 1177, 1196 (C.D. Cal. 2015)..........................................................27

*Caribbean Marine Services Co., Inc. v. Baldridge*,
   844 F.2d 668 (9th Cir. 1988)...................................................................................3

*Connolly v. Pension Ben. Guaranty Corp.*,
   475 U.S. 211 (1986).............................................................................................9, 11

*Copantitla v. Fiskardo Estiatorio, Inc.*,
   788 F.Supp.2d 253 (S.D.N.Y. 2011).......................................................................13

*Dana's R.R. Supply v. Attorney General*,
   807 F.3d 1235 (11th Cir. 2015)..............................................................................12

*Davis v. Four Seasons Ltd.*,
   810 F.Supp.2d 1145 (D. Hawaii 2011) ..................................................................24

*Dolan v. City of Tigard*,
   512 U.S. 374 (1994)................................................................................................5

*Eastern Enterprises v. Apfel*,
   524 U.S. 498 (1998).........................................................................................6, 8, 9

*Engquist v. Or. Dep't of Agric.*,
   478 F.3d 985 (9th Cir. 2007)....................................................................................9

*Estrella v. Brandt*,
   682 F.2d 814 (9th Cir. 1982)..................................................................................26

*Expressions Hair Design v. Schneiderman*,
   808 F.3d 118 (2nd Cir. 2015)................................................................................11

*Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*,
   666 F.3d 1216 (9th Cir. 2012)................................................................................16

*Fid. Nat. Title Ins. Co. v. Castle*,
   No. C 11-00896 SI, 2011 WL 5882878 (N.D. Cal. Nov. 23, 2011) .........................4

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4852-4890-2979 v3                    - ii -                    OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
3:16-CV-06660-JST

*Florida Bar v. Went For It, Inc.*,
   515 U.S. 618 (1995) ...................................................................................................15

*Fortuna Enterprises, L.P. v. City of Los Angeles*,
   673 F.Supp.2d 1000 (C.D. Cal. 2008)........................................................................17

*Guifu Li v. A Perfect Day Franchise, Inc.*,
   No. 5:10-CV-01189-LHK, 2012 WL 2236752 (N.D. Cal. June 15, 2012) .............27

*Hart v. Rick's Cabaret Int'l, Inc.*,
   967 F.Supp.2d 901 (S.D.N.Y. 2013)..........................................................................23

*Home Builders Ass'n of Greater Chicago v. City of Chicago*,
   No. 15 C 8268, 2016 WL 5720482 (N.D. Ill. Sept. 30, 2016).................................10

*United States v. Indianapolis Athletic Club, Inc.*,
   818 F.Supp. 1250 (S.D. Ind. 1993) ...........................................................................19

*Int'l Franchise Ass'n, Inc. v. City of Seattle*,
   803 F.3d 389 (9th Cir. 2015)......................................................................................27

*Italian Colors Restaurant v. Harris*,
   99 F.Supp.3d 1199 (E.D. Cal. 2015)..........................................................................12

*Koontz v. St. Johns River Water Management District*,
   133 S. Ct. 2586 (2013)...........................................................................................5, 7

*Lorillard Tobacco Co. v. Reilly*,
   533 U.S. 525 (2001)...................................................................................................15

*Los Angeles Memorial Coliseum Commission v. National Football League*,
   634 F.2d 1198 (9th Cir. 1980)......................................................................................3

*Luiken v. Domino's Pizza, LLC*,
   654 F.Supp.2d 973 (D. Minn. 2009)..........................................................................24

*Lydo Enters., Inc. v. City of Las Vegas*,
   745 F.2d 1211 (9th Cir. 1984)......................................................................................4

*Maldonado v. BTB Events & Celebrations, Inc.*,
   990 F.Supp.2d 382 (S.D.N.Y. 2013)..........................................................................25

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996)...................................................................................................22

*Nollan v. California Coastal Comm'n*,
   483 U.S. 825 (1987).....................................................................................................5

*Oakland Tribune, Inc. v. Chronicle Publ'g Co.*,
   762 F.2d 1374 (9th Cir. 1985)......................................................................................4

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
3:16-CV-06660-JST

*Pacific Rivers Council v. Thomas*,
    30 F.3d 1050 (9th Cir. 1994)......................................................................................20

*Penn Central Transportation Co. v. New York*,
    438 U.S. 104 (1978)....................................................................................................5

*Phillips v. Washington Legal Foundation*,
    524 U.S. 156 (1998)....................................................................................................8

*In Re R.M.J.*,
    455 U.S. 191 (1982)..................................................................................................15

*Railway Express Agency v. New York*,
    336 U.S. 106 (1949)..................................................................................................17

*Rent Stabilization Ass'n of City of New York v. Dinkins*,
    5 F.3d 591 (2nd Cir. 1993)..........................................................................................7

*Rhode Island Hospitality Ass'n v. City of Providence*,
    667 F.3d 17 (1st Cir. 2011)..................................................................................17, 18

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
    547 U.S. 47 (2006)....................................................................................................12

*S.O.C., Inc. v. County of Clark*,
    152 F.3d 1136 (9th Cir. 1998)....................................................................................13

*Sampson v. Murray*,
    451 U.S. 61 (1974)......................................................................................................3

*San Francisco Veteran Police Officers Ass'n v. City & Cty. of San Francisco*,
    18 F.Supp.3d 997 (N.D. Cal. 2014) ............................................................................3

*Sanchez v. City of Fresno*,
    914 F.Supp.2d 1079 (E.D. Cal. 2012)..........................................................................7

*Small v. Avanti Health Sys., LLC*,
    661 F.3d 1180 (9th Cir. 2011)......................................................................................2

*United States v. Sperry Corp.*,
    493 U.S. 52 (1989)......................................................................................................8

*Tech. & Intellectual Prop. Strategies Grp. PC v. Fthenakis*,
    No. C 11-2373 MEJ, 2012 WL 159585 (N.D. Cal. Jan. 17, 2012)............................4

*Thorpe v. Abbott Labs., Inc.*
    534 F.Supp.2d 1120 (N.D. Cal. 2008) ......................................................................24

*Valley View Health Care, Inc., v. Chapman*,
    992 F.Supp.2d 1016 (E.D. Cal. 2016) .........................................................6

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4852-4890-2979 v3

- iv -

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
3:16-CV-06660-JST

*Washington Legal Foundation v. Legal Foundation of Washington*,
  271 F.3d 835 (9th Cir. 2001)...................................................................6, 7, 8

*Webb's Fabulous Pharmacies, Inc. v. Beckwith*,
  449 U.S. 155 (1980) ...................................................................................8

*Williamson v. Lee Optical, Inc.*,
  348 U.S. 483 (1955) ...................................................................................17

*Winter v. Natural Resources Defense Council*,
  555 U.S. 7 (2008) ......................................................................................2

*Woodfin Suite Hotels, LLC v. City of Emeryville*,
  2006 U.S. Dist. LEXIS 64827 ....................................................................17

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*,
  471 U.S. 626 (1985) ...................................................................................13

### State Cases

*Bronco Wine Co. v. Jolly*,
  129 Cal.App.4th 988 (2005)........................................................................13

*Davis v. Four Seasons Hotel Ltd.*,
  122 Hawai'i 423 (2010) ...........................................................................13, 15

*Garcia v. Four Points Sheraton LAX*.
  188 Cal.App.4th 364 (2010)........................................8, 17, 18, 21, 24, 25, 26

*Henning v. Industrial Welfare Comm'n*,
  46 Cal.3d 1262 (1988) ...............................................................................27

*Martin v. Rest. Assocs. Events Corp.*,
  106 A.D.3d 785 (2013) ...............................................................................13

*Searle v. Wyndham International*,
  102 Cal.App.4th 1327 (2002).......................................................................19

*Yamaha Corp. of Am. v. State Bd. Of Equalization*,
  19 Cal.4th 1 (1998) ....................................................................................20

### Federal Statutes

29 U.S.C. § 202(a) ......................................................................................20, 24

29 U.S.C. § 218(a) ......................................................................................24

Fair Labor Standards Act ("FLSA") ................................................................23, 24, 25, 26

Internal Revenue Code § 3102(c)(1).................................................................21

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4852-4890-2979 v3    - v -    OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
3:16-CV-06660-JST

**State Statutes**

18 Cal. Code Regs § 1603 ................................................................................19, 20, 23

22 Cal.Code Regs, § 927-1 ..............................................................................19, 20, 26

Cal. Rev. & Tax Code, § 6012(a)(2) ...............................................................................22

Labor Code §§ 350-356 ..............................................................................................25, 26

Labor Code § 351 ......................................................................................................25

Labor Code § 1205(b) ..............................................................................................20, 24

**Regulations**

29 C.F.R. § 531.55 ........................................................................................................24

DLSE Opinion Letter No. 1994 1.07 ........................................................................19, 20

DLSE Opinion Letter No. 2000 11.02 ......................................................................19, 20

IRS Rev. Rul. 59-252 ...............................................................................................19, 20

IRS Rev. Rul. 59-252 (1959) ...........................................................................................21

IRS Rev. Rul. 2012-18 ..............................................................................................19, 20

IRS Rev. Rule 2012-18, 2012-26 I.R.B ...........................................................................21

**Other Authorities**

First Amendment.........................................................................................1, 11, 12, 13, 16

Fifth Amendment .....................................................................................................1, 5, 7, 8, 9

California Restaurant Association, available at: http://www.calrest.org/mandatory-
   service-charges-vs-tips.html (last visited Feb. 18, 2017)...........................................14

Chez Panisse's Service Charge Segment, available at:
   http://sanfrancisco.cbslocal.com/2013/02/23/chez-panisse-service-charge-not-
   what-many-customers-believe-it-to-be/ ..................................................................14

City Manager Report on Emeryville Minimum Wage and Paid Sick Leave Draft
   Ordinance (April 7, 2015) ........................................................................................15

IRS Publication FS-2015-8 February 2015, "Tips Versus Services Charges: How
   to Report."..................................................................................................................21

Los Angeles Municipal Code § 184.00, *et. seq* ........................................................13, 15

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4852-4890-2979 v3                    - vi -                    OPPOSITION TO MOTION FOR
                                                                    PRELIMINARY INJUNCTION
                                                                    3:16-CV-06660-JST

*O'Connor v. Uber Technologies,*
  2013 WL 6354534 ........................................................................................................................26

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4852-4890-2979 v3                    - vii -                    OPPOSITION TO MOTION FOR
                                                                      PRELIMINARY INJUNCTION
                                                                      3:16-CV-06660-JST

1

**<u>INTRODUCTION</u>**

2      In 2015, Emeryville enacted the Minimum Wage, Paid Sick Leave, And Other

3   Employment Standards Ordinance ("Ordinance") which, among other things, requires hospitality

4   employers in the City to remit any revenue received from service charges to service employees

5   ("Service Charge Requirement").  This common sense mandate was put in place to ensure that

6   service workers' wages were not depressed as a result of a customer being confused or deceived

7   into thinking that something they thought was going to the service employee was, in fact, going to

8   the employer.  The Service Charge Requirement—which mirrors those passed by other

9   jurisdictions—was also necessary to ensure that hospitality employers did not evade California's

10  and Emeryville's bar on crediting gratuity against minimum-wage requirements.  Now, over

11  seventeen months after its enactment, Plaintiff, the California Restaurant Association ("CRA") is

12  seeking a preliminary injunction enjoining the City from continuing to enforce the Ordinance.

13     CRA's Motion for Preliminary Injunction should be denied.  CRA has failed to satisfy the

14  irreparable injury prong of the preliminary injunction test because it alleges only monetary injury,

15  which as a matter of law, is not irreparable.  What damages it does allege are speculative: it failed

16  to introduce into the record <u>any</u> evidence supporting its claims of injury, and its insistence on

17  immediate relief is undermined by the seventeen month delay in making the request.

18     Nor has CRA established a probability of success on the merits.  It lacks standing to bring

19  the taking claims, and even if it had standing, the claim is based on the legally baseless assertion

20  that the business revenue it derives from service charges are "property" within the meaning of the

21  Fifth Amendment.  The First Amendment claim is invalid because the Ordinance does not

22  regulate speech, it regulates conduct; and even if it did implicate the First Amendment, it is a

23  valid limitation on misleading commercial speech.  The Equal Protection claim ignores the

24  extensive circuit precedent holding that far narrower minimum wage laws do not unlawfully

25  discriminate under the rational basis test applicable to regulations like this that do not target

26  suspect classifications.  And the state and federal pre-emption claims—some of which have

27  already been rejected by another Court—are predicated on the incorrect assumption that federal

28  and state law treat service charges as an employer's immutable property.  But, as courts have

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4852-4890-2979 v3                    - 1 -

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
3:16-CV-06660-JST

confirmed, federal and state tax and labor laws do not address employers' property rights, nor do they give employers the right to retain service charges in violation of state or local laws.

## STANDARD OF REVIEW

A preliminary injunction is an extraordinary remedy never awarded as a matter of right. *Winter v. Natural Resources Defense Council,* 555 U.S. 7, 24 (2008).  A party seeking a preliminary injunction must establish a probability of success on the merits, irreparable harm, that the balance of equities tips in his favor, and that an injunction is in the public interest.  *Id*. at 20.

CRA's suggestion that it can establish the requisite showing for irreparable injury by demonstrating either:  (1) a "combination of probable success or the possibility of irreparable injury"; or (2) that serious questions are raised and the balance of hardships tip sharply in its favor is based on pre-*Winter* precedent, which has been overruled.  In *Winter*, the Supreme Court rejected the 9th Circuit's "possibility" test and held that to establish irreparable injury, a party seeking a preliminary injunction must show that irreparable injury is likely in the absence of an injunction.  *Winter*, 555 U.S. at 21.  The Court went on to say that "[i]ssuing a preliminary injunction based on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy . . . ."  *Id.*  To the extent prior Ninth Circuit cases suggest a lesser standard by focusing on the mere possibility of irreparable harm, such cases are "no longer controlling, or even viable."  *Am. Trucking Ass'ns, Inc. v. City of Los Angeles,* 559 F.3d 1046, 1052 (9th Cir. 2009); *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1187 (9th Cir. 2011).  CRA cannot meet any of the requirements for a preliminary injunction.

## ARGUMENT

To be entitled to the relief it seeks, CRA bears the burden of establishing that it will suffer irreparable injury without preliminary relief, that it is likely to succeed on the merits of its claim, that the balance of equities tip in its favor, and that an injunction is in the public interest.  It cannot satisfy any of these requirements.

## I.    CRA HAS NOT ESTABLISHED IRREPARABLE INJURY

After seeking (and receiving permission) to file an oversized brief, CRA devotes a mere paragraph to the argument that its members have suffered irreparable injury.  Pl's. Mot. Prelim.

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4852-4890-2979 v3                           - 2 -                    OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
3:16-CV-06660-JST

Inj. 34:22-35:2, Jan. 31, 2017, ECF No. 17-1.  It claims that its members—whom it does even

identify—will suffer irreparable injury because they are losing revenue, and that their only

remedy to recover the revenue would be a lawsuit.  Pl's. Mot. Prelim. Inj. 34:27-35:2, Jan. 31,

2017, ECF No. 17-1.  This argument fails for three reasons.  First, money damages do not

constitute irreparable injury.  Second, the alleged injury is speculative and not supported by

admissible evidence.  Third, CRA's delay in bringing this injunction undermines its assertion of

irreparable injury.

The injury CRA alleges is lost revenue.  Lost revenue is a monetary injury, and is not

sufficient to establish irreparable injury for purposes of a preliminary injunction.  *Los Angeles*

*Memorial Coliseum Commission v. National Football League,* 634 F.2d 1198, 1202 (9th Cir.

1980).  Indeed, the Supreme Court has held that "[m]ere injuries, however substantial, in terms of

money time and energy necessarily expended … are not enough.  The possibility that adequate

compensatory or other corrective relief will be available at a later date, in the ordinary course of

litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray,* 451 U.S. 61,

90 (1974).  Under this authority, CRA's claim that its members will lose revenue as a result of the

Ordinance is insufficient to satisfy the irreparable injury prong of the preliminary injunction test.

The injury alleged by CRA is also insufficient because it is speculative.  "Speculative

injury does not constitute irreparable injury sufficient to warrant granting a preliminary

injunction." *Caribbean Marine Services Co., Inc. v. Baldrige,* 844 F.2d 668, 674 (9th Cir.

1988).  To establish irreparable injury, a "plaintiff must do more than merely allege imminent

harm" and must instead establish with evidence that it will suffer "immediate threatened injury."

*Id*.  CRA's showing comes nowhere near to satisfying this requirement.  CRA has offered no

evidence to support its claim of irreparable injury.  It failed to include a single affidavit or

declaration from one of its members asserting a loss of revenue.  In fact, it has not even identified

any of its members covered by the Ordinance on whose behalf it claims a purported injury.  The

absence of any evidence is fatal to CRA's request for a preliminary injunction. *San Francisco*

*Veteran Police Officers Ass'n v. City & Cty. of San Francisco,* 18 F.Supp.3d 997, 1006 (N.D. Cal.

2014) ("[A] motion for preliminary injunction must be supported by evidence that goes beyond

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4852-4890-2979 v3                                    - 3 -                          OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
3:16-CV-06660-JST

1   the unverified allegations of the pleadings[.]"); *Fid. Nat. Title Ins. Co. v. Castle*, No. C 11-00896

2   SI, 2011 WL 5882878, at *3 (N.D. Cal. Nov. 23, 2011) ("A motion for preliminary injunction

3   must be supported by '[e]vidence that goes beyond the unverified allegations of the pleadings.'")

4   (quoting 9 Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 2949 (2011)).

5          Finally, CRA's delay in seeking preliminary relief cuts against its claim of irreparable

6   injury.  The Ordinance became effective on July 2, 2015.  CRA's challenge to the Ordinance was

7   filed over seventeen months later on November 17, 2016.  Complaint, Nov. 17, 2016, ECF No. 1.

8   A litigant's claims of irreparable injury and demands for immediate relief are undercut by delay

9   in seeking that relief.  *Oakland Tribune, Inc. v. Chronicle Publ'g Co*., 762 F.2d 1374, 1377 (9th

10  Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of

11  urgency and irreparable harm."); *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213

12  (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in

13  weighing the propriety of relief.").  CRA's unexplained delay is another reason why it has failed

14  to establish any irreparable injury absent issuance of a preliminary injunction.  *See*, *e.g.*, *Tech. &*

15  *Intellectual Prop. Strategies Grp. PC v. Fthenakis*, No. C 11-2373 MEJ, 2012 WL 159585, at *4

16  (N.D. Cal. Jan. 17, 2012) ("Plaintiff, however, did not seek a preliminary injunction from this

17  Court until December 8—almost ten months after Defendant had resigned from the firm. This

18  delay implies that Plaintiff did not consider that Defendant's alleged use of its property

19  constituted irreparable harm which required urgent relief.").

20         It is undisputed that CRA waited over a year and a half to bring any challenge to the

21  City's Service Charge Requirement.  Despite waiting over seventeen months, when it did bring a

22  challenge, the only "irreparable injury" it alleged was monetary damages and it failed to provide

23  any evidence to support even that allegation.  These factors completely undermine CRA's claim

24  of irreparable injury.  This Court should deny CRA's request for a preliminary injunction on that

25  basis alone.

26  II.   **CRA HAS NOT ESTABLISHED PROBABILITY OF SUCCESS ON ITS CLAIMS**

27         If, as it should, this Court denies CRA's Motion because it has failed to establish that its

28  (unidentified) members are likely to suffer irreparable injury absent a preliminary injunction, it is

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4852-4890-2979 v3            - 4 -            OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
3:16-CV-06660-JST

1  not required to evaluate the arguments CRA advances in support of its claim that it is likely to

2  succeed on the merits.  If, however, this Court chooses to evaluate CRA's probability of success

3  arguments, it should reject the Motion on that basis as well, because CRA has failed to establish

4  any likelihood of success on any of its claims.

5  **A.    CRA is Not Likely to Succeed on its Takings Claim**

6  According to CRA, the proceeds from service charges are a definable, unique, and

7  identifiable property interest. Pl's. Mot. Prelim. Inj. 12:16, Jan. 31, 2017, ECF No. 17-1. Based

8  on that assertion, CRA claims that the Service Charge Requirement results in a taking because it:

9  (1) requires Hospitality Employers to transfer a physical property interest subject to the Fifth

10 Amendment to their employees, or alternatively; (2) imposes an unconstitutional condition under

11 *Koontz v. St. Johns River Water Management District* because it conditions a Hospitality

12 Employer's business license on transfer of a physical property interest to their employers.[1] For a

13 valid takings claim, CRA must establish that either a physical taking has occurred or that the City

14 imposed a land-use exaction in violation of *Nollan v. California Coastal Comm'n*, 483 U.S. 825

15 (1987) and *Dolan v. City of Tigard*, 512 U.S. 374 (1994) ("*Nollan/Dolan* Doctrine"), which

16 "protects the Fifth Amendment right to just compensation for property the government takes

17 when owners apply for land-use permits." 133 S. Ct. 2586, 2594. Under *Koontz*, an

18 unconstitutional exaction "amount[s] to a *per se* taking similar to the taking of an easement or a

19 lien." *Id.* at 3600 (citing *Nollan*, 483 U.S. at 831, and *Dolan*, 512 U.S. at 384).

20 CRA's takings argument fails for two reasons. First, it does not have standing to assert a

21 takings claim on behalf of its members. Second, both its physical takings argument and its

22 *Nollan/Dolan* argument are entirely predicated on its notion that the stream of business income

23 represented by service charges is analogous to the principle and interest in a bank account that the

24 Supreme Court found to be within the ambit of the Fifth Amendment in *Webb's Fabulous*

25 *Pharmacies, Inc. v. Beckwith* and *Phillips v. Washington Legal Foundation*. This argument is not

26 in accord with the relevant law, and would represent a radical expansion of the bounds of existing

[1] CRA eschews any argument that the Ordinance imposes a regulatory taking under the test set forth in *Penn Central Transportation Co. v. New York*, 438 U.S. 104, 124 (1978).

takings jurisprudence.  Even if CRA's basic analogy were accepted, as a practical matter, covered employers pay Service Charges to their service employees out of their general revenues, something that is entirely in accord with the Ordinance.  The mere obligation to pay a monetary benefit does not constitute a taking.  *Eastern Enterprises v. Apfel*, 524 U.S. 498, 537 (1998).

1.   CRA Does Not Have Standing to Bring a Takings Claim

CRA cites to a number of cases to support the unremarkable proposition that associations have standing to bring claims on behalf of their members.  Pl's. Mot. Prelim. Inj. 6:7—7:16, Jan. 31, 2017, ECF No. 17-1.  True.  An association has standing to bring claims on behalf of its members if: (1) the members have the right to sue in their own right; (2) the interests the association seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.  Pl's. Mot. Prelim. Inj. 6:9-13, Jan. 31, 2017, ECF No. 17-1.  The issue here is the third prong.

CRA argues that it satisfies the third prong of this test because it is only seeking a "declaration and injunction".  But CRA ignores the fact that this prong of the test is not just focused on the relief sought it is also focused on the underlying claim.  Here, the underlying claim is that the Service Charge Requirement results in a *per se* taking that deprives CRA's members of their property without just compensation.  However, CRA does not have associational standing to bring that claim.[2]  *Washington Legal Foundation v. Legal Foundation of Washington* is instructive on this point.  271 F.3d 835, 850 (9th Cir. 2001).  In that case, the Washington Legal Foundation sought to enjoin the provisions of Washington State's IOLTA program that required escrow or title companies that employ at least one Limited Practice Officer to put client trust dollars into an interest bearing account, with the interest then going to the Legal Foundation of Washington.  The Washington Legal Foundation sought a declaration that those provisions of the law were unconstitutional and an injunction against their future application.  *Id.* at 849.  The Court held that the Washington Legal Foundation did not have standing to bring those claims, and

---

[2] *Valley View Health Care, Inc. v. Chapman* does not resolve this issue.  It dealt with whether arbitration provisions in state law were pre-empted and does not speak to an association's standing to bring a takings claim.  *Valley View Health Care, Inc. v. Chapman*,  992 F.Supp.2d 1016 (E.D. Cal. 2016).

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4852-4890-2979 v3                    - 6 -

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
3:16-CV-06660-JST

concluded that in takings cases, prospective injunctive relief is "inappropriate" since the only remedy for a Fifth Amendment violation is to provide the property owner with just compensation if a taking has occurred. *Id.* The Court stated that, as a result, associations do not have standing to bring takings claims on behalf of their members because "the appropriate relief—determining what, if any, just compensation is due to the owner of the property taken—necessarily requires the participation of the individual members." *Id.* at 850.

The Second Circuit is in accord. In *Rent Stabilization Ass'n of City of New York v. Dinkins,* the Court held that an association did not have standing to bring a takings claim seeking declaratory and injunctive relief on behalf of its members. 5 F.3d 591, 596 (2nd Cir. 1993). The Court emphasized that, for purposes of associational standing, what matters is not just the relief sought, but also the claim asserted. *Id.* The Court explained that to adjudicate a takings claims brought by an association would require a factually specific inquiry for each of its members, and therefore requires the participation of each member of the association. *Id.* On that basis, the Court found that the association did not have standing to bring a takings claim on behalf of its members, even if it was just seeking declaratory and injunctive relief. *Id.* at 597.

An essential element of CRA's takings claim is entitlement to just compensation. Satisfaction of that element of the claim requires an *ad hoc* factual inquiry for each of its members. That inquiry requires participation of CRA's members. Therefore, CRA cannot satisfy the third prong of the associational standing test. Since CRA does not have standing to bring a takings claim, it does not have a probability of success on the merits of this claim.[3]

2.    CRA Does Not Have a Probability of Success on its Takings Claims

CRA asserts a taking based on two theories—a physical taking and an exaction under the

---

[3] CRA suggest that *Koontz v. St. Johns River Water Management District* creates new law authorizing injunctive relief for monetary exactions and obviating ripeness rules. CRA is mistaken. *Koontz* was a modest, logical extension of the *Nollan/Dolan* Doctrine. *Koontz* merely extended *Nollan/Dolan* to monetary exactions; it did not create new takings rules (e.g., authorizing injunctive relief or eliminating ripeness rules). As explained in the City's previous Motion to Dismiss, CRA's takings claims are unripe since it has not sought compensation in State court. See *Sanchez v. City of Fresno,* 914 F.Supp.2d 1079, 1014 (E.D. Cal. 2012) (even where the government has physically taken personal property, the district court must dismiss a federal takings claim if the plaintiff has not sought relief in state court).

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4852-4890-2979 v3          - 7 -          OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
3:16-CV-06660-JST

1   *Nolan/Dolan* Doctrine.[4]  Both rely on the novel claim that the Service Charge Requirement

2   effectuates a taking *per se* on the theory that the business income from service charges are private

3   property within the meaning of the Fifth Amendment.  The Ninth Circuit has held, *en banc*, that

4   *per se* takings analysis does not apply to government regulations requiring the payment of money.

5   *Washington Legal Foundation*, 271 F.3d at 854-55 (*per se* takings analysis does not apply to

6   money: "The *per se* analysis has not typically been employed outside the context of real property.

7   It is a particularly inapt analysis when the property in question is money").  To allow any such

8   new theory would be an end run around a regulatory takings analysis.

9        Even if CRA could overcome this precedent, to support its remarkable claim that <u>business

10  income</u> is constitutionally protected property, CRA relies on a line of cases holding that principle

11  and interest in a segregated bank account are property within the meaning of the Fifth

12  Amendment.  This reliance is misplaced.  In *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449

13  U.S. 155, 156 (1980) and *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 160 (1998),

14  the Supreme Court considered whether principal and interest in a bank account constituted private

15  property subject to the Fifth Amendment.  In both cases, the Court recognized that the principle in

16  a bank account was "plainly private property", and on that basis, concluded that the interest was

17  also private property because under the applicable laws, the owner of the bank account had the

18  legal entitlement to any interest accrued from the principle.  *Webb's Fabulous Pharmacies*, 449

19  U.S. at 160.  There is no similar body of state law here.  See Section II-D (establishing that state

20  labor and tax laws cited by CRA do not grant CRA's members a property interest in revenue from

21  service charges); see also *Garcia v. Four Points Sheraton LAX*, 188 Cal.App.4th 364, 390.

22  ///

---

[4] Notably, CRA is <u>not</u> claiming that the Service Charge Requirement constitutes a regulatory
taking.  That is not surprising, since that argument was rejected in *Garcia v. Four Points Sheraton
LAX,* 188 Cal.App.4th 364, 706 (2010).  In *Garcia*, a California Court of Appeal concluded that
when evaluated under the appropriate test, an identical service charge ordinance enacted by Los
Angeles was a valid economic regulation, not a taking, because it did not appropriate any assets
for government use and instead, simply reallocated the "hotels' revenue derived from service
charges to pay compensation."  *Id.* at 390.  *Garcia* is consistent with the well-established
principle that the mere obligation to pay money does not constitute a taking.  *Eastern Enterprises*,
524 U.S. at 537; *United States v. Sperry Corp.*, 493 U.S. 52, 54 (1989).

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4852-4890-2979 v3                - 8 -                OPPOSITION TO MOTION FOR
                                                          PRELIMINARY INJUNCTION
                                                          3:16-CV-06660-JST

CRA also cites *Engquist v. Oregon Department of Agriculture* for the proposition that the relevant question for assessing whether something is private property is the "certainty of one's expectation in the property interest at issue." Pl's. Mot. Prelim. Inj. 10:14-16, Jan. 31, 2017, ECF No. 17-1. In *Engquist*, the Court considered whether a punitive damage award is private property under the Fifth Amendment. *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 1002 (9th Cir. 2007). The Court concluded that it did was not because a litigant does not have a guaranteed expectation in receiving a punitive damage award. *Id.* at 1003. Under this standard, service charges are plainly not property. Service charges are a component of business income. No business owner has a guaranteed expectation in business income. Like punitive damage awards, business income is inherently uncertain. As the Court in *Eastern Enterprises* explained, the kinds of property interests covered by the Fifth Amendment include an estate in land, a valuable interest in an intangible benefit like intellectual property, and a bank account or accrued interest. *Eastern Enterprises*, 524 U.S. at 540. Service charges simply don't fit into any of those categories.

Not only is the case law inapposite, CRA's rhetorical claim that service charges are "specific, traceable, and identified sums of money" is unpersuasive. Accepting that any stream of business income that is "traceable" and separately identifiable constitutes immutable, constitutionally protected property—subject to *per se* takings analysis—would radically expand the bounds of the Fifth Amendment. Unsurprisingly, no court has ever endorsed such a proposition. Consider the problem of definition if such a proposition were accepted. All business income is "specific, traceable, and identified sums of money." Service charges appear as a line-item on customers' bills, but this does not distinguish such charges from any other form of business income. A business can always trace the origin of the streams of revenue that ultimately become part of its general assets. If CRA were correct that the business income generated by a single bill is Fifth Amendment "property" subject to *per se* takings analysis it would turn on its head the well-established rule that "it cannot be said that the Taking Clause is violated whenever legislation requires one person to use his or her assets for the benefit of another." *Connolly v. Pension Ben. Guaranty Corp.*, 475 U.S. 211, 222-23 (1986).

///

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4852-4890-2979 v3          - 9 -          OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
3:16-CV-06660-JST

1    Moreover, even if CRA's analogy equating the business income from service charges to

2    the principal and interest in a segregated account was viable, it would not apply here because the

3    Ordinance does not mandate that Hospitality Employers use service charge income to satisfy the

4    Service Charge Requirement.  The Ordinance does not require Hospitality Employers to sequester

5    the <u>specific funds</u> generated from a service charge for payment to covered employees.  Instead,

6    Hospitality Employers pay the amount of the service charge to the relevant employees in the next

7    pay period, as part of a regular paycheck, and may (and assuredly do) make this payment from

8    general assets.  This was made clear in the portion of the Ordinance that the "service charge shall

9    be distributed to the hospitality workers not later than <u>the next payroll</u> following the work or

10   collection of the charge from the customer, whichever is later." Sec. 5-37.04(b)(1) (emphasis

11   added).  It is also the general practice in the industry.  Huber Decl., ¶¶ 17-18.  CRA has

12   identified no instance in which the City—or any other city where a similar Service Charge

13   Requirement is in place—has insisted that a covered restaurant (1) require customers to pay

14   separately for the service-charge portion of their bill, (2) sequester the resulting "service-charge"

15   funds into a separate account; and (3) pay covered employees their portion of the service charge

16   *only* from this separate, sequestered "service-charge" fund.

17   By CRA's own admission, establishing that the business revenue from a service charge is

18   specific, identifiable, property is vital to both its physical taking claim and its *Nolan/Dolan*

19   Doctrine claim.  Pl's. Mot. Prelim. Inj. 12:7-14 – 13:25, Jan. 31, 2017, ECF No. 17-1.  This

20   assertion is consistent with case law, which holds that the *Nollan/Dolan* doctrine <u>only</u> applies

21   when the government benefit is conditioned on the conveyance of an "identifiable, protected,

22   property interest".  *Home Builders Ass'n of Greater Chicago v. City of Chicago*, No. 15 C 8268,

23   2016 WL 5720482, at *4 (N.D. Ill. Sept. 30, 2016).  Since service charges are not a specific,

24   identifiable property, there is no taking.  As a result, CRA has not established that it has a

25   probability of success on its takings claim.[5]

---

[5] CRA suggests that the Service Charge Requirement does not serve any public purpose.  Pl's.
Mot. Prelim. Inj. 14:16-23, Jan. 31, 2017, ECF No. 17-1.  This argument is puzzling.  Whether or
not the Service Charge Requirement serves a public purpose is irrelevant to CRA's physical
taking and unconstitutional condition claims, because, if those claims were accurate, then,

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4852-4890-2979 v3          - 10 -          OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
3:16-CV-06660-JST

**B.     CRA is Not Likely to Succeed on its First Amendment Claim**

CRA also claims that the Service Charge Requirement impermissibly restricts free speech in violation of the First Amendment.  Pl's. Mot. Prelim. Inj. 15:26, Jan. 31, 2017, ECF No. 17-1. CRA's argument is wrong on two counts.  First, the Service Charge Requirement regulates conduct, not speech and therefore, does not implicate the First Amendment.  Second, even if the Service Charge Requirement did implicate the First Amendment, it is a valid regulation on deceptive commercial speech, and is therefore constitutional.

1.     The Service Charge Requirement Regulates Conduct Not Speech

According to CRA, communications about pricing are considered speech under the First Amendment.  CRA then claims that because the Service Charge Requirement "imposes a financial burden on hospitality employers based on the manner in which they convey pricing," it is subject to strict scrutiny under the First Amendment.  Pl's. Mot. Prelim. Inj. 16:10, Jan. 31, 2017, ECF No. 17-1.  CRA misunderstands the relevant case law.

First, contrary to CRA's claim, *Virginia Board of Pharmacy v. Virginia Citizens of Consumer Counsel*, *Inc*. does not make all pricing information subject to First Amendment protection.  Pl's. Mot. Prelim. Inj. 16:28, Jan. 31, 2017, ECF No. 17-1.  As explained in *Expressions Hair Design v. Schneiderman*, "prices, although necessarily communicated through language, do not rank as 'speech' within the meaning of the First Amendment."  808 F.3d 118, 130 (2nd Cir. 2015).  The Second Circuit explained that *Virginia Board of Pharmacy* only confirmed that advertising of <u>lawful prices</u> is protected by the First Amendment, but laws that regulate pricing do not implicate First Amendment concerns.  *Id*. at 131.  That is precisely what the Service Charge Requirement does:  it regulates pricing by requiring that any charge that is described in such a way as to make customers reasonably believe that the amounts are for services be paid to the hospitality worker performing service for the customer from whom the

regardless of its purpose, the Service Charge Requirement would be invalid unless the City paid just compensation, which it concededly has not done.  Nor is the City required to pay just compensation, because, as explained, the Service Charge Requirement is nothing more than a regulations requiring one person to use his or her assets for the benefit of another.  The law is unequivocal that such regulations do not constitute an illegal taking and are, instead, a valid exercise of the police power.  See *Connolly*, 475 U.S. at 223.

Burke, Williams & Sorensen, LLP
Attorneys At Law
Oakland

OAK #4852-4890-2979 v3                           - 11 -

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
3:16-CV-06660-JST

charge is collected.  Sec. 5-37.04(a)(1).   This kind of restriction, which tells regulated entities what they "must do", not what they "must say" is a restriction on conduct, not a restriction on speech.  See *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 60 (2006).

Both *Italian Colors Restaurant v. Harris* and *Dana's R.R. Supply v. Attorney General* are in accord.  In those cases, the Courts considered whether state laws that prohibited retailers from imposing surcharges on cardholders who elect to use a credit card was a regulation of speech or a regulation of conduct.  *Italian Colors Restaurant v. Harris*, 99 F.Supp.3d 1199, 1202 (E.D. Cal. 2015) and *Dana's R.R. Supply v. Attorney General*, 807 F.3d 1235, 1242 (11th Cir. 2015).  As the Court in *Dana's R.R. Supply* explained, the no surcharge requirement was a regulation on speech because it did not serve any regulatory purpose.  *Dana's R.R. Supply*, 807 F.3d at 1244-45.  It did not prohibit merchants from charging different prices to different customers depending on whether payment is made in case or by credit card, nor was it intended to keep retailers from concealing the existence of the surcharge from consumers.  *Id*. at 1244.  Instead, the statute "targets expression alone".  In direct contrast, the Service Charge Requirement serves a direct regulatory function:  it ensures that customers are not misled into believing that a service charge goes to the service employee when, in fact, it goes to the employer; and it  accomplishes that objective by regulating conduct, not speech.  In fact, nothing in the Ordinance prohibits a Hospitality Employer from describing a particular charge as a "service charge," it simply requires that, when a charge is described as such, the Hospitality Employer remit the proceeds of that charge to the covered employee.[6]  Sec. 5-37.04(b)(1).  The Service Charge Requirement is a garden variety regulation on pricing conduct and does not implicate the First Amendment.  CRA therefore cannot establish that it has a probability of success on its First Amendment Claim.

///

///

---

[6] CRA's claim that the Service Charge Requirement is unconstitutional under *Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.* and *Rosenberger v. Rector & Visitors of the Univ. of VA* is farfetched.  Both of those cases address financial restrictions on public expression. Even according to CRA's authorities, communication about pricing is commercial speech, not public expression, which makes these cases wholly inapplicable.  *Italian Colors*, 99 F.Supp.3d at 1209; *Dana's R.R. Supply*, 807 F.3d at 1246.

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4852-4890-2979 v3                              - 12 -

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
3:16-CV-06660-JST

2.    The Service Charge Requirement is a Valid Regulation on Commercial Speech

Even if this Court were to determine that the Service Charge Requirement implicates speech, it would still constitute a valid regulation on commercial speech.  As *S.O.C., Inc. v. County of Clark* (a case cited by CRA) makes clear, the First Amendment affords less protection to commercial speech than to other forms of speech.  152 F.3d 1136, 1142 (9th Cir. 1998).  Pricing descriptions, which do nothing more than propose a commercial transaction, are plainly commercial speech.  *Id*. at 1143.  It is well settled that regulations preventing the dissemination of commercial speech that are false, deceptive, or misleading are legitimate.  *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 638 (1985).  When commercial speech is inherently misleading, there is no inquiry into the regulation's legitimacy because there is no First Amendment protection for misleading speech.  *Bronco Wine Co. v. Jolly,* 129 Cal.App.4th 988, 1005 (2005).

The speech at issue here—the use of the term "service charge" when what is being described is a charge that goes to an employer and not to the server—is false, deceptive, and misleading.  This fact is not "speculative" or "conjectural", as CRA maintains.  In Hawaii, the State Legislature prepared a committee analysis for a law ("Hawaii Law") similar to the Service Charge Requirement, which that concluded that services charges that do not go to the employee mislead the customer "into believing that the employee has been rewarded for providing good service…"  *Davis v. Four Seasons Hotel Ltd.*, 122 Hawai'i 423, 434 (2010).  In Los Angeles, an identical ordinance ("LA Ordinance") stated  that "many hotel customers reduce or eliminate gratuities (tips) they would otherwise pay to service workers because they assume that the workers receive the 'service charges' which are added to their bills."  Los Angeles, California, Municipal Code § 184.00, *et. seq*.  Courts have reached the same conclusion.  *See*, *e.g.*, *Copantitla v. Fiskardo Estiatorio, Inc*., 788 F. Supp. 2d 253, 286 (S.D.N.Y. 2011) (noting that the "general customer expectation" is that "the Banquet Service Charge is a gratuity"); *Martin v. Rest. Assocs. Events Corp.,* 106 A.D.3d 785, 786 (2013) ("customers reasonably believed that the service charge was a gratuity, the defendants' policies misled customers into believing that the

1   service charge was a gratuity, and the catering order forms and menus failed to notify customers

2   that the service charge was not a gratuity.").

3         In addition, local press has reported on customer confusion about service charges.  See

4   Chez Panisse's Service Charge Segment, available at:

5   http://sanfrancisco.cbslocal.com/2013/02/23/chez-panisse-service-charge-not-what-many-

6   customers-believe-it-to-be/ (local CBS affiliate reports on customer confusion about where Chez

7   Panisse's "service charge" goes).  And, notably, California Restaurant Association itself

8   recognizes that adding service charges can create confusion among customers:

9           As to surcharges, as set forth above, if they are distributed to

10  employees they are wages and should be treated as service charges.
    Likewise, given recent comments by several City Attorneys like

11  San Diego, it is probably prudent that a restaurant disclose up front
    that the meal is subject to a surcharge and the percentage i.e. on the

12  menu, in a prominent sign or posting or even a card at the table.
    Surcharges are allowed but to avoid any claim of false or

13  misleading advertising, disclosure to the customer would be a
    prudent and a conservative approach of any mandatory additional

14  charge be they called a service charge or surcharge.

15  What is the solution to avoid confusion between tips and service
    charges? There are a few options and restaurant owners may not

16  like any of them. Here are some suggestions:

17  Indicate a "suggested gratuity" on the customer's receipt but do not
    add it to the total on the receipt allowing the customer to designate

18  the gratuity voluntarily

19  Charge sales tax on all service charges and any separate surcharge
    line item, regardless of the amount paid to the employee

20  Eliminate all service charges and automatic gratuities

21  Consult with your tax advisor or attorney to determine the proper
    method of taxing service charges and paying your employees"

22

23  See California Restaurant Association, available at: http://www.calrest.org/mandatory-service-

24  charges-vs-tips.html (last visited Feb. 18, 2017).

25        The Service Charge Requirement specifically targets demonstrably misleading speech,

26  and is therefore valid.  To get around this, CRA makes two arguments.  First, it cites *Greater New*

27  *Orleans Broadcasting Ass'n, Inc. v. U.S.* for the proposition that that evidence of deception

28  cannot be speculative, and claims that there is "no evidence" that the City undertook any

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4852-4890-2979 v3                     - 14 -                     OPPOSITION TO MOTION FOR
                                                                     PRELIMINARY INJUNCTION
                                                                     3:16-CV-06660-JST

1   investigation to determine consumers' reasonable beliefs as to the service charge.  Pl's. Mot.

2   Prelim. Inj. 17:25, Jan. 31, 2017, ECF No. 17-1.  Wrong.  Other jurisdictions with substantial

3   experience with the hospitality industry have gathered extensive evidence that establishes that

4   service charges that go to the employer are deceptive and misleading, and lead to reduced wages

5   for service workers.  See *Davis v. Four Seasons Hotel Ltd.*, 122 Hawai'i at 434; Los Angeles,

6   California, Municipal Code § 184.00, *et. seq*.  Emeryville expressly referenced the findings of

7   other jurisdictions when it adopted the Ordinance.  (See City Manager Report on Emeryville

8   Minimum Wage and Paid Sick Leave Draft Ordinance (April 7, 2015), Unite Here Local 2850's

9   Request for Judicial Notice in Support of its Motion to Dismiss Exh. 7.  As illustrated in *R.M.J.*,

10  one of the cases cited by CRA holds, when "experience has proved that in fact such advertising is

11  subject to abuse", regulations are legitimate.  *In Re R.M.J.*, 455 US. 191, 203 (1982).

12         Second, CRA claims that the Service Charge Requirement is not the "least restrictive

13  means" to enforce its interest in combatting deceptive advertising practices, which it claims is

14  required by *R.M.J.*  Pl's. Mot. Prelim. Inj. 18:11-13, Jan. 31, 2017, ECF No. 17-1.  Contrary to

15  CRA's characterization, *R.M.J.* does not require that a legislature regulate deceptive speech using

16  the least restrictive means possible.  It simply states that the regulations should not be any broader

17  than reasonably necessary to prevent the deception.  *R.M.J*, 455 U.S. at 203.  This is consistent

18  with Ninth Circuit authority, which holds that "[i]n considering the restriction imposed on

19  commercial speech, we do not require that it be the least restrictive means available."  *American*

20  *Academy of Pain Management v. Joseph*, 353 F.3d 1099, 1111 (9th Cir. 2004).  Instead, all the

21  law requires "'is a "fit" between the legislature's ends and the means chosen to accomplish those

22  ends,' a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single

23  best disposition but one whose scope is "in proportion to the interest served," that employs not

24  necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired

25  objective.'" *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 632 (1995) (internal citations

26  omitted); *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 528 (2001).

27         The Service Charge Requirement easily meets this standard.  It covers "separately

28  designated amounts" that are for service provided or are "described in such a way that customers

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4852-4890-2979 v3                     - 15 -                    OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
3:16-CV-06660-JST

1   might reasonably believe that the amounts are for those services." Sec. 5-37.04(a)(1).  CRA

2   suggests otherwise, and argues that the Service Charge Requirement could have, but does not,

3   provide "a mechanism whereby Hospitality Employers could impose and keep service charges

4   provided they inform customers that the charges are not intended as gratuities."  Pl's. Mot.

5   Prelim. Inj. 18:16, Jan. 31, 2017, ECF No. 17-1.  But, there is no question that the language,

6   which defines covered service charges based on the reality that the charges are to go to employees

7   or the perception of the customer that they are to go to the employees, can reasonably be

8   construed as allowing Hospitality Employers to impose charges that make clear that the charge is

9   going to the management without implicating the Service Charge Requirement.  Where, as here, a

10  reasonable construction of a statute enacted by the voters passes constitutional muster, that should

11  be the construction adopted by the Court.  *Fair Hous. Council of San Fernando Valley v.*

12  *Roommate.com, LLC*, 666 F.3d 1216, 1222 (9th Cir. 2012) ("It's a 'well-established principle that

13  statutes will be interpreted to avoid constitutional difficulties.'" (*quoting Frisby v. Schultz,* 487

14  U.S. 474, 483 (1988)).

15      There is overwhelming evidence that terms like "service charge" mislead customers into

16  thinking that the charge they are paying goes to their server, not to the Hospitality Employer.  As

17  a matter of law, a City is well within its rights to enact regulations prohibiting this kind of

18  misleading speech.  That is what Emeryville did when it enacted the Ordinance, and in doing so,

19  it fully complied with the First Amendment.  Consequently, CRA has not established a

20  probability of success on its First Amendment claim.

21      **C.      CRA is Not Likely to Succeed on its Equal Protection Claim**

22      CRA acknowledges in its Motion that the appropriate standard in this case is rational basis

23  review.  Pl's. Mot. Prelim. Inj. 20:6-9, Jan. 31, 2017, ECF No. 17-1.  And, as CRA rightly points

24  out, the appropriate standard for determining whether that test is satisfied is whether there is "any

25  reasonably conceivable state of facts that could provide a rational basis for the [challenged]

26  classification."  Pl's. Mot. Prelim. Inj. 20:6-9, Jan. 31, 2017, ECF No. 17-1.  CRA claims that this

27  standard is not satisfied in this case because the Service Charge Requirement: (1) exempts other

28  tipped employees, such as valet car attendants, car wash workers, golf course caddies, and

1    barbers; and (2) exempts governmental entities.  Pl's. Mot. Prelim. Inj. 19:15-21, Jan. 31, 2017,

2    ECF No. 17-1.  Neither argument withstands scrutiny.

3          It is well settled that a legislative body does not need to take an "all or nothing" approach

4    to regulate all businesses equally.  *Railway Express Agency v. New York*, 336 U.S. 106 (1949) ("It

5    is no requirement of equal protection that all evils of the same genus be eradicated or none at

6    all").  "[R]eform may take one step at a time, addressing itself to the phase of the problem which

7    seems most acute to the legislative mind.  The legislature may select one phase of one field and

8    apply remedy there, neglecting the others."  *Williamson v. Lee Optical*, 348 U.S. 483, 489 (1955);

9    *Woodfin Suite Hotels, LLC v. City of Emeryville*, 2006 U.S. Dist. LEXIS 64827 at *67-68

10   (rejecting the same arguments).  Here, the law's stated purpose is to provide "equitable

11   disbursement of hospitality service charges above and beyond the requirements of state law."

12   Exh. A to Complaint, ¶ 24.  It was reasonable for Emeryville to conclude hotels, restaurants, and

13   banquet facilities' imposition of "service charges" had a greater likelihood of misleading

14   customers, thereby reducing gratuities left to service employees, because tipping is common

15   practice in this industry.

16         Although workers in other industries, like valet parking, car washes, golf courses, and

17   barbers may receive some tips as part of their income, tips for those employees are not considered

18   a fundamental component of their payment, as it is in the restaurant and hotel industries.  *Rhode*

19   *Island Hospitality Ass'n v. City of Providence*, 667 F.3d 17, 40 (1st Cir. 2011) ("Plaintiffs'

20   argument is that the Ordinance impermissibly distinguishes between hotels and other tourism-

21   related industries, and between hotels within and outside of Providence.  Plausible justifications,

22   however, exist for both of these distinctions."); *Fortuna Enterprises, L.P. v. City of Los Angeles*,

23   673 F.Supp.2d 1000, 1003 (C.D. Cal. 2008) (living-wage ordinance targeting large hotels in LAX

24   Corridor had rational basis: "In light of the Ninth Circuit's decision in *RUI One*, it is clear that

25   there is a rational basis for the Ordinance at issue here."); *Garcia*, 188 Cal.App.4th at 381-86

26   (service charge ordinance that applied to large hotels in LAX corridor rationally based).

27         Emeryville also has a rational basis in exempting government entities from the law:

28   employees from government entities do not receive, nor rely on, income from tips or gratuities.

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4852-4890-2979 v3          - 17 -          OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
3:16-CV-06660-JST

1   The law is clearly intended to regulate industries where employees rely on tip income, and not

2   just as a supplement to hourly wages.  *Garcia*, 188 Cal.App.4th at 385 (upholding LA Ordinance

3   from an EPC challenge because the limited applicability of the ordinance was rationally related to

4   the problems of 1) reduced gratuities resulting from customer confusion; 2) low wages in the

5   service industry and; 3) a decline in tip income following business decisions to institute service

6   charges).  Employees of government entities are not afflicted with the problems that the Service

7   Charge Requirement attempts to address, and thus, Emeryville has a rational basis for not

8   including them, or other businesses, in the law.  CRA's Third Cause of Action for violations of

9   equal protection should be dismissed.

10          Finally, CRA's argument flies in the face of well settled precedent holding that minimum

11  compensation laws that are far narrower than the Ordinance do not violate equal protection.  In

12  *Rhode Island v. Hospitality Association v. City of Providence*, the Court held that were was a

13  plausible basis for distinguishing between hotels and other tourism-related industries, and

14  between hotels within and outside of providence.  667 F.3d 17, 50 (1st Cir. 2011).  And in

15  *Garcia*, the Court determined that a service charge ordinance that only applied to large hotels in

16  LAX corridor was rationally based.  *Garcia*, 188 Cal.App.4th at 381-86.

17          There is clearly a conceivable set of facts justifying Emeryville's decision to limit the

18  Service Charge Requirement to Hospitality Employers.  CRA has therefore failed to establish a

19  probability of success on its Equal Protection claim.

20          **D.      CRA Is Not Likely to Succeed on Its Pre-Emption Claims**

21          CRA's final argument that the Service Charge Requirement is preempted hinges on two

22  faulty assumptions: 1) that the Service Charge Requirement impermissibly transforms mandatory

23  service charge payments into gratuities; and 2) that state and federal law confer service charges

24  upon employers as their immutable property.  CRA is wrong on both counts.

25          First, CRA is correct that, under state and federal labor and tax laws, compulsory

26  payments that the customer must make are service charges, and voluntary payments that the

27  customer controls and may choose whether to make are tips or gratuities.  Pl.'s. Mot. Prelim. Inj.

28  24:9-10, Jan. 31, 2017, ECF No. 17-1.  But, contrary to CRA's allegations, the Service Charge

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4852-4890-2979 v3                         - 18 -                OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
3:16-CV-06660-JST

1    Requirement does not transform a mandatory payment into a gratuity in violation of state and

2    federal law.  Rather, it simply requires employers who impose mandatory service charges to pass

3    the revenue from those charges on to the employees who actually perform the service.  Nothing in

4    state or federal law prevents this result.  Since the categorization of a payment as a service charge

5    or gratuity depends entirely on whether the payment was mandatory or voluntary – not whether

6    the employer retains the funds or pays them to the employee – the Service Charge Requirement

7    does not upset the framework developed under state and federal tax and labor laws.  See *United

8    States v. Indianapolis Athletic Club, Inc*., 818 F.Supp. 1250, 1252-1253 (S.D. Ind. 1993).  Indeed,

9    as the authorities cited by CRA make clear, employers routinely pay the service charges they

10   collect to the employees that provide the service – they simply pay the charges as wages rather

11   than tip income.  U.S. D.O.L. Op. Letter of July 12, 1999 at pp. 2-3; U.S. D.O.L. Op. Letter of

12   February 8, 1985, pp. 2-3 and 8; IRS Rev. Rul. 59-252 and Rev. Rul. 2012-18; 18 Cal. Code Regs

13   § 1603; 22 Cal.Code Regs, § 927-1; DLSE Opinion Letter No. 2000 11.02 at p. 2; DLSE Opinion

14   Letter No. 1994 1.07.  Not only is such a practice not in conflict with state and federal laws, but it

15   is actually expressly acknowledged and permitted.  *Id.*; *Searle v. Wyndham International*, 102

16   Cal.App.4th 1327, 1334 (2002).

17            Second, the state and federal laws that CRA cites do not even address employers' property

18   rights, much less confer an incontrovertible right on employers to retain service charges in

19   violation of state or local laws.  While CRA is also correct that, under state and federal law, a

20   service charge is part of an employer's gross receipts and, ordinarily, the employer may decide

21   whether or not to distribute it to its employees, CRA's argument breaks down when it claims that

22   state and federal laws' inclusion of service charges in employers' gross receipts somehow assigns

23   the charges to employers as their inalienable property.  It does not.  On the contrary, these laws

24   are wholly indifferent to the charges' distribution, and instead, merely note that, absent some

25   additional state or local regulation, employers have the discretion to decide whether to retain the

26   charges or pay them to the deserving employee.  Far from protecting service charges as employer

27   property, state and federal labor and tax laws expressly contemplate that service charges may be

28   distributed by employers to employees.  U.S. D.O.L. Op. Letter of July 12, 1999 at pp. 2-3; U.S.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4852-4890-2979 v3                              - 19 -

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
3:16-CV-06660-JST

1    D.O.L. Op. Letter of February 8, 1985, pp. 2-3 and 8; IRS Rev. Rul. 59-252 and Rev. Rul. 2012-

2    18; 18 Cal. Code Regs § 1603; 22 Cal. Code Regs § 927-1; DLSE Opinion Letter No. 2000 11.02

3    at p. 2; DLSE Opinion Letter No. 1994 1.07.  And, in many of the administrative decisions CRA

4    cites, the agencies tasked with interpreting state and federal labor and tax laws expressly refused

5    to include in the service charge/gratuity distinction any requirement that the service charge be

6    retained by the employer.[7]  Pl's. Addendum of Legal Authority in support of Mot. Prelim. Inj. 21,

7    24, 28, 43, 53, and 57, Jan. 31, 2017, ECF No. 17-2.

8          It is well-established that state and local governments may require employers to use

9    revenue from their gross receipts to pay minimum wages to their employees.   It is also clear that

10    state and local governments are also free to enact more stringent wage and employee protections

11    than those currently imposed under state and federal law.  Pl's. Mot. Prelim. Inj. 23:19-21, Jan.

12    31, 2017, ECF No. 17-1; 29 U.S.C. § 202(a); Cal. Lab. Code, § 1205(b).  Accordingly, the fact

13    that state and federal laws grant employers the discretion to choose how to spend revenue from

14    service charges is utterly irrelevant.  What matters is that there is nothing in state or federal law

15    that prohibits, or even suggests, that local governments cannot enact more stringent legislation

16    requiring employers to pay service charges to the employees that provided the service.

17          Indeed, CRA's conflict arguments are belied by the fact that it was seemingly incapable of

18    including any evidence with its moving papers that its members were unable to comply with both

19    the Service Charge Requirement and federal and state tax and labor laws.  If, as CRA argues, the

20    requirement disrupts employers' payment of federal and state taxes and ability to comply with

21    

22    ───────────────
     [7] CRA stresses that opinions and advice letters issued by federal and state administrative agencies,
     like the Federal Department of Labor ("DOL"), the Internal Revenue Service ("IRS"), the

23    California Board of Equalization ("BOE"), and California Division of Labor Standards
     Enforcement ("DLSE"), should be deferred to by this Court.  Pl's. Mot. Prelim. Inj. 24:20-25;

24    27:8-22, Jan. 31, 2017, ECF No. 17-1.  However, the opinion letters CRA cites do not support its
     contention that a "service charge belongs solely to the employer."  Pl's. Mot. Prelim. Inj. 25:18-

25    20, Jan. 31, 2017, ECF No. 17-1.  Nor would such an opinion be entitled to any deference.  These
     agencies are tasked with enforcing labor and tax laws and have no special knowledge or the

26    authority to create or define employers' property interests.  See *Pacific Rivers Council v. Thomas*,
     30 F.3d 1050 (9th Cir. 1994); *Yamaha Corp. of Am. v. State Bd. Of Equalization*, 19 Cal.4th 1

27    (1998).  Moreover, these opinion letters did not go through formal notice-and-comment

28    rulemaking procedures, and as such, are entitled to little weight.  *Id.*

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4852-4890-2979 v3                    - 20 -                    OPPOSITION TO MOTION FOR
                                                                  PRELIMINARY INJUNCTION
                                                                  3:16-CV-06660-JST

1  federal and state labor requirements, CRA should be able to present declarations from its

2  members establishing the conflict.  The fact that CRA could not do so exposes the insincerity of

3  its arguments.  The truth is that CRA's members have been complying with the Service Charge

4  Requirement, other local laws like it, and federal and state tax and labor laws for years without

5  any conflict.  As such, CRA's preemption arguments fail.

6          1.    The Service Charge Requirement Does Not Conflict with Federal or State
               Tax Law
7
8          CRA asserts that the Service Charge Requirement is preempted under federal and state tax

9  laws.  First, CRA claims that the requirement is preempted under federal tax law because it

10 disrupts IRS revenue rulings that hold that mandatory payments cannot be tips for federal tax

11 purposes.  Pl's. Mot. Prelim. Inj. 23:1-15, Jan. 31, 2017, ECF No. 17-1.  Second, CRA claims that

12 the Service Charge Requirement is preempted under California sales tax law because service

13 charges are included in a business' gross receipts for sales tax purposes, and therefore, a

14 municipality cannot require a business to pay the charge to its employees.  Pl's. Mot. Prelim. Inj.

15 30:17-26, Jan. 31, 2017, ECF No. 17-1.  Both of these arguments fail.

16          a.    *The Service Charge Requirement Does Not Convert Service*
                   *Charges to Tips*
17
18         CRA is correct that the Internal Revenue Code provides that mandatory payments are

19 service charges and voluntary payments are tips.  Rev. Rule 2012-18, 2012-26 I.R.B.  However,

20 contrary to CRA's assertions, the Service Charge Requirement does not contradict federal tax law

21 definitions of tips and service charges; it simply mandates that, if an employer imposes service

22 charges on its customers, it must distribute the revenues to its service workers.  See *Garcia*, 188

23 Cal.App.4th at 377-78.  Since an employer can easily accomplish this objective by distributing

24 the service charge to its employees as wages, CRA's preemption argument fails.  See IRS Rev.

25 Rul. 59-252 (1959); IRS Publication FS-2015-8 February 2015, "Tips Versus Services Charges:

26 How to Report."

27         Nor, as CRA suggests, does the Service Charge Requirement disrupt the federal process

28 for taxing employee tips.  Pl's. Mot. Prelim. Inj. 23:5-15, Jan. 31, 2017, ECF No. 17-1.  Internal

   Revenue Code section 3102(c)(1) provides that the required withholding of federal taxes on tips

1   will be made from the other wages of the employee, but service charges, if provided to the

2   employee, should be taxed directly.  According to CRA, since the Service Charge Requirement

3   prohibits the employer from retaining any portion of the service charge and mandates that the

4   charges be paid to the workers, in their entirety, the law conflicts with federal tax law by

5   requiring employers to pay service charges to employees but forbidding them from taxing the

6   charges. Pl's. Mot. Prelim. Inj. 23:5-15, Jan. 31, 2017, ECF No. 17-1.  CRA's construction is

7   unreasonable and ignores the strong presumption against preemption.  *See*, *e.g.*, *Medtronic, Inc. v.*

8   *Lohr*, 518 U.S. 470, 485 (1996).  The Service Charge Requirement is most reasonably construed

9   as requiring hospitality employers to pay service charges, in their entirety, to hospitality workers

10   as their gross pay.  Nothing about this requirement interferes with employers' obligations to tax

11   employees' wages pursuant to federal law.

12          b.      *State and Federal Law Do Not Preclude Local Governments From*
                    *Requiring Employers to Distribute Service Charges to Employees*
13

14          The crux of CRA's sales tax preemption arguments is that municipalities cannot require

15   businesses to pay amounts to employees that are included in a business' gross receipts and subject

16   to sales tax, like service charges, because, under state tax law, those funds belong to the

17   employer.  Pl's. Mot. Prelim. Inj. 30:17-26, Jan. 31, 2017, ECF No. 17-1.  CRA is correct that

18   service charges are gross receipts.  But the laws that make service charges part of gross receipts

19   do not stand for the proposition that the service charge then becomes insulated from state and

20   local wage regulations.  In fact, the opposite is true.

21          Revenue that a business collects does not necessarily belong to it, and the mere fact that

22   funds are included in employers' gross receipts does not prevent governments from regulating its

23   distribution.  For instance, state sales taxes collected by sellers, which must be paid to state and

24   local governments, are included in gross profits for federal tax purposes, and under state and local

25   laws, employers must use their gross receipts to pay statutorily required minimum wages,

26   overtime, and other employee benefits.  IRS Tax Guide for Small Business, Publication 334

27   (2016); Cal. Rev. & Tax Code, § 6012(a)(2).  Similarly, California sales tax law requires that

28   employers, who impose a "health surcharge" in compliance with the City of San Francisco's

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4852-4890-2979 v3                              - 22 -                    OPPOSITION TO MOTION FOR
                                                                             PRELIMINARY INJUNCTION
                                                                             3:16-CV-06660-JST

1    employment regulation, include the surcharge in their gross receipts and collect and pay sales tax

2    on the charge, even though the law acknowledges that the charge must be paid to employees in its

3    entirety.  BOE Publication 115, Tips, Gratuities, and Service Charges (May 2015).

4         As these examples illustrate, state and federal tax laws often include revenue in

5    employers' gross receipts that the employer is legally or contractually obligated to pay to its

6    employees or other parties.  And businesses often pass service charges on to their employees,

7    even though the charges have always been included in a business's gross receipts, and as such,

8    subject to sales tax.  *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F.Supp.2d 901, 929-930 (S.D.N.Y.

9    2013) (service charges usually part of gross receipts even if given to employee.)  This

10   arrangement has never created a problem.  Indeed, the fact that CRA did not include any evidence

11   in support of its Motion that its members could not comply with the Service Charge Requirement

12   and state tax laws reveals the weakness of its argument.

13        Moreover, contrary to CRA's contention, 18 Cal. Code Regs. ¶ 1603 ("Section 1603") has

14   nothing to do with "the ownership of mandatory charges for waitperson and hospitality services

15   added to a patron's bill."  Pl's. Mot. Prelim. Inj. 28:17-18, Jan. 31, 2017, ECF No. 17-1.  Under

16   Section 1603, all "mandatory payments," whether designated by the retailer as a tip, gratuity, or

17   service charge, must be included in the retailer's gross receipts and are subject to sales tax.

18   Nevertheless, Section 1603 expressly acknowledges that service charges are often distributed to

19   employees and provides that the charges are taxable even if "subsequently paid by the retailer to

20   employees."  Therefore, Section 1603, on its face, is indifferent to service charge allocation.

21   Whether the service charges are allocated to the employer or the employee has absolutely no

22   relationship to the charges' taxability under state sales tax law.  As such, Section 1603 can hardly

23   be said to confer an immutable property interest in service charges on employers.

24              2.     The Service Charge Requirement Does Not Conflict with Federal or State
                      Labor Law
25

26        CRA argues that the Service Charge Requirement is preempted by the Fair Labor

27   Standards Act ("FLSA") and the California Labor Code because, according to CRA,

28   administrative opinions interpreting those laws have determined that mandatory services charges

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4852-4890-2979 v3                    - 23 -

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
3:16-CV-06660-JST

1    are the property of employers, and therefore, local governments cannot require employers to pay

2    the charges to their employees.  Pl's. Mot. Prelim. Inj. 23:19-21; 31:16-19, Jan. 31, 2017, ECF

3    No. 17-1.  But both the FLSA and the Labor Code were enacted to promote the general well-

4    being of workers and protect their tip income from being confiscated by employers, and both sets

5    of laws expressly allow local governments to enact regulations that provide workers with

6    additional wage protections.  *Garcia v. Four Points Sheraton LAX*, 188 Cal.App.4th 364, 377

7    (2010); 29 U.S.C. §§ 202(a), 218(a); Cal. Lab. Code, § 1205(b); *Thorpe v. Abbott Labs.*, *Inc.* 534

8    F. Supp.2d 1120, 1124 (N.D. Cal. 2008).  As such, CRA's contention that the FLSA and the

9    Labor Code intended to confer service charges on employers as their inalienable property is

10   absurd.

11        Not surprisingly, CRA's preemption arguments have already been conclusively rejected.

12   In *Luiken v. Domino's Pizza, LLC*, 654 F.Supp.2d 973, 980-81  (D. Minn. 2009), the court upheld

13   a Minnesota law, which required service charges to be distributed to employees, against a

14   preemption challenge under the FLSA.  In that case, the employer argued, as CRA does here, that

15   the FLSA and 29 C.F.R. 531.55 characterized service and delivery charges as "the employer's

16   property," and therefore, any requirement that employers give the charges to employees would

17   conflict with the FLSA.  *Id.* at 981.  The court rejected this argument and held that the

18   "Minnesota law does not create conflicting obligations under state and federal law" merely

19   because it required employers to pay service charges to their employees.  *Id.* at 981.  Similarly, in

20   *Davis*, the Court upheld the Hawaii Law, which required service charges to be paid to workers,

21   against a challenge that the law was preempted under the FLSA, and in particular, 29 C.F.R. §

22   531.55.  *Davis v. Four Seasons Ltd.*, 810 F.Supp.2d 1145, 1155 (D. Hawaii 2011).  The Court

23   reasoned that, since the purpose of the FLSA was to "establish a national floor under which wage

24   protections cannot drop, not to establish absolute uniformity," the fact that the Hawaii Law "may

25   provide greater wage protection to" workers "than the FLSA, presents no conflict with the

26   FLSA's purpose."  *Id.*  Since "[t]he FLSA does not prohibit service charges from being

27   ///

28   ///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4852-4890-2979 v3                              - 24 -

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
3:16-CV-06660-JST

distributed to employees as tip income," there is no conflict. *Id.*; see also *Maldonado v. BTB Events & Celebrations, Inc.*, 990 F.Supp.2d 382, 389 (S.D.N.Y. 2013) (holding a service charge could be a tip under New York law even though it was not gratuity under FLSA).

CRA's argument that the Service Charge Requirement is preempted under California labor law was also definitively rejected in an unsuccessful challenge to an almost identical service charge provision contained in the LA Ordinance. *Garcia,* 188 Cal.App.4th at 373-81. In determining that the LA Ordinance did not conflict with the Labor Code, the court concluded that it could "not read section 351 or any other provision in the Labor Code governing gratuities to address employers' property rights." *Id.* at 378. Moreover, the Labor Code and the Ordinance address different subjects and attempt to prevent different harms." *Id.* at 379. The definitions in the Labor Code do not address, much less regulate, ownership of service charges. Indeed, nowhere in the plain language of sections 350-56 does the Legislature mention, much less bar, the allocation of non-gratuity amounts to employees. Section 351 only bars <u>employers</u> from taking <u>employee</u> gratuities. The provisions say nothing about non-gratuity payments, service charges, and/or employer claims (or lack thereof) to those amounts. *Id.*

CRA's attempts to distinguish *Garcia*, which is directly on point, are unavailing. MPI 31:22-34:20. First, *Garcia* upheld the LA Ordinance, which is identical to the Service Charge Requirement and was also passed to protect hospitality workers, and as such, CRA's claim that the laws were passed in different contexts and for different purposes is disingenuous. Pl's. Mot. Prelim. Inj. 32:11-20, Jan. 31, 2017, ECF No. 17-1; Complaint, Exh. A, p. 1; *Garcia*, 188 Cal.App.4th at 378. Second, CRA's claim that the ruling in *Garcia* should be disregarded because the court did not consider whether the LA Ordinance was preempted under federal law or California tax law has absolutely nothing to do with whether the ruling conclusively holds that the Service Charge Requirement is not preempted under California labor laws, <u>which it does</u>. Finally, CRA's argument that this Court should disregard *Garcia* because it was wrongly decided relies on the same faulty premise as all of its preemption arguments – that the mere fact that an employer is required to distribute a service charge to its employees transforms the charge into a tip. However, as explained, employers can comply with the Service Charge Requirement, and all

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
3:16-CV-06660-JST

1    state and federal labor laws, by paying mandatory service charges to employees as wages, rather

2    than tip income.  See 22 Cal. Code Regs. §§ 926, 927-1.  Accordingly, this Court should follow

3    *Garcia*, which is persuasive authority on an issue of state law.  *Estrella v. Brandt*, 682 F.2d 814,

4    817 (9th Cir. 1982).[8]

5         Far from conflicting with the FLSA or the Labor Code, the Service Charge Requirement,

6    in fact, furthers their stated purpose of protecting workers and preventing a fraud on the public by

7    requiring hospitality employers that impose service charges to pay those revenues to service

8    workers.  As such, the requirement is not preempted by federal or state labor laws.

9    **III.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST TIP SHARPLY IN
             THE CITY'S FAVOR.**

10

11        While CRA presents no evidence to support is claim that its members would be

12   irreparably harmed if the Service Charge Requirement were not enjoined, there is compelling

13   evidence of the need to maintain the Service Charge Requirement in place during the pendency of

14   this litigation.  Service workers in the restaurant industry frequently make very low income, and

15   rely on their wages to support themselves.  Huber Decl., ¶ 12 (citing study demonstrating that

16

---

17   [8] CRA also cites an unpublished case, *O'Connor v. Uber Technologies*, 2013 WL 6354534, in

18   support of its claim that *Garcia's* "holding that local jurisdictions are not preempted from
     enacting ordinances more protective of workers than Labor Code Sections 350-356 is dicta."

19   Pl's. Mot. Prelim. Inj. 32:24-27, Jan. 31, 2017, ECF No. 17-1.  This assertion is wildly
     misleading.  First, *Garcia's* conclusion that the Labor Code does not prohibit local governments

20   from enacting laws requiring employers to pay service charges to their employees was central to
     its holding and was not dicta.  *Garcia*, 188 Cal.App.4th at 378.  Second, *O'Connor* <u>actually</u> held

21   that the <u>Labor Code</u> could be read as already <u>requiring</u> mandatory charges to be paid to workers
     in situations where the employer represented to its customers that gratuity was included in the

22   price.  *O'Connor*, 2013 WL 6354534 at *10.   In doing so, *O'Connor* distinguished *Garcia*,

23   which concluded that, while local governments could require mandatory service charges to be
     paid to employees, the Labor Code did not.  *Id.*  As such, CRA's attempt to use *O'Connor* – a

24   case that extended *Garcia's* protection of hospitality workers – to support its arguments is
     disingenuous in the extreme.  *Id.* at *8.  The court in *O'Connor* said it best: in interpreting the

25   Labor Code as allowing employers to retain mandatory service charges "would allow businesses
     in industries where tipping is customary, such as restaurants, to avoid remitting tips to their

26   service professionals simply by placing gratuity on a patron's bill, thereby making it part of the
     required payment.  No reasonable patron would expect that by simply putting the customary tip

27   on the bill – while still labeling it as a tip – a restaurant has transformed that tip into a revenue
     source for itself rather than a source of income for its servers."  *Id.*

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4852-4890-2979 v3                                    - 26 -                    OPPOSITION TO MOTION FOR
                                                                                  PRELIMINARY INJUNCTION
                                                                                  3:16-CV-06660-JST

1  fully 22% of surveyed Bay area tipped employees had earnings that were less than the poverty

2  line). "Because [covered employees] are low-wage workers, and lost wages or delays in

3  compensation 'threaten or impair their ability to meet basic needs,' such harms are irreparable.

4  *Guifu Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752, at *19

5  (N.D. Cal. June 15, 2012) (quoting *Carrillo v. Schneider Logistics, Inc.,* 823 F.Supp.2d 1040,

6  1045 (C.D.Cal.2011)); see also *Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 412

7  (9th Cir. 2015) (denying motion, in part, because "[g]ranting a preliminary injunction would

8  likely result in many workers receiving reduced wages.").

9        Moreover, the public interest strongly favors denial of the motion.  The Service Charge

10  Requirement is crucial to the Ordinance's minimum wage protections.  Under California law,

11  employers are not permitted to credit tips against their minimum-wage obligations.  See *American*

12  *Hotel & Lodging Ass'n*, 119 F.Supp.3d 1177, 1196 (C.D. Cal. 2015) ("The California Labor

13  Code *prohibits* the state and municipalities from establishing minimum wages that distinguish

14  between tipped and non-tipped workers."); *Henning v. Industrial Welfare Comm'n*, 46 Cal.3d

15  1262, 1279 (1988).  CRA's members wish to maintain their ability to impose "service charges"

16  and then pocket the revenues because they want to use a portion of the service charges—which

17  customers will pay in lieu of a gratuity—to offset their increased municipal minimum-wage

18  obligations.  Indeed, CRA is forthright that this is its objective.  Pl's. Mot. Prelim. Inj. 18 n. 6,

19  Jan. 31, 2017, ECF No. 17-1.  Enjoining the Ordinance's Service Charge Requirement would

20  therefore undermine the City's interest in seeing that its minimum wage law is effective.  *Int'l*

21  *Franchise Ass'n*, 803 F.3d at 412 (injunction against minimum-wage ordinance against public

22  interest because "Seattle voters would see part of a law passed as a result of an election

23  enjoined.").

24  ///

25  ///

26  ///

27  ///

28  ///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4852-4890-2979 v3

- 27 -

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
3:16-CV-06660-JST

1

### CONCLUSION

2          For the foregoing reasons, Emeryville respectfully requests that this Court deny CRA's

3   Motion for Preliminary Injunction.

4   Dated: February 21, 2017                    BURKE, WILLIAMS & SORENSEN, LLP

5

6                                              By: /s/ J. Leah Castella
                                                   J. Leah Castella
7                                                  Benjamin L. Stock
                                                   Attorneys for Defendant
8                                                  CITY OF EMERYVILLE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4852-4890-2979 v3                    - 28 -         OPPOSITION TO MOTION FOR
                                                         PRELIMINARY INJUNCTION
                                                         3:16-CV-06660-JST