Charles L. Post, State Bar No. 160443
Lukas J. Clary, State Bar No. 251519
**weintraub tobin chediak coleman grodin**
LAW CORPORATION
400 Capitol Mall, 11th Floor
Sacramento, California   95814
Telephone:     916/558-6000
Facsimile:      916/446-1611
Email: cpost@weintraub.com
          lclary@weintraub.com

Attorneys for Plaintiff
California Restaurant Association

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RESTAURANT ASSOCIATION, a California nonprofit mutual benefit corporation,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF EMERYVILLE, a California municipal corporation,<br><br>    Defendant. | **Case No. 3:16-cv-06660-JST**<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:          March 23, 2017<br>Time:         2:00 p.m.<br>Courtroom:  9<br><br>Complaint Filed:     November 17, 2016 |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I. INTRODUCTION ...........................................................................................................1

II. STANDARD FOR INJUNCTIVE RELIEF ...................................................................1

III. CRA HAS ESTABLISHED IRREPARABLE INJURY ................................................2

IV. CRA HAS ESTABLISHED PROBABILITY OF SUCCESS ON THE MERITS.....................4

    A. CRA is Likely to Succeed on its Takings Claim ................................................4

        1. Emeryville Bases its Associational Standing Attack on Inapt Regulatory Cases .........4

        2. Emeryville Supports Its Position That the Ordinance Does Not Take a Specific, Identifiable Property Interest with Reasoning That the Supreme Court Overruled ......5

        3. Emeryville Interprets *Eastern Enterprises v. Apfel* Inconsistently with Later Supreme Court Takings Cases ........................................................................6

    B. CRA is Likely to Succeed on its First Amendment Claim ..................................8

        1. The Ordinance Regulates Speech, Not Conduct............................................8

        2. The Ordinance is an Invalid Regulation of Free Speech ..............................9

    C. CRA is Likely to Succeed on its Equal Protection Claim ................................11

    D. CRA is Likely to Succeed on its Preemption Claims ......................................11

V. THE BALANCE OF EQUITIES AND PUBLIC INTEREST TIP SHARLY IN CRA'S FAVOR .................................................................................................................13

    A. Emeryville Will Suffer No Hardship if the Injunction is Granted....................13

    B. Emeryville's Public Interest Argument Lacks Admissible Evidence..............14

VI. CONCLUSION .............................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ............................... 1, 13, 14

*Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053 (9th Cir. 2014) .................................................. 3

*Brown v. Legal Found. of Wash.*, 538 U.S. 216 (2003) ............................................................... 5, 6

*Cassim v. Bowen*, 824 F.2d 791 (9th Cir. 1987) .......................................................................... 1, 14

*Central Hudson Gas & Electric Corp. v. Public Serv. Comm'n*, 447 U.S. 557 (1980) ..................... 9

*Dana's R.R. Supply v. A.G.*, 807 F.3d 1235 (11th Cir. 2015) ............................................................ 8

*Davis v. Four Seasons Hotel Ltd.*, 122 Haw. 423, 434 (2010) ...................................................... 9, 10

*Davis v. Four Seasons Ltd.*, 810 F.Supp.2d 1145 (D. Haw. 2011) ............................................. 11, 12

*Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014) ..................................................................................... 2

*Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998) ........................................................................ 6, 7

*Edenfield v. Fane*, 507 U.S. 761 (1993) ............................................................................................ 9

*Elrod v. Burns*, 427 U.S. 347 (1976) ................................................................................................. 2

*Expressions Hair Design v. Schndierman*, 808 F.3d 118 (2nd Cir. 2015) ......................................... 8

*Garcia v. Four Points Sheraton LAX*, 188 Cal.App.4th 364 (2010) ........................................... 12, 13

*Horne v. Dep't of Agric.*, 135 S. Ct. 2419 (2015) ........................................................................ 4, 6, 7

*Hunter v. Ayers*, 336 F.3d 1007 (9th Cir. 2003) ............................................................................... 12

*Italian Colors Restaurant v. Harris*, 99 F.Supp.3d 1199 (E.D. Cal. 2015) ....................................... 8

*Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009) .......................................................... 2

*Koontz v. St. Johns River Water Management District*, 133 S. Ct. 2586 (2013) ....................... 5, 6, 7

*Lingle v. Chevron U. S. A. Inc.*, 544 U. S. 528 (2005) ....................................................................... 5

*Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) ........................................... 6

*Luiken v. Domino's Pizza, LLC*, 654 F.Supp.2d 973 (D. Minn. 2009) ............................................. 12

*Lum v. County of San Joaquin*,
   2012 U.S. Dist. LEXIS 40372 (E.D. Cal. Mar. 22, 2012) ............................................................. 13

*Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211 (9th Cir. 1984) ........................................ 3, 4

*Monterey Mech. Co. v. Wilson*, 125 F.3d 702 (9th Cir. 1997) ........................................................... 2

| | |
|---|---|
| *Muniz v. UPS*, 738 F.3d 214 (9th Cir. 2013) | 12 |
| *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.3d 1374 (9th Cir. 1985) | 4 |
| *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978) | 5, 6 |
| *Phillips v. Washington Legal Foundation,* 524 U.S. 156 (1998) | 6 |
| *Rent Stabilization Ass'n v. Dinkins*, 5 F.3d 591 (2d Cir. 1993) | 5 |
| *Robert Bosch LLC v. Pylon Mfg. Group*, 659 F.3d 1142 (Fed. Cir. 2011) | 2 |
| *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 (1995) | 8, 9 |
| *Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105 (1991) | 8, 9 |
| *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999) | 3 |
| *Tech & Intellectual Prop. Strategies Grp. PC v. Fthenakis*, No. C 11-2373 MEJ 2012 U.S. Dist. LEXIS 5193 (N.D. Cal. Jan. 17, 2012) | 4 |
| *Wadsworth v. KSL Grand Wailea Resort, Inc.* 818 F.Supp.2d 1240 (D. Haw. 2010) | 11 |
| *Walgreen v. City and County of San Francisco*, 185 Cal. App. 4th 424 (2010) | 11 |
| *Washington Legal Foundation v. Legal Foundation of Washington*, 271 F.3d 835 (9th Cir. 2001) | 5, 6 |
| *Winters v. National Resources Defense Council*, 555 U.S. 7 (2008) | 1, 14 |
| *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275 (2d Cir. 2012) | 2 |

**Statutes**

| | |
|---|---|
| Cal. Lab. Code § 221 | 2 |
| Emeryville Mun. Code § 5-37.04 | 11 |
| H.R.S. section 481B-14 | 11, 12 |

**Regulations**

| | |
|---|---|
| Fair Labor Standards Act regulations | 12 |

## I. INTRODUCTION

CRA is entitled to a preliminary injunction as set forth in its moving papers. Emeryville's opposition fails to persuade otherwise. Emeryville argues that CRA cannot establish irreparable harm because its members will suffer only speculative monetary harm and they have waited too long to seek the injunction. These arguments confuse whether irreparable harm exists with the degree of harm and when it occurs. Virtually by definition, constitutional takings and restrictions on speech constitute irreparable harm. CRA is likely to prevail on the merits for reasons already discussed. Emeryville's arguments to the contrary rely on inapt law and cases upholding ordinances that contained the very saving mechanisms that Emeryville's Ordinance lacks. Finally, the balance of hardships tips decidedly in CRA's favor because Emeryville fails to argue that it will suffer *any* hardship and it relies entirely on self-serving and inadmissible opinion testimony to support its public interest arguments.

## II. STANDARD FOR INJUNCTIVE RELIEF

As an initial matter, the City attempts to make hay of CRA's citation to the Ninth Circuit's "alternative standard" for assessing whether to grant a preliminary injunction. The City argues that the Supreme Court overruled this alternative standard in *Winters v. National Resources Defense Council*, 555 U.S. 7, 24 (2008). The City makes much ado about nothing. Under the "alternative" standard, a moving party historically could satisfy its burden by demonstrating either (1) a combination of probable success or the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987). In *Winters*, the Supreme Court merely did away with the first half of that standard—the ability to obtain an injunction based on the mere "possibility" of irreparable injury. *Winters*, 555 U.S. at 24. But nowhere in CRA's entire brief does it argue that it should be granted an injunction based only on the possibility of irreparable harm. The City's contrary argument is a red herring.

Instead, as the Ninth Circuit has made clear, the "serious questions" alternative standard survived *Winters*. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). It is this latter subcomponent of the alternative standard, along with the traditional

standard—likelihood of success, likelihood of irreparable harm, balance of hardships, and public interest weighing in favor—upon which CRA relies in seeking an injunction. CRA establishes each of these elements.

### III. CRA HAS ESTABLISHED IRREPARABLE INJURY

Emeryville argues that CRA's members are unlikely to suffer irreparable injury because (1) money damages do not constitute irreparable injury; (2) the alleged injury is too speculative; and (3) CRA waited too long to seek injunctive relief. None of these arguments is availing.

First, CRA's members' irreparable harm is not limited to lost revenue. Emeryville's contrary argument regarding monetary loss is just a rehash of its merits-based argument that the Ordinance only requires Hospitality employers to pay revenues. As briefed extensively throughout these two motions, however, CRA alleges more than a mere taxation of its revenues. CRA alleges constitutional violations, including the taking of specific identifiable property interests (i.e., service charges) and the unlawful restriction of free speech. If established, these allegations alone are sufficient to satisfy irreparable harm. *See Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) ("an alleged constitutional infringement will often alone constitute irreparable harm"). Indeed, the likelihood of irreparable injury is particularly strong in cases involving free speech restrictions. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" for purposes of issuing a preliminary injunction); *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) (same); *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009).

Moreover, even if CRA's members' harm was considered purely monetary, such harm is still irreparable where, as here, there is virtually no likelihood of recovery. *See Robert Bosch LLC v. Pylon Mfg. Group*, 659 F.3d 1142, 1155 (Fed. Cir. 2011) (holding that courts should assess whether a damage remedy is meaningful before deeming monetary damages adequate); *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 286 (2d Cir. 2012) (likelihood plaintiff would be unable to collect judgment supported injunctive relief). As argued in CRA's moving points and authorities, CRA's members would not be able to look to their employees' wages to recover any service charges they were forced to turn over to comply with the Ordinance. Cal. Lab. Code § 221. Nor would CRA's

members have any realistic likelihood of recovering such funds via civil process because, as Emeryville itself points out in opposition, most hospitality workers are virtually judgment proof. *See* Emeryville's Opp. at 26-27.

Next, by arguing that CRA's members' harm is speculative, Emeryville confuses *whether* CRA's members will suffer irreparable harm with the *degree* of such harm. This is improper. *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 724 (9th Cir. 1999) (irreparable injury is analyzed "irrespective of the magnitude of the injury"). There is nothing speculative about the notion that members will suffer harm if they are forced to turn over service charges that clearly belong to them. Nor is anything speculative about the idea that CRA's members' speech rights are being restricted. The only thing Emeryville even alleges to be speculative is the *amount* of revenue CRA's members are allegedly losing by being denied the right to retain service charges. *See* Opp. to Mot. For Prelim. Inj. at 3. But the quantum of harm is irrelevant. *See Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (trial court committed error by determining severity of alleged harm instead of whether it was irreparable). [1]

Finally, Emeryville argues that the passage of time between the Ordinance being adopted and CRA bringing this action demonstrates that its members have suffered no irreparable injury. In so doing, Emeryville conflates "when" with "what." Imminence and urgent proximity of harm may diminish with the passage of time, but the character of the injury is unaffected by the passage of time. Here the alleged injury occurs every time a restaurant check issues in Emeryville. The taking that occurs every time the proceeds of a service charge are transferred to a worker continues to occur. The impermissible restriction on speech that occurs every time a restaurant or hotel check does not include a service or surcharge continues to occur. The question is whether each of these (and the other constitutional offenses alleged) are irreparable or not. Emeryville's cited authority is distinguishable on this basis. *See Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1212 (1984) (injunction not sought to prevent ongoing harm, but rather an ordinance

---

[1] Emeryville also argues, incorrectly, that CRA fails to identify a single member impacted by the Ordinance. Emeryville Opp. at 3. Emeryville's argument is both false and ironic. It's false because CRA does identify its members. *See* Dec. of Jot Condie at ¶ 5, Ex. B. And it's ironic because, unlike CRA, Emeryville fails to identify a single one of Local 2850's members that it claims are impacted by the Ordinance. If identification of members is as relevant as Emeryville contends, it has utterly failed to meet its own standard.

weintraub tobin chediak coleman grodin
law corporation

requiring one-time relocation of business).

Also, as the *Lydo* court acknowledged, courts would be "loathe to withhold relief *solely* on" grounds of delay. *Id.* at 1214 (emphasis added). For that reason, in every case Emeryville cites in its opposition, preliminary injunctions were denied for reasons other than the alleged delay in seeking injunctive relief. *See id.* at 1214-15 (finding alleged grounds for irreparable harm to be based only on conjecture); *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.3d 1374, 1377 (9th Cir. 1985) (evidence did not support the plaintiff's alleged irreparable harm); *Tech & Intellectual Prop. Strategies Grp. PC v. Fthenakis*, No. C 11-2373 MEJ 2012 U.S. Dist. LEXIS 5193, at *14 (plaintiff's alleged harm too speculative). By contrast, here, Emeryville's other arguments against irreparable harm fail as set forth above. Emeryville has not and cannot cite any authority holding that delay *alone* is grounds to deny an injunction.

## IV. CRA HAS ESTABLISHED PROBABILITY OF SUCCESS ON THE MERITS

As to the merits, CRA has established both the probability of success (traditional standard) and the lesser standard that serious questions are raised (the alternative standard). As these issues have been substantially briefed between the two motions, CRA only addresses those components of Emeryville's opposition that have not already been discussed elsewhere in the record.

### A. CRA is Likely to Succeed on its Takings Claim

#### 1) Emeryville Bases its Associational Standing Attack on Inapt Regulatory Cases

CRA has associational standing to bring its takings claims, as explained in further detail in CRA's memorandum in support of its Motion for a Preliminary Injunction and its Opposition to Emeryville's Motion to Dismiss. *See* Mem. of P. & A. in Supp. of Mot. for Prelim. Inj. at 6-7; Pl.'s Opp'n to Def.'s Mot. to Dismiss at 6-8. CRA's claims that the Ordinance effects a physical taking of Service Charges and imposes an unconstitutional condition upon Hospitality Employers do not require individualized determinations in this case because the Ordinance has the same effect of commandeering specific service charges collected by any Hospitality Employer. A physical appropriation of property gives rise to a taking "without regard to the claimed public benefit or the economic impact on the owner." *Horne v. Dep't of Agric.*, 135 S. Ct. 2419, 2427 (2015). Likewise, claims under the unconstitutional condition doctrine do not require

**weintraub tobin** chediak coleman grodin
law corporation

individualized determinations in this case. The doctrine serves to "stop the government from imposing an 'unconstitutional condition'—a requirement that a person give up his constitutional right to receive just compensation 'in exchange for a discretionary benefit' having 'little or no relationship' to the property taken." *Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2604-05 (2013) (quoting *Lingle v. Chevron U. S. A. Inc.*, 544 U. S. 528, 547 (2005)). The relationship between forcing Hospitality Employers to turn over their service charges to third parties and the ability to do business in the City of Emeryville can be determined without reference to individual employers.

If CRA were bringing a claim for a regulatory taking under *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978), then "an ad hoc factual inquiry" would be appropriate to determine whether a taking had occurred with respect to each CRA Member. But Emeryville acknowledges that CRA is not bringing a claim for a regulatory taking. *See* Opp. of Def. to Pl.'s Mot. for Prelim. Inj. at 5, n.1. Paradoxically, Emeryville still attacks CRA's standing based on "a factually specific inquiry" that is only made for regulatory takings. *See id.* at 5-7. The two cases that Emeryville has carried over from its Motion to Dismiss to its Opposition to CRA's Motion for a Preliminary Injunction deal only with regulatory takings and are thus inapt in this case. *Washington Legal Foundation v. Legal Foundation of Washington*, 271 F.3d 835, 849 (9th Cir. 2001) ("[W]e not only believe it is entirely appropriate to apply *Penn Central's ad hoc* takings analysis to the IOLTA program, but that such an analysis is compelled."), *aff'd on other grounds sub nom. Brown v. Legal Found. of Wash.*, 538 U.S. 216 (2003); *Rent Stabilization Ass'n v. Dinkins*, 5 F.3d 591 (2d Cir. 1993) ("[W]e would have to engage in an ad hoc factual inquiry for each landlord who alleges that he has suffered a taking."). Because CRA's takings claims do not require individualized factual determinations, CRA meets the third prong of the associational standing test and has standing to bring its takings claims.

2) <u>Emeryville Supports Its Position That the Ordinance Does Not Take a Specific, Identifiable Property Interest with Reasoning That the Supreme Court Overruled</u>

Emeryville cites *Washington Legal Foundation v. Legal Foundation of Washington*, 271 F.3d at 854-855, to support the proposition that "The Ninth Circuit has held, *en banc*, that *per se* takings analysis does not apply to government regulations requiring the payment of money." Opp.

of Def. to Pl.'s Mot. for Prelim. Inj. at 8. Emeryville neglects to mention that the Supreme Court disagreed with this reasoning on appeal and sided with the dissenters in the Ninth Circuit. *See Brown v. Legal Found. of Wash.*, 538 U.S. 216, 235 (2003). In *Phillips v. Washington Legal Foundation*, the Supreme Court had already decided that "interest income generated by funds held in [Interest on Lawyers Trust Accounts] is the 'private property' of the owner of the principal." 524 U.S. 156, 172 (1998). Thus, in *Brown*, the Court reasoned that transferring the interest in such funds to a private foundation was akin to occupying a small amount of real property, which meant that the *per se* approach for a physical taking was more appropriate than *Penn Central*'s ad hoc analysis. *Brown*, 538 U.S. at 235 (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982)). Therefore, the petitioners "interest was taken for a public use when it was ultimately turned over to the Foundation." *Id.*

Later Supreme Court cases confirm that the Ninth Circuit's holding in *Washington Legal Foundation v. Legal Foundation of Washington* that *per se* takings analysis is "particularly inapt analysis when the property in question is money" is no longer good law. *See* Opp. of Def. to Pl.'s Mot. for Prelim. Inj. at 8 (quoting *Washington Legal Foundation v. Legal Foundation of Washington*, 271 F.3d at 854-55). In *Koontz v. St. Johns River Water Management District*, 133 S. Ct. 2586, 2601 (2013), the Court cited *Brown* and *Phillips*, stating: "we have repeatedly found takings where the government, by confiscating financial obligations, achieved a result that could have been obtained by imposing a tax." The Court explained that, "when the government commands the relinquishment of funds linked to a specific, identifiable property interest such as a bank account or parcel of real property, a '*per se* [takings] approach' is the proper mode of analysis under the Court's precedent." *Id.* at 2600 (citing *Brown*, 538 U.S. at 235); *see also Horne*, 135 S. Ct. at 2430 ("[A] governmental mandate to relinquish specific, identifiable property as a 'condition' on permission to engage in commerce effects a per se taking.").

3) Emeryville Interprets *Eastern Enterprises v. Apfel* Inconsistently with Later Supreme Court Takings Cases

Not only is Emeryville's reliance on *Washington Legal Foundation v. Legal Foundation of Washington* outdated, its reliance on *Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998), is also inappropriate. Justice Kennedy, whose controlling concurring opinion provided the fifth vote

against finding a taking in *Eastern Enterprises*, joined the majorities in both *Koontz* and *Horne*. This emphasizes the proper scope of Justice Kennedy's ruling that "the Government's imposition of an obligation between private parties, or destruction of an existing obligation, must relate to a specific property interest to implicate the Takings Clause." *E. Enters.*, 524 U.S. at 544 (Kennedy, J., concurring). Emeryville suggests that, because Hospitality Employers have to pay service charges over to employees themselves, the specific nature of the property being commandeered is lost in the stream of general revenue. *See* Opp. of Def. to Pl.'s Mot. for Prelim. Inj. at 10. This flies in the face of Justice Kennedy's reasoning that "the Government ought not to have the capacity to give itself immunity from a takings claim by the device of requiring the transfer of property from one private owner directly to another." *E. Enters.*, 524 U.S. at 544 (Kennedy, J., concurring).

Emeryville's assertion of immunity because the City does not confiscate the service charges immediately or require the service charges to be sequestered also contradicts *Horne* and *Koontz*. *Koontz*, for instance, held that an obligation to pay money for wetlands improvement on public lands amounted to a *per se* taking because the funds, though certainly fungible, were "linked to a specific, identifiable property interest." *Koontz*, 133 S. Ct. at 2600. The service charges commandeered by the Ordinance are not just *linked* to a specific, identifiable property interest, they *are* a specific property interest, identified by the language of the Ordinance. Far from "radically expand[ing] the bounds of the Fifth Amendment," *see* Opp. of Def. to Pl.'s Mot. for Prelim. Inj. at 9, this case presents a straightforward application of recent, consistent rules laid down by the Supreme Court.

Finally, Emeryville makes the bizarre argument that service charges are not property because there is no certainty in business income. *See* Opp. of Def. to Pl.'s Mot. for Prelim. Inj. at 9. But Emeryville ignores the obvious—the Ordinance's mandate that service charges be turned over to employees does not come into play until a service charge has already been collected. At that point, businesses' certainty in the funds received is absolute. As such, it is property.

///

///

## B. CRA is Likely to Succeed on its First Amendment Claim

### 1) The Ordinance Regulates Speech, Not Conduct

Until recent years, it was considered a truism that "saying something doesn't make it so." If that rule still pertains, then Emeryville's characterization of language as conduct is of no moment. Emeryville concedes that a Hospitality Employer may hike its prices in response to the increased minimum wage. That price hike is – in this example – conduct. Describing that increase in prices as a "service charge" or "surcharge" is plainly speech. All of the City's arguments to the contrary are simply adamant restatement of a mischaracterization.

The City has no substantive response to either *Italian Colors Restaurant v. Harris*, 99 F.Supp.3d 1199 (E.D. Cal. 2015) or *Dana's R.R. Supply v. A.G.*, 807 F.3d 1235 (11th Cir. 2015). *See* CRA's Opp. to Mot. to Dismiss at 13-14. It instead relies on the misguided notion from the Second Circuit in *Expressions Hair Design v. Schndierman*, 808 F.3d 118, 130 (2nd Cir. 2015) that communication of pricing is not speech. That logic was roundly rejected by both *Italian Colors* and *Dana's R.R. Supply*. *See Italian Colors*, 99 F.Supp.3d at 1207 ("what is regulated is how those prices are conveyed to customers, not the prices themselves"); *Dana's R.R. Supply*, 807 F.3d at 1245 (surcharge restricted speech because it governed "how to express relative values" rather than what the business could charge). The Ordinance here does the same. It has no bearing on businesses' ability to raise pricing or how much they can charge. It only restricts the description of the charge. Describing a charge as a more expensive menu item is permitted. Describing a charge as a service charge or using similar language results in a transfer of that charge to the employee. That is regulation of speech, not conduct. Calling an apple an orange doesn't make it one, nor does mischaracterizing speech render it conduct.

Emeryville also argues that the ordinance does not regulate speech because it does not "prohibit" describing charges as a "service charge." *See* Opp. of Def. to Pl.'s Mot. for Prelim. Inj. at 12. But absolute prohibition is not a requirement for a regulation to offend free speech principles. Instead, it is enough where, as here, the regulation imposes financial burdens on speech. *See Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115 (1991) ("A statute is presumptively inconsistent with the First Amendment if it imposes a

financial burden on speakers because of the content of their speech."); *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (1995) ("the government offends the First Amendment when it imposes financial burdens on certain speakers based on the content of their expression.").[2]

2) The Ordinance is an Invalid Regulation of Free Speech

As argued in both CRA's moving points and authorities and its opposition to Emeryville's motion to dismiss, the Ordinance is subject to, at minimum, intermediate scrutiny because it regulates the content of speech. *See* Mot. for Prelim. Inj. at 17; Opp. to Mot. to Dismiss at 15. Even assuming the Ordinance targets only commercial speech, such speech may receive First Amendment protection provided it concerns lawful activity and is not misleading. *Central Hudson Gas & Electric Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 566 (1980). The city "seeking to uphold its restriction on commercial speech" carries the burden of establishing that it is misleading. *Edenfield v. Fane*, 507 U.S. 761, 770 (1993).

Emeryville has not met its burden of establishing that the language controlled by the Ordinance is misleading. Indeed, it has failed to produce any admissible evidence on the subject.[3] Emeryville instead relies solely on cases that did not address First Amendment challenges, but that held in dictum that other cities share Emeryville's belief that customers may be misled into believing service charges are given to employees. Opp. to Mot. for Prelim. Inj. at 13-14. Emeryville then argues that it relied on these other cities' findings in enacting the Ordinance. This argument is wholly disingenuous.

First, Emeryville cites to *Davis v. Four Seasons Hotel Ltd.*, 122 Haw. 423, 434 (2010), which it contends holds that the Hawaii legislature "concluded that service charges that do not go to the employee mislead the customer 'into believing that the employee that the employee has been rewarded for providing good service.'" This is a painfully twisted reading of the *Davis* holding.

---

[2] In a footnote, Emeryville characterizes CRA's reliance on *Simon & Schuster, Inc.* and *Rosenberger* as "farfetched" because those cases involved restrictions on public expression rather than commercial speech. *See* Opp. of Def. to Pl.'s Mot. for Prelim. Inj. at 12, fn. 6. Emeryville highlights a distinction without a difference. The holding in both cases that financial burdens on speech can effect First Amendment violations even without absolute prohibition did not turn on the public versus commercial nature of the speech.

[3] As argued below, Emeryville relies entirely on an inadmissible declaration to present evidence about customer impressions of service charges.
weintraub tobin chediak coleman grodin
law corporation

*Davis*—which again has nothing do with First Amendment concerns or potentially misleading speech—says nothing about what the legislature concluded as to customers' views of who keeps service charges. Rather, the *Davis* court cites in dicta a report stating that *the purpose* of the ordinance was to prevent confusion—not that studies concluded customers were confused. Legislative intent in Hawaii has nothing to do with evidence of harm in Emeryville. Regardless, nowhere in Emeryville's legislative materials does it state that they looked to, discussed, or were even aware of the legislative reports in Hawaii. Any argument to the contrary is a red herring.

Emeryville's citation to the Los Angeles ordinance, *see* Opp. to Mot. for Prelim. Inj. at 13, is equally flawed. Emeryville cites to language in the ordinance itself again reflecting legislative purpose rather than studies or other evidence of harm. Moreover, the cited L.A. ordinance is limited to hotels, whereas the evidentiary record in this case—submitted by Unite Here Local 2850—reflects studies concluding that there is no similar evidence pertaining to restauranteurs such as CRA's members. *See* Local 2850's RJN Ex. 5, City of Santa Monica Staff Report 1530 at p. 9 ("Using service charges in restaurants is a relatively new practice, so there is little evidence of the impact on either restaurants or workers."). The legal authority Emeryville cites to is similarly limited to the hotel context, and is similarly devoid of evidence in any event. Emeryville has failed to submit any evidence demonstrating that customers are misled by restaurants retaining their service charges (revenues that state and federal law already recognize as belonging to them).[4]

Next, Emeryville fails to even address how limiting the Ordinance to restaurants, banquets, and hotels, and exempting public hospitality employers, advances its interest in clearing up consumer confusion. *See* Pl. Mot. for Prelim. Inj. at 18. The answer: It does not.

Finally, Emeryville argues that the Ordinance is no broader than necessary to prevent customer confusion. CRA already addressed this argument in detail in earlier briefings. *See* Opp. to Mot. to

---

[4] Beyond that, Emeryville cites to, <u>but does not include anywhere in the evidentiary record</u>, two website links. *See* Opp. to Mot. for Prelim. Inj. at 14. One is to a page on CRA's website that Emeryville argues depicts CRA's own acknowledgment as to the confusing nature of service charges. Emeryville's argument is at best misguided and more likely disingenuous. The linked language has nothing to do with confusion about where service charges go, but rather is an effort to counsel its members on avoiding imposition of surprise charges that were not disclosed until the customer receives a bill. The second link is to a supposed local press report—wrought with layers of hearsay—regarding confusion over service charges. Emeryville apparently expects this Court to find these articles on its own and determine the relevance of what they say. The Court should decline to do so.

1 Dismiss at 18-19. In short, the Ordinance could have allowed hospitality employers to retain 2 service charges by disclosing to customers their intent to do so, as does virtually every similar 3 ordinance Emeryville cites to in supposed solidarity.[5] It instead deprived businesses of the service 4 charges entirely. That measure went too far, and is unconstitutional.

## C. CRA is Likely to Succeed on its Equal Protection Claim

Emeryville's arguments as to Equal Protection are a rehash of that same section of their motion to dismiss. CRA fully addressed those arguments in opposition to that motion. *See* Pl. Opp. to Mot. to Dismiss at 20-23. In sum, evidence contained in the Defendants' own papers assert that 56% of tipped workers work outside the restaurant industry in salons, carwashes and valet parking operations. Those Emeryville employers are treated differently – and face none of the restrictions imposed on Hospitality employers. On this basis, the Ordinance denies equal protection to Hospitality employers. The Ordinance requires Rational Basis review. It can no more survive it than did the selective tobacco restriction in *Walgreen v. City and County of San Francisco*, 185 Cal. App. 4th 424 (2010).

## D. CRA is Likely to Succeed on its Preemption Claims

Emeryville cited a number of cases and ordinances for the notion that laws like the Ordinance are common and regularly withstand preemption attack. As established in CRA's opposition to the motion to dismiss, this is a flawed generalization. A reading of that authority shows two things: 1) the ordinances or statutes challenged in earlier cases contain language or supporting regulation **not** contained in the Emeryville Ordinance; and 2) those differences (a method by which an employer can disclose to patrons that s particular service charge will not be received by the wait staff) was the material ground on which the court found no preemption.

The Hawaiian case Emeryville cites, *Davis v. Four Seasons Ltd.*, 810 F.Supp.2d 1145 (D. Haw. 2011) concerns H.R.S. section 481B-14, which "requires an employer to distribute service charges to employees as 'tip income' unless the employer discloses its retention of [a part or all] of the service charge to customers." *Wadsworth v. KSL Grand Wailea Resort, Inc.* 818 F.Supp.2d

---

[5] Emeryville's argument that the Ordinance *does* allow for businesses to retain service charges by describing them a certain way is simply wrong. The Ordinance mandates automatic turnover of the charge any time the mere words "service charge" or "delivery charge" are used. Emeryville Mun. Code § 5-37.04. This is true without exception.

{2206897.DOC;}

weintraub tobin chediak coleman grodin
law corporation

1240 (D. Haw. 2010). The District Court decision in *Davis* considered the plaintiff's motion for partial summary judgment and was grounded, among other things, on the undisputed fact that Defendants had failed to comply with the disclosure requirements of section 481B-14. That is not an issue in this case. The Ordinance does not contain the language found in section 481(b).

Nor did the *Davis* court decide the tax code preemption and constitutional issues raised in this case. To be sure, the District Court considered and rejected defendants claim that section 481B-14 was preempted by Fair Labor Standards Act regulations, but did so in reliance on the very language that is missing from the Ordinance:

> Nor does an FLSA regulation providing that a compulsory service charge is not a tip conflict with H.R.S. section 481B-14. Section 481-b-14 does not define "service charges" as tip income; it merely requires employers to distribute service charges as tip income ***unless the employer makes a clear disclosure to consumer that it will do so.***

*Davis*, 810 F.Supp.2d at 1155 (emphasis added). Similarly, CRA already distinguished *Luiken v. Domino's Pizza, LLC*, 654 F.Supp.2d 973 (D. Minn. 2009) for the same reason in its opposition to Emeryville's motion to dismiss. *See* Pl. Opp. to Mot. to Dismiss at 27-28.

Finally, all that is left is *Garcia v. Four Points Sheraton LAX,* 188 Cal.App.4th 364 (2010), which is already discussed elsewhere in earlier briefing. *Garcia* upheld a similar ordinance (the "HSCRO") against a California Labor Code preemption challenge. But *Garcia* is not controlling on this Court.

First, the demurring defendants in *Garcia* did not challenge (and the court did not consider) the validity of the ordinance on the grounds of conflict with federal law, nor California tax law. Nor did the *Garcia* court consider the persuasive DLSE opinion letters acknowledging that service charges are employer property under California labor law. *See also* Unite Here Local 2850's Request for Judicial Notice in support of Emeryville's Motion to Dismiss, Ex. 5, City of Santa Monica Staff Report 1530 at p. 9 (acknowledging the same).

Second, the Ninth Circuit has found that although the "[d]ecisions of the California Supreme Court, including reasoned dicta, are binding on [the Ninth Circuit] as to California law," "[d]ecisions of the six district appellate courts are persuasive but do not bind each other or [the Ninth Circuit]." *Muniz v. UPS*, 738 F.3d 214, 219 (9th Cir. 2013).

**weintraub tobin** chediak coleman grodin
law corporation

In the present instance, the California Supreme Court would likely determine that *Garcia* was wrongly decided. *See Hunter v. Ayers*, 336 F.3d 1007, 1012-13 (9th Cir. 2003) (noting that "[w]e do not lightly reject the view of an intermediate state appellate court on a question of state law, but our responsibility is to decide the case as would the California Supreme Court" and finding that the California Supreme Court would not follow an intermediate appellate court's decision); *Lum v. County of San Joaquin*, 2012 U.S. Dist. LEXIS 40372, at *29-30 (E.D. Cal. Mar. 22, 2012) (disregarding California appellate court opinion because "[i]t appears to this court that the plain language of the statute simply does not support the intermediate court opinion").

Here, the holding in *Garcia* is grounded in its decision that a service charge is not a "gratuity" as defined by section 350(e). The California Supreme Court would likely reject the double alchemy embedded in the Garcia decision. HSCRO expressly "reforms" service charges by requiring that they be paid over to the "worker(s) performing services for the customers from whom service charges are to be collected." The City of Los Angeles enacted HSCRO in response to the belief that mandatory service charges depressed gratuities left by patrons for such workers. HSCRO transfers the ownership of the mandated service charge from employers to employees. It requires that Employers treat the transferred amount in a manner identical to the treatment of gratuities (no deduction, offset, etc.). The *Garcia* court, recognizing the purpose and effect of this transfer, and turning a blind eye to the requirements that the employer treat the transferred sums as it would gratuities, then concludes that the transferred amount is "not a gratuity." The California Supreme Court cannot reasonably be expected to maintain the fiction imposed by the *Garcia* court: the transferred sum must be treated as a tip by the employer. Thus, the HSCRO conflicts with the fundamental dichotomy recognized by the CA Board of Equalization and Labor Commissioner, the IRS, and the U.S. Department of Labor.

## V. THE BALANCE OF EQUITIES AND PUBLIC INTEREST TIP SHARLY IN CRA'S FAVOR

### A. <u>Emeryville Will Suffer No Hardship if the Injunction is Granted</u>

The third prong of the traditional Ninth Circuit test requires the Court to balance the hardships between the plaintiff and the defendant. *See Alliance*, 632 F.3d at 1137-38. Here, Emeryville fails to identify *any* hardship that it would suffer if the injunction was in place. On that basis alone, the

balance of hardships tips decidedly in favor of CRA's members as their free speech and property rights, among others, are restricted every day the ordinance remains in place. Because the balance of hardships tips decidedly in CRA's favor, and because CRA has, at a minimum, raised serious questions as to the merits of its claims, the inquiry should end there and the injunction should be issued. *See Cassim*, 824 F.2d at 795 (injunction should be granted where serious questions are raised and balance of hardships tips decidedly in plaintiff's favor); *Alliance*, 632 F.3d at 1135 ("serious questions" alternative standard survived Supreme Court's ruling in *Winters*).

## B. <u>Emeryville's Public Interest Argument Lacks Admissible Evidence</u>

Knowing that it will suffer no hardship, Emeryville instead focuses the Court on the alleged public interest in directing service charges away from Hospitality Employers and to Hospitality Workers. In so doing, Emeryville relies exclusively on the inadmissible declaration of Local 2850's president. Pl.'s Opp'n to Def.'s Mot. to Dismiss at 26-27.[6] For example, Mr. Huber's declaration as to the harms hospitality workers would suffer if the Ordinance was invalidated relies on two supposed studies that he does not allege to have conducted, participated in, or been involved with in any way other than to have read them. The studies cited in Mr. Huber's declaration entirely lack foundation, have not been authenticated, and were not even attached. They should be disregarded under Local Rule 7-3(a). Mr. Huber also relies on inadmissible hearsay as to what he "learned first-hand from tipped workers" about their compensation (Huber Dec. ¶ 9).

The remainder of Mr. Huber's declaration consists of entirely speculative and improper opinion testimony without any declarations of fact. Mr. Huber speculates—without any factual assertions or statements establishing personal knowledge—as to what customers are likely to believe if they see a service charge being added to their bill (*id.*), restaurateurs' incentives to impose service charges (*id.* at ¶ 11), the ridiculously broad general assertion that tipped employees are on the verge of losing their homes (*id.* at ¶ 12), what restauranteurs will likely do in the future to offset minimum wage increases (*id.* at ¶ 13), the corresponding impact those actions will have

---

[6] Pursuant to Local Rule 7-3(a)'s requirement that evidentiary objections be contained within the opposition brief itself, CRA uses this section to assert such objections to the Declaration of Wei-Ling Huber.

1 on tipped employees' income (*id.*), the supposed manner in which *all* service charges are labeled
2 on receipts (*id.* at ¶¶ 15-16), the manner and method in which *all* employers disburse service
3 charges (*id.*), whether *any* employers hold service charges in trust (*id.* at ¶ 17), and how *all*
4 employers treat *all* of their revenue (*id.* at ¶ 18). None of these are statements of fact. Beyond
5 that, the statements are speculative and argumentative, lack foundation and personal knowledge,
6 and constitute inadmissible opinion of a lay witness. Emeryville has failed to submit any *actual*
7 evidence of harm. The declaration should be stricken in its entirety.

Equally unpersuasive is Emeryville's argument that enjoining the Ordinance undermines its interest in effecting minimum wage laws. CRA does not even challenge any portion of the Ordinance pertaining to minimum wages. Under no circumstances will any workers who would otherwise be subject to the Ordinance earn less than the minimum wage protections that are in place for all workers within the city. Emeryville presents no evidence or argument that Hospitality Workers will suffer harm if they are not allowed to retain service charges over and above the minimum wage earned by workers in all other industries.

## VI. CONCLUSION

CRA has established that: (1) its members will suffer irreparable harm if the Ordinance is not enjoined, (2) it is likely to prevail on the merits; and (3) the balance of hardships and public interest weigh in favor of granting an injunction. Alternatively, CRA has raised serious questions as to the merits that warrant further litigation and the balance of hardships tip decisively in its favor. The Court should therefore grant CRA's motion for preliminary injunction.

Respectfully submitted,

Dated: February 28, 2017

**weintraub tobin** chediak coleman grodin
law corporation

By: /s/ Lukas J. Clary
    Charles L. Post
    Lukas J. Clary

Attorneys for Plaintiff
California Restaurant Association