J. Leah Castella (SBN 205990)
E-mail:  lcastella@bwslaw.com
Benjamin L. Stock (SBN 208774)
E-mail:  bstock@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
1901 Harrison Street, Suite 900
Oakland, CA  94612-3501
Tel: 510.273.8780    Fax:  510.839.9104

Attorneys for Defendant
CITY OF EMERYVILLE

Paul L. More (SBN 228589
E-mail:  pmore@msh.law
McCRACKEN, STEMERMAN & HOLSBERRY, LLP
595 Market Street, Suite 800
San Francisco, CA 94105
Tel: 415.597.7200    Fax:  415.597.7201

Attorneys for Intervenor
UNITE HERE LOCAL 2850

FILING FEE EXEMPT PURSUANT TO
GOVERNMENT CODE § 6103

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RESTAURANT ASSOCIATION, a California nonprofit mutual benefit corporation,<br><br>                    Plaintiff,<br><br>v.<br><br>CITY OF EMERYVILLE, a California municipal corporation,<br><br>                    Defendant,<br><br>UNITE HERE LOCAL 2850, an unincorporated association,<br><br>                    Intervenor-Defendant. | Case No.  3:16-cv-06660-JST<br><br>**DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>**Date:        March 23, 2017**<br>**Time:        2:00 p.m.**<br>**Place:        Courtroom 9 – 19th Floor** |

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4817-2576-4675 v4

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS 3:16-CV-06660-JST

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

ARGUMENT .............................................................................................................. 2

I.      THE SERVICE CHARGE REQUIREMENT IS CONSTITUTIONAL .......................... 2

    A.      The Service Charge Requirement Does Not Violate the Takings Clause .............. 2

        1.      CRA Does Not Have Standing ........................................................ 2

        2.      Service Charges Are Not Property Within the Fifth Amendment ............ 5

        3.      The Ordinance Does Not Create An Unconstitutional Condition............... 8

    B.      The Service Charge Requirement Does Not Violate the First Amendment .......... 8

        1.      The Ordinance Regulates Conduct, Not Speech ......................................... 9

        2.      If the Ordinance Does Implicate Expression, it is a Valid Regulation of Commercial Speech ............................................................ 15

        3.      If the Ordinance Regulates Expression, it Targets Misleading Commercial Speech ...................................................................... 16

            a.      Any Speech Targeted by the Ordinance is Inherently Misleading................................................................................ 16

            b.      Even if the Ordinance Only Regulated "Potentially Misleading" Speech, it Would Easily Pass Muster Under Central Hudson ............................................................................ 19

    C.      The Service Charge Requirement Does Not Violate Equal Protection................. 21

        1.      A Rational Basis Exists for Limiting the Ordinance to Hotels, Restaurants, and Banquet Facilities ............................................................ 21

        2.      A Rational Basis Exists for Exempting Government Employees............. 23

II.     THE SERVICE CHARGE REQUIREMENT IS NOT PREEMPTED BY FEDERAL OR STATE LAW ............................................................................... 24

    A.      The Ordinance is Not Preempted by Federal Tax Law........................................ 24

    B.      The Ordinance is Not Preempted by the FLSA .................................................. 25

    C.      The Ordinance is Not Preempted by State Sales Tax Law .................................. 27

    D.      The Ordinance is Not Preempted by California Labor Code §§ 350-356............. 28

CONCLUSION .......................................................................................................... 30

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

### Federal Cases

4
5

*44 Liquormart v. Rhode Island,*
    517 U.S. 484 (1996)....................................................................12

6
7

*Alexander v. Cahill,*
    598 F.3d 79 (2d Cir. 2010)..........................................................17

8

*American Academy of Pain Management v. Joseph,*
    353 F.3d 1099 (9th Cir. 2004)........................................17, 19, 20

9
10

*American Hotel & Lodging Ass'n,*
    119 F.Supp.3d 1177 (C.D. Cal. May 13, 2015) ..........................19

11

*Ass'n of Nat. Advertisers v. Lundgren,*
    44 F.3d 726 (9th Cir. 1994)....................................................18, 19

12
13

*Bd. of Trustees of State Univ. of N.Y. v. Fox,*
    492 U.S. 469 (1989)....................................................................13

14
15

*FCC v. Beach Communications,*
    508 U.S. 307 (1993)....................................................................23

16

*Central Hudson Gas & Elec. Corp. v. Public Service Comm'n of New York,*
    447 U.S. 557 (1980)................................................................15, 16

17
18

*Coho Salmon v. Pac Lumber Co.,*
    61 F.Supp.2d 1001 (9th Cir. 1999) ...............................................3

19
20

*Connolly v. Pension Ben. Guaranty Corp.,*
    475 U.S. 211 (1986)......................................................................7

21

*Copantitla v. Fiskardo Estiatorio, Inc.,*
    788 F.Supp.2d 253 (S.D.N.Y. 2011)...........................................18

22
23

*Dana's R.R. Supply v. Att'y Gen. of Fla.,*
    807 F.3d 1235 (11th Cir. 2016)...............................................13, 14

24
25

*Davis v. 2193 Niagara Street*
    2016 U.S. Dist. Lexis 98351 (W.D.N.Y. 2016)..........................28

26

*Davis v. Four Seasons Hotel Ltd.,*
    810 F.Supp.2d 1145 (D. Haw. 2011) ..........................................26

27
28

*Eastern Enterprises v. Apfel,*
    524 U.S. 498 (1998)......................................................................8

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4817-2576-4675 v4           - ii -           DEFENDANT'S REPLY IN SUPPORT OF
                                                  MOTION TO DISMISS 3:16-CV-06660-JST

*Engquist v. Or. Dep't or Agric*,
    478 F.3d 985 (9th Cir. 2007).................................................................................5

*Expressions Hair Design v. Schneiderman*,
    808 F.3d 118 (2d Cir. 2015)..................................................................11, 13, 14

*Florida Bar v. Went For It, Inc.*,
    515 U.S. 618 (1995)............................................................................................20

*Fortuna Enters., L.P. v. City of L.A.*,
    673 F.Supp.2d 1000 (C.D. Cal. 2000)...............................................................23

*Friedman v. Rogers*,
    440 U.S. 1 (1978)................................................................................................18

*Giboney v. Empire Storage & Ice Co.*,
    336 U.S. 490 (1949)........................................................................................9, 10

*Grocery Manufacturers Association v. Sorrell*,
    102 F.Supp.3d 583 (D. Vt. 2015).......................................................................17

*Hart v. Rick's Cabaret Int'l, Inc.*,
    967 F.Supp.2d 901 (S.D.N.Y. 2013)..................................................................28

*Hoffman v. Capital Cities/ABC, Inc.*,
    255 F.3d 1180 (9th Cir. 2001)............................................................................15

*Horne v. Dep't of Agric.*,
    135 S. Ct. 2419 (2015).................................................................................3, 4, 5, 6

*Hunt v. Wash. State Apple Adver. Comm'n*,
    432 U.S. 333 (1977)..............................................................................................2

*Int'l Franchise Ass'n v. City of Seattle*,
    803 F.3d 389 (9th Cir. 2015)..............................................................................10

*Italian Colors Restaurant v. Harris*,
    99 F.Supp.3d 1199 (E.D. Cal. 2015)..................................................................14

*Jisser v. City of Palo Alto*,
    No. 5:15-CV-05295-EJD, 2016 WL 3456696 (N.D. Cal. June 24, 2016)..............4

*Koontz v. St. Johns River Water Mgmt. Dist.*,
    133 S. Ct. 2586 (2013)..................................................................................4, 5, 8

*Lowe v. SEC*,
    472 U.S. 181 (1985)............................................................................................10

*Luiken v. Domino's Pizza, LLC*,
    654 F.Supp.2d 973 (D. Minn. 2009)..................................................................26

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4817-2576-4675 v4                        - iii -                    DEFENDANT'S REPLY IN SUPPORT OF
                                                                        MOTION TO DISMISS 3:16-CV-06660-JST

*Mattel, Inc. v. MCA Records, Inc.*,
  296 F.3d 894 (9th Cir. 2002)...........................................................................15

*Nebbia v. New York*,
  291 U.S. 502 (1933)..........................................................................................15

*NFIB v. Sebelius*,
  132 S. Ct. 2566 (2012)......................................................................................20

*Ohralik v. Ohio State Bar Ass'n*,
  436 U.S. (1978)..................................................................................................10

*Pacific Merchant Shipping Ass'n v. Aubry*,
  918 F.2d 1409 (9th Cir. 1990)..........................................................................26

*Pennell v. San Jose*,
  485 U.S. 1 (1988).................................................................................................3

*Philips v. Washington Legal Foundation*.
  538 U.S. 216 (2003).............................................................................................6

*Phillips v. Washington Legal Found.*,
  524 U.S. 156 (1998).............................................................................................6

*Pickup v. Brown*,
  728 F.3d 1042 (9th Cir. 2013)..........................................................................10

*R.A.V. v. City of St. Paul*,
  505 U.S. 377 (1992).............................................................................................9

*R.I. Hosp. Ass'n v. City of Providence*,
  667 F.3d 17 (1st Cir. 2011)..............................................................................23

*Rowell v. Pettijohn*,
  816 F.3d 73 (5th Cir. 2016).........................................................................13, 14

*RUI One v. Corp. v. City of Berkeley*,
  371 F.3d 1137 ...................................................................................................23

*Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*,
  547 U.S. 47 (2006)............................................................................................10

*United States v. Schiff*,
  379 F.3d 621 (9th Cir. 2004)............................................................................15

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011).......................................................................................9, 10

*United States v. Sperry Corp.*,
  493 U.S. 52 (1989)...............................................................................................8

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

*Virginia Board of Pharmacy v. Virginia Citizens of Consumer Counsel, Inc.,*
    425 U.S. 748 (1976) ..................................................................................................12, 16

*Washington Legal Foundation v. Legal Foundation of Washington,*
    271 F.3d 835 (9th Cir. 2001) ............................................................................................2, 3

*Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,*
    473 U.S. 172 (1985) ..............................................................................................................4

*Wine & Spirits Retailers, Inc. v. Rhode Island,*
    418 F.3d 36 (1st Cir. 2005) ................................................................................................12

**State Cases**

*Davis v. Four Seasons Hotel Ltd.,*
    122 Hawai'i 423 (2010) ......................................................................................................18

*Garcia v. Four Points Sheraton, LAX,*
    188 Cal.App.4th 364 (2010)...........................................................................23, 28, 29, 30

*Henning v. Industrial Welfare Comm'n,*
    46 Cal.3d 1262 (1988) ..................................................................................................19, 26

*Walgreens Co. v. City and County of San Francisco,*
    185 Cal.App.4th 424 (2010).........................................................................21, 22, 23, 24

**Federal Statutes**

29 U.S.C. § 202(a) ....................................................................................................................26

29 U.S.C. § 218(a) ....................................................................................................................26

Endangered Species Act...........................................................................................................3

ERISA ..........................................................................................................................................7

Fair Labor Standards Act ("FLSA") ...........................................................................25, 26, 27

**State Statutes**

Cal. Bus. & Prof. Code § 17200 et seq. .................................................................................29

Cal. Code Regs § 927-1 .............................................................................................................6

Cal. Labor Code §§ 350-356 ..............................................................................................28, 30

Cal. Labor Code §§ 350 et seq. ...........................................................................................29, 30

Cal. Labor Code § 351 ........................................................................................................25, 26

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4817-2576-4675 v4                          - v -              DEFENDANT'S REPLY IN SUPPORT OF
                                                                  MOTION TO DISMISS 3:16-CV-06660-JST

Cal. Labor Code § 1205(b)........................................................................................26

Cal. Rev. & Tax Code, § 6012(a)(2)...........................................................................27

**Regulations**

18 C.C.R. § 1603........................................................................................6, 11, 27

18 C.C.R. § 1603(h)......................................................................................11, 27

18 C.C.R. § 1603(h)(3)(B) ....................................................................................12

12 N.Y.C.R.R. § 146-2.18(b) ................................................................................21

Board of Equalization Regulation 1603 ...................................................................27

DLSE Opinion Letter No. 1994 1.07 ..........................................................................6

DLSE Opinion Letter No. 2000 11.02 ....................................................................6, 29

IRS Rev. Rul. 59-252 .............................................................................................6

Rev. Rul. 2012-18 .................................................................................................6

**Other Authorities**

First Amendment.........................................................1, 2, 8, 9, 10, 12, 13, 14, 17

Fifth Amendment .........................................................................1, 2, 4, 5, 6, 7, 8

BOE Publication 115, Tips, Gratuities, and Service Charges (May 2015)........................27

California Restaurant Association, andatory Service Charges Versus Tips and
  Surcharges," available at: http://www.calrest.org/mandatory-service charges-
  vs-tips.html (last visited Feb. 18, 2017)............................................................18, 22

Internal Revenue Service, Topic 761 - Tips – Withholding and Reporting,
  available at https://www.irs.gov/taxtopics/tc761.html...........................................18

IRS Tax Guide for Small Business, Publication 334 (2016) ..........................................27

*O'Connor v. Uber Technologies, Inc.*,
  2013 WL 6354534, No. C-13-3826-EMC (Dec. 5, 2013) .................................29, 30

Robert Post & Amanda Shanor, Adam Smith's First Amendment, 128 Harv. L.
  Rev. ...................................................................................................................9

Robert Post, *Compelled Commercial Speech*, 117 W. Va. L. Rev. 867, 914 (2015) ..................10

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4817-2576-4675 v4                    - vi -               DEFENDANT'S REPLY IN SUPPORT OF
                                                              MOTION TO DISMISS 3:16-CV-06660-JST

1

2

Ronald Mann, *Argument analysis: Merchants seem to fall short in challenge to New York statute banning credit-card "surcharges"* SCOTUSblog (Jan. 11, 2017, 10:49 AM), http://www.scotusblog.com...........................................................13

3

4

5

Sylvia Allegretto and David Cooper, TWENTY-THREE YEARS AND STILL WAITING FOR CHANGE: WHY IT'S TIME TO GIVE TIPPED WORKERS THE REGULAR MINIMUM WAGE (Economic Policy Institute 2014), available at: http://www.epi.org/files/2014/EPI-CWED-BP379.pdf ...........................................22

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4817-2576-4675 v4

- vii -

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS 3:16-CV-06660-JST

1

**INTRODUCTION**

2    In its opposition, CRA continues to espouse radical, unprecedented First and Fifth

3   Amendment theories; it ignore the City's rational bases for its economic regulation of service

4   charges in the restaurant, hotel and banquet industries; and it insists that the Ordinance is

5   preempted by state and federal laws that address entirely different subjects.  The Court should

6   reject these arguments and dismiss the complaint for failure to state a claim.

7    CRA's takings claim is based on the alarming principle that businesses have a

8   constitutional property right to retain particular *streams of business revenue* and that economic

9   regulations that require payment of such revenues to third-parties are, *per se*, physical takings.

10  This would dramatically expand the concept of property under the Takings Clause, well beyond

11  the segregated, interest-bearing bank accounts discussed in cases cited by CRA.  Nor is there any

12  clear definitional limit to CRA's theory.  If business revenue from a customer's service charge

13  invoice is "property" because it is "traceable and identifiable," then so is revenue derived from all

14  of the business's other invoices and bills because all business revenue is ultimately "traceable."

15  If this were the law, all business revenue would be subject to *per se* takings analysis, which runs

16  counter to Supreme Court precedent.  Even if CRA had standing to bring this remarkable claim,

17  which it does not, this theory is unsustainable.

18   CRA's First Amendment theory is just as misguided.  The Ordinance does not regulate

19  expression, it regulates commercial conduct.  It affects the *consequences* of an economic

20  transaction: the disposition of "separately-designated amounts collected by a Hospitality

21  Employer" that meet the Ordinance's definition of a service charge.  Sec. 5-37.04 (a)(1).  Any

22  impact on expression is incidental and the product of the Ordinance's need to define the types of

23  economic transactions that are regulated.  Even if the Ordinance did regulate expression, it is

24  valid because it targets misleading commercial speech and because it directly advances the City's

25  substantial interests in consumer and worker protection through means that are a reasonable fit to

26  accomplishing those goals.

27   CRA's Equal Protection claim is also baseless.  The City rationally concluded that service

28  charges were most prevalent in the hospitality industries covered, and that most tipped employees

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4817-2576-4675 v4                    - 1 -                    DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS 3:16-CV-06660-JST

1    work in these industries.  Under well-established precedent, the City was permitted to target these

2    industries before considering whether to expand service charge protections to barbers, hair salons,

3    or carwashes, the industries that CRA insists had to be covered in the first instance.

4         Finally, CRA's preemption arguments misread both the import of the laws it cites and the

5    scope of the Ordinance.  None of the laws that CRA relies upon has the purpose or effect of

6    defining the revenues its members derive from service charges as their immutable property, nor is

7    there any conflict between complying with the Ordinance and simultaneously withholding federal

8    income tax from wages, imposing sales tax on service-charge revenues, and complying with

9    federal and state labor laws.

10                                   **ARGUMENT**

11   **I.     THE SERVICE CHARGE REQUIREMENT IS CONSTITUTIONAL**

12        CRA claims that the Service Charge Requirement violates the takings clause, the First

13   Amendment, and equal protection.  All of these arguments are meritless.

14        **A.     The Service Charge Requirement Does Not Violate the Takings Clause**

15        As explained in the City's Opening Brief, CRA's takings claim fails because:  () it lacks

16   standing to bring a *per se* takings claim on behalf of its members; and (2) service charges are not

17   property within the meaning of the Fifth Amendment.  CRA has failed to effectively address

18   either of these arguments.

19                      1.     CRA Does Not Have Standing

20        To establish associational standing, CRA must demonstrate that neither the claim asserted,

21   nor the relief requested, requires the participation of individual members in the lawsuit.  *Hunt v.*

22   *Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).  CRA acknowledges in its

23   opposition that this element cannot be satisfied with respect to a regulatory takings claim, but

24   argues that the same prohibition does not apply to its physical takings claim.  Pl's. Opp. Mot.

25   Dismiss 6:21-25, 7:19-27, Feb. 21, 2017, ECF No. 27.  Not so.  In *Washington Legal Foundation*,

26   the Court considered whether an association had standing to bring a *per se* physical takings claim

27   on behalf of its members.  *Washington Legal Foundation v. Legal Foundation of Washington*,

28   271 F.3d 835, 849 (9th Cir. 2001).  The Court answered that question in the negative, and held

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4817-2576-4675 v4                    - 2 -                    DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS 3:16-CV-06660-JST

that associations do not have standing to bring these types of claims because "the appropriate relief—determining what, if any, just compensation is due to the owner of the property taken—necessarily requires the participation of the individual members."[1] *Id.* at 850.

To combat this unambiguous legal principle, CRA cites three cases: *Pennell v. San Jose*, which it contend stands for the proposition that an association has standing to bring a facial takings claim, *Horne v. Dep't of Agriculture*, which it contends stands for the proposition that just compensation does not need to be proven in a physical takings case; and *Koontz v. St. Johns River Water Mgmt Dist.*, which it contends stands for the proposition that unconstitutional conditions cases do not require individualized determinations.   Pl's. Opp. Mot. Dismiss 6-7, Feb. 21, 2017, ECF No. 27.   CRA mischaracterizes the holding in each of these cases.[2]   As such, CRA has not identified proper authority for standing.

In *Pennell,* the Court was faced with whether the City of San Jose's rent control ordinance was an invalid regulatory taking.   *Pennell v. San Jose*, 485 U.S. 1, 4 (1988).   Plaintiffs were owners of the property <u>and</u> an association organized for the sole purpose of representing the interest of the owners and property located only with the City of San Jose.   *Id.* at 5.   CRA has no similar purpose.

In *Horne*, the plaintiffs challenged the U.S. Department of Agriculture from mandating that certain farmers be required to reserve some of their raisins for noncommercial purposes. *Horne v. Dep't of Agric.*, 135 S. Ct. 2419, 2424 (2015).   The raisins at issue had a market value of

---

[1] CRA correctly points out that *Washington Legal Foundation* held that it was appropriate to apply the test for a regulatory taking to the *per se* takings claim advanced in that case.  But contrary to CRA's suggestion, that holding does not mean that *Washington Legal Foundation* was a regulatory takings case.  Pl's. Opp. Mot. Dismiss 8:12, Feb. 21, 2017, ECF No. 27.  To the contrary, *Washington Legal Foundation* was brought as a *per se* takings case, and the standing discussion was directly related to the ability of an association to bring a *per se* takings claim.  *Id.* at 850.  The Court's rejection of the *per se* takings argument has no bearing on the standing discussion.

[2] CRA also cites to *Coho Salmon v. Pac Lumber Co.*, 61 F.Supp.2d 1001 (9th Cir. 1999) to support its argument.  Pl's. Opp. Mot. Dismiss 6:6-8, Feb. 21, 2017, ECF No. 27.  But *Coho Salmon* did not discuss takings claims – it discussed incidental take permits under the Endangered Species Act.  It has no bearing on whether or not CRA's takings claim satisfies the third prong of the associational standing test.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4817-2576-4675 v4                                     - 3 -                DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS 3:16-CV-06660-JST

1    $480,000 and the levied government fine for refusing to turn over the disputed raisins was

2    $200,000.  *Id.* at 2425.  The Court understood that the physical taking was only actionable

3    because the damages (i.e., the fine) had been levied and that was part of the record.  *Id.* at 2431.

4    CRA is wrong that just compensation was not an element needed to prove this physical taking

5    claim.

6          Finally, in *Koontz*, a property owner sought to develop 3.7 acres of his 14.9 acres, and

7    sought a land use application from the local water management district in Florida.  *Koontz v. St.*

8    *Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2592 (2013).  The district demanded that 13.9

9    acres be encumbered by a conservation easement in exchange for allowing 1 acre to be

10   developed.  *Id.* at 2593.  The district also offered in the alternative that plaintiff could build offsite

11   flood improvement on district property.  The Court quoted the well-established rule that

12   *Nollan*/*Dolan* "involve a special application of this doctrine that protects the Fifth Amendment

13   right to just compensation for property the government takes when owners apply for land-use

14   permits."  *Id.* at 2594.  It additionally said that whether the amount of the exaction was enough to

15   trigger *Nollan*/*Dolan* was not subject to the federal Court's review, but remanded back to state

16   courts to determine.  *Id.* at 2598.  In order to determine whether the governmental agency has

17   gone too far in an exaction, courts must look at the exaction in relation to the property to be

18   developed.  *Id.* at 2595.  *Koontz* simply does not support CRA's novel attempt to apply a

19   *Nollan*/*Dolan* analysis outside the context of a property owner seeking a land use permit.

20         An essential element of CRA's takings claim is entitlement to just compensation.

21   Satisfaction of that element of the claim requires an *ad hoc* factual inquiry for each of its

22   members.  As such, CRA has no standing.[3]

23   _____

24   [3] CRA has also failed to establish that its claim is ripe.  In addition to seeking declaratory relief,
     CRA is also seeking to enjoin the City from enforcing the Ordinance against its members.  Pl's.
25   Opp. Mot. Dismiss 9-10, Feb. 21, 2017, ECF No. 27.  This request for an injunction is an as
     applied challenge, therefore, CRA must first perfect the claim in state court.  *Williamson County*
26   *Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194-95 (1985).  As
     recently stated in *Jisser v. City of Palo Alto*, exhausting in state court is necessary regardless of
27   whether the claimed property right burdens real property or imposes a condition requiring the
     transfer of money.  *Jisser v. City of Palo Alto*, No. 5:15-CV-05295-EJD, 2016 WL 3456696, at *4
28   (N.D. Cal. June 24, 2016) ("[i]f state procedures offer a potential remedy to landowners – either

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4817-2576-4675 v4                    - 4 -            DEFENDANT'S REPLY IN SUPPORT OF
                                                          MOTION TO DISMISS 3:16-CV-06660-JST

2.   Service Charges Are Not Property Within the Fifth Amendment

CRA plainly states that it is not bringing a regulatory takings claim, and instead bases its takings cause of action on the assertion that service charges are specifically identifiable private property interests, and that as a result, the Ordinance constitutes a *per se* taking.  None of the cases cited by CRA support this argument.

CRA's first case, *Engquist v. Or. Dep't or Agric*, the Court found that interest in plaintiff's punitive damages award was not a property right subject to any takings when it was uncertain at best that plaintiff would even obtain the award.  478 F.3d 985, 1003-05 (9th Cir. 2007).  The court found determinative of whether any right is in fact a property right by looking at, "the certainty of the plaintiff's expectations that she would receive the property."  *Id.* at 1004.  As CRA admits, its "expectation" is grounded solely on the concept that gross business income earned by the business is "nearly absolute."  Pl's. Opp. Mot. Dismiss 10:21, Feb. 21, 2017, ECF No. 27.  Under this expectation, virtually every regulation requiring a business to redirect its income would be subject to a takings analysis.  CRA is unable to point to any case law that supports this overly broad view of takings jurisprudence.  Instead, it cites to *Koontz*, *Horne* and *Brown v. Legal Foundation*, as its sole authority.  Pl's. Opp. Mot. Dismiss 11, Feb. 21, 2017, ECF No. 27.  However each of those cases were grounded on longstanding takings jurisprudence that the money being confiscated was protected by property law.

*Koontz* involved a monetary exaction levied in exchange for the right to develop real property.  *Koontz*, 133 S. Ct. at 2592.  The extent to which a governmental entity can condition land use permits on the payment of money implicates real property, and is a well-developed area of takings jurisprudence that has no application here.   In *Horne*, the federal government required farmers to turn over a portion of their crops to the federal government for noncommercial purposes.  *Horne*, 135 S. Ct. at 2424.  The Court noted that the principle that crops constitute real property "goes back at least 800 years to Magna Carta, which specifically protected agricultural

by paying just compensation for the taking or by modifying the burdensome condition – the state remedy must be pursued before a federal claim is ripe."  The court clearly stated that any as applied challenges are subject to exhaustion in state court, and here CRA expressly admits that it seeks injunctive relief for its as applied challenge.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4817-2576-4675 v4                                    - 5 -                    DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS 3:16-CV-06660-JST

1    crops from uncompensated takings." *Id.* at 2426.  Not surprisingly, given the long standing

2    protection under the takings clause for crops, the Court recognized a property right under the

3    Fifth Amendment.  Finally, *Brown v. Legal Foundation* dealt with interest in a client trust

4    account, which the Court had previously announced was a protected property right in *Philips v.*

5    *Washington Legal Foundation*.  538 U.S. 216, 220 (2003).  To support that conclusion, the

6    *Phillips* court relied on a body of property law dating back to English common law from the mid-

7    1700's that "interest follows principal".  *Phillips v. Washington Legal Found.*, 524 U.S. 156, 165

8    (1998). Given the firm foundation in real property law for this principle, the Court concluded that

9    interest in a client trust account was a protected property right under the Fifth Amendment.

10        CRA seeks to analogize these property rights—which are deeply rooted in real and

11   personal property principles dating back hundreds of years—to service charges.  But the sources

12   CRA uses, which include opinion letters from the U.S. Department of Labor and California

13   Division of Labor Standards, do not justify this comparison.  Pl's. Opp. Mot. Dismiss 10:25, Feb.

14   21, 2017, ECF No. 27.  These opinion letters relate to the employer/employee relationship, not to

15   the determination of property rights, and they certainly do not stand for the proposition that

16   business income derived from "service charges" are an inalienable property right akin to the

17   ancient edict that interest follows principle.  (See Section II of this Reply; U.S. D.O.L. Op. Letter

18   of July 12, 1999 at pp. 2-3; U.S. D.O.L. Op. Letter of February 8, 1985, pp. 2-3 and 8; IRS Rev.

19   Rul. 59-252 and Rev. Rul. 2012-18; 18 Cal. Code Regs § 1603; 22 Cal. Code Regs § 927-1;

20   DLSE Opinion Letter No. 2000 11.02 at p. 2; DLSE Opinion Letter No. 1994 1.07.)  Indeed,

21   CRA's sources do nothing more than establish that a service charge is part of an employer's gross

22   receipts, which may be taxed or required to be paid to third persons, such as employees.  *Id.*  The

23   sources are wholly indifferent to the charges' distribution.  *Id.*

24        CRA's observation that property interests stem from independent sources such as state

25   law is accurate.  Pl's. Opp. Mot. Dismiss 10:5-7, Feb. 21, 2017, ECF No. 27.  But its assertion

26   that there is an independent body of law establishing a property interest in the service charge

27   portion of business revenue is inaccurate.  Service charge revenue is nothing more than money,

28   and public entities can legitimately require businesses to pay money to third-parties without

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4817-2576-4675 v4                          - 6 -                DEFENDANT'S REPLY IN SUPPORT OF
                                                                    MOTION TO DISMISS 3:16-CV-06660-JST

1   running afoul of the Takings Clause.  To hold otherwise would disrupt well-settled principles

2   underlying economic regulation.  Under CRA's takings theory, an employer could shield itself

3   from mandatory minimum wage obligations by simply putting its business revenue into interest-

4   bearing bank accounts.  The theory would undermine established regulatory regimes like the

5   Employee Retirement Income Security Act ("ERISA"), which mandates employers to pay

6   benefits to workers from designated employer funds.  Under CRA's construction of takings

7   jurisprudence, these regulations would constitute a *per se* taking because the payment to the

8   employee is made from an identified fund.  At its foundation, CRA is suggesting that any stream

9   of *business income* that is "traceable" and separately identifiable constitutes immutable,

10  constitutionally protected property—is subject to *per se* takings analysis.  This would radically

11  expand the bounds of the Fifth Amendment, and unsurprisingly, no court has ever endorsed such

12  a proposition because it would fly in the face of the black letter law that the Takings Clause is not

13  violated "whenever legislation requires one person to use his or her assets for the benefit of

14  another."  *Connolly v. Pension Ben. Guaranty Corp.*, 475 U.S. 211, 223 (1986).

15          As explained, CRA's takings theory is legally unsupportable.  But it is also practically

16  inapplicable, because it incorrectly assumes that the Ordinance requires that the money paid to the

17  employees be the exact same money that the employer collects from the service charge.  That is

18  not what the Ordinance requires.  Instead, it requires that covered employers "pay" service

19  charges over to their service employees as part of a regular paycheck.  Sec. 5-37.04(b)(1).

20  Nothing stops a covered employer from making this payment from its general assets, and nothing

21  in the Ordinance requires an employer to sequester the *specific funds* generated from a service

22  charge for payment to covered employees.  Restaurants pay the amount of the service charge to

23  the relevant employees in the next pay period, as part of a regular paycheck, and may make this

24  payment from general assets.  CRA has identified no instance in which the City—or any other

25  city where a similar service-charge ordinance is in place—has insisted that a covered restaurant

26  (1) require customers to pay separately for the service-charge portion of their bill, (2) sequester

27  the resulting "service charge" funds into a separate account; and (3) pay covered employees their

28  portion of the service charge *only* from this separate, sequestered "service charge" fund.  Nor

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4817-2576-4675 v4                    - 7 -               DEFENDANT'S REPLY IN SUPPORT OF
                                                             MOTION TO DISMISS 3:16-CV-06660-JST

could it, as that is not how the Ordinance functions.  Thus, the Ordinance does not "take" the service charge revenue because it permits employers to "pay over" service charges from "fungible assets," which the Supreme Court has repeatedly recognized is not subject to a takings claim. *Eastern Enterprises v. Apfel,* 524 U.S. 498, 530 (1998); *United States v. Sperry Corp.*, 493 U.S. 52, 62, n.9 (1989).

### 3.    The Ordinance Does Not Create An Unconstitutional Condition.

CRA claims that the Ordinance places an "unconstitutional condition" on its members because its members are required to "relinquish a specific, identifiable property interest—Service Charges" in order to maintain their business licenses.  Pl's. Opp. Mot. Dismiss 12, Feb. 21, 2017, ECF No. 27.  This argument fails.  "[A] predicate for any unconstitutional conditions claim is that the government could not have constitutionally ordered the person asserting the claim to do what it attempted to pressure that person into doing." *Koontz*, 133 S.Ct. at 2598.  As explained, in Section B(2), revenue from service charges are not a protected property interest under the Fifth Amendment, thus there is no constitutional barrier to the City requiring the payment of service charges to employees.  Consequently, predicating the renewal of a business license on compliance with this requirement is not an unconstitutional condition.

### B.    The Service Charge Requirement Does Not Violate the First Amendment.

CRA's First Amendment theory is as radical and ill-conceived as its takings claim, and its application of that theory relies on an obtuse and mistaken interpretation of the Ordinance that purposefully manufactures a constitutional problem where none exists.   It would obliterate the distinction between the regulation of commercial conduct and of commercial speech by treating the regulation of an economic transaction—the levying of a service charge as part of a hospitality employer's contract with its customer—as subject to searching First Amendment scrutiny, merely because the regulated business uses speech to accomplish the transaction.  That has never been the law.

Even if the Ordinance could be viewed as regulating speech, it only implicates a type of commercial speech that courts and legislatures have consistently is inherently misleading, which

///

makes the regulation valid under the First Amendment.[4]  Even if such conduct were only "potentially" misleading, the Ordinance—which directly advances the City's substantial interest in preventing consumers from being misled into thinking they have left a gratuity and in prohibiting regulated employers from applying a *de facto* tip credit to Emeryville's minimum wage—easily passes muster under the intermediate standard of review applicable to commercial speech regulations.

### 1.    The Ordinance Regulates Conduct, Not Speech

"[I]t has never been deemed an abridgment of the freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949).  When a law regulates conduct achieved through language, "the unprotected features of the words [used to achieve the conduct] are, despite their verbal character, essentially a 'nonspeech' element of communication." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 386 (1992).  That is why, for example, "a ban on race-based hiring may require employers to remove 'White Applicants Only' signs." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011) (*quoting Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.,* 547 U.S. 47, 62 (2006) ("*FAIR*"); see Robert Post & Amanda Shanor, Adam Smith's First Amendment, 128 Harv.  L. Rev. F. 165, 179 (2015) (because "[v]irtually everything humans do requires the use of language," "virtually all government regulations will, in one way or another, 'burden' speech, if by speech we mean the use of human language.").

The conduct/expression distinction applies with particular force to the regulation of commercial transactions that are accomplished—as nearly every commercial transaction is—through speech.  "[R]estrictions on protected expression are distinct from restrictions on

---

[4] Throughout its argument, CRA misrepresents the Ordinance as prohibiting hospitality employers "wishing to keep service charges [from] inform[ing] their customers of such intent." Pl.'s Opp. Mot. Dismiss 19, Feb. 21, 2017, ECF No. 27.  The Ordinance does not cover service charges that are communicated in this way.  If a hospitality employer described the service charges it was levying as going to management, then the charges would be neither "for service provided by Hospitality Workers" nor "reasonably believed [to be] for those services."  Sec. 5-27.04(a)(1).

1  economic activity or, more generally, on nonexpressive conduct . . . . [T]he First Amendment

2  does not prevent restrictions directed at commerce or conduct from imposing incidental burdens

3  on speech." *Sorrell v. IMS Health Inc.,* 564 U.S. 552, 567 (2011); *Ohralik v. Ohio State Bar*

4  *Ass'n*, 436 U.S. at 447, 456 (1978) (""[T]he State does not lose its power to regulate commercial

5  activity deemed harmful to the public whenever speech is a component of that activity.").

6       For this reason, antitrust law has never been considered subject to First Amendment

7  scrutiny merely because it regulates commercial conduct in restraint of trade that is achieved by

8  using words. *Giboney*, 336 U.S. at 502. Similarly, laws regulating contracts, such as the statute

9  of frauds, do not implicate the First Amendment even though they may prescribe speech. See

10  *Lowe v. SEC*, 472 U.S. 181, 232 (1985) (White, J., *concurring*) ("offer and acceptance are

11  communications incidental to the regulable transaction called the contract"); *cf.* Robert Post,

12  *Compelled Commercial Speech*, 117 W. VA. L. REV. 867, 914 (2015) (although "every rent

13  control law limits the words we may express in a contract," rent control laws are not held to

14  implicate the First Amendment). It is also why states may regulate professional conduct—such as

15  medical and legal malpractice—even though such conduct transpires by means of speech. *Pickup*

16  *v. Brown*, 728 F.3d 1042, 1054 (9th Cir. 2013) ("[D]octors are routinely held liable for giving

17  negligent medical advice to their patients, without serious suggestion that the First Amendment

18  protects their right to give advice that is not consistent with the accepted standard of care."). And

19  it is why a city may define the scope of a minimum wage obligation by reference to the existence

20  of a regulated franchisor's marketing plan without implicating the First Amendment. *Int'l*

21  *Franchise Ass'n v. City of Seattle*, 803 F.3d 389, 408-09 (9th Cir. 2015).

22       Like other economic regulations that do not implicate the First Amendment, the

23  Ordinance regulates a commercial transaction; "[i]t affects what [hospitality employers] must *do* .

24  . . not what they may or may not *say*." See *FAIR*, 547 U.S. at 60. More specifically, the

25  Ordinance regulates the *consequences* of an economic transaction: the disposition of "separately-

26  designated amounts *collected* by a Hospitality Employer" that meet the Ordinance's definition of

27  a service charge. Sec. 5-37.04 (emphasis added). The Ordinance does not prescribe or prohibit

28  any form of expression. Nor does it prohibit a covered employer from advertising its services,

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4817-2576-4675 v4        - 10 -        DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS 3:16-CV-06660-JST

our touting the prices it charges for such services.  The Ordinance includes *definitions* of a

"service charge" and examples of three different kinds of service charges.  But it does this only in

order to regulate the commercial transactions that are being targeted—the covered employer's

levying of an additional charge for the service provided by hospitality workers and the

employer's payment of that additional charge to those workers—not to regulate the speech that a

covered employer may use.  See *Expressions Hair Design v. Schneiderman*, 808 F.3d 118, 132

(2d Cir. 2015) (rejecting plaintiffs' "bewildering persistence in equating the actual imposition of a

credit-card surcharge . . . with the words that speakers of English have chosen to describe that

pricing scheme (i.e. the term 'credit-card surcharge').").

CRA argues that the Ordinance's requirement that amounts collected from customers in

the form of service charges be paid over to the workers who perform the services is some kind of

"penalty" for the way in which it describes its pricing.  Pl's. Opp. Mot. Dismiss 14, Feb. 21,

2017, ECF No. 27.  But an employer's *speech* does not violate the Ordinance, its commercial

*conduct*—its failure to pay service charges, as defined, to the hospitality workers who performed

the service—does.

The same distinction is reflected in California Board of Equalization Regulation 1603,

which CRA tries in vain to distinguish.  Pl's. Opp. Mot. Dismiss 19, Feb. 21, 2017, ECF No. 27.

CRA argues that Regulation 1603 applies sales tax to a charge regardless of whether it is

"communicated to customers as a service charge . . . or in any other way."  *Ibid.*  But this is

baseless.  Pl's. Opp. Mot. Dismiss 19, Feb. 21, 2017, ECF No. 27.  The Regulation applies sales

tax to "[a] mandatory payment *designated* as a tip, gratuity, or service charge . . . even if it is

subsequently paid by the retailer to employees."  18 C.C.R. § 1603(h) (emphasis added).  It

contains extensive discussion of types of speech that will trigger the imposition of a sales tax and

those that will not:

> (B) When the menu, brochures, advertisements or other printed
> materials contain statements that notify customers that tips,
> gratuities, or service charges will or may be added, an amount
> automatically added by the retailer to the bill or invoice presented
> to and paid by the customer is a mandatory charge and subject to
> tax.  These amounts are considered negotiated in advance as

///

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4817-2576-4675 v4                             - 11 -          DEFENDANT'S REPLY IN SUPPORT OF
                                                                  MOTION TO DISMISS 3:16-CV-06660-JST

specified in subdivision (h)(3)(A). Examples of printed statements include:

> "An 18% gratuity [or service charge] will be added to parties of 8 or more."

> "Suggested gratuity 15%," itemized on the invoice or bill by the restaurant, hotel, caterer, boarding house, soda fountain, drive-in or similar establishment.

> "A 15% voluntary gratuity will be added for parties of 8 or more."

18 C.C.R. § 1603(h)(3)(B).  Charges are not taxed when they are designated as an "environmental impact fee" or a "parking fee" or an "administrative fee."  But that is not because the Regulation seeks to discriminate based on the content of the speech or to regulate speech at all, it is because the Regulation has to define the types of commercial transactions that are taxable.  Any impact on speech is incidental to the Regulation's purpose of taxing a particular economic transaction.  The Ordinance is no different.

Nor is CRA's reliance on *Virginia Board of Pharmacy v. Virginia Citizens of Consumer Counsel, Inc.*, 425 U.S. 748, 770 (1976) well taken.  That case did not hold that any "manner in which a business conveys its pricing to customers constitutes expression protected by the First Amendment."  Pl's. Opp. Mot. Dismiss 13, Feb. 21, 2017, ECF No. 27.  Rather, it held that commercial *advertising*—speech that "*propose[s]* a commercial transaction," *Va. Bd. of Pharmacy*, 425 U.S. at 762 (emphasis added)—enjoys a limited form of First Amendment protection.  The reason that advertising was held to enjoy such protection is to protect the free-flow of information about commercial practices to the general public.  *Id*. at 765 ("Advertising, however tasteless and excessive it sometimes may seem, is nonetheless dissemination of information as to who is producing and selling what product, for what reason, and at what price.").  Regulating advertising that *proposes* an economic transaction is different from regulating the economic transaction itself, even when the transaction is accomplished using communication.  See *44 Liquormart v. Rhode Island*, 517 U.S. 484, 499 (1996) (plurality op.) ("commercial speech doctrine . . . represents an accommodation between the right to speak and hear expression *about* goods and services and the right of government to regulate the sales *of* such goods and services."); *Wine & Spirits Retailers, Inc. v. Rhode Island*, 418 F.3d 36, 49 (1st Cir.

1  2005) ("The commercial speech doctrine protects the communication of truthful information to

2  *potential* customers about a *proposed* commercial transaction," while "the provision of

3  advertising and licensing services [itself] is not speech that proposes a commercial transaction

4  and therefore does not constitute commercial speech.") (emphasis added); *Bd. of Trustees of State*

5  *Univ. of N.Y. v. Fox*, 492 U.S. 469, 482 (1989) (distinguishing between the proposal of a

6  commercial transaction, "which is what defines commercial speech," and the provision of certain

7  services for a profit, which is not commercial speech).

8         The Ordinance does not regulate marketing that a covered employer may wish to do about

9  the services it offers, the prices of those services, or the reasons why it believes its services are

10  exemplary.  It does not regulate how a covered employer may propose a transaction to a

11  customer.  Instead, it simply requires a particular disposition of defined amounts of money that

12  are the result of an economic transaction. This does not constitute a regulation of speech.

13         The only other basis CRA offers to support its claim that the Ordinance regulates speech

14  is a citation to one side of a circuit split now before the Supreme Court on the question of whether

15  state laws prohibiting merchants from imposing "surcharges" for the use of credit cards

16  implicates the First Amendment.  CRA asks the Court to adopt the Eleventh Circuit's position,

17  rather than the position of the Second and Fifth Circuits.  In doing so, CRA makes no mention of

18  the reasoning of any of the decisions or the critical distinctions between what was at issue in these

19  cases and what is at issue here.  See *Schneiderman*, 808 F.3d 118; *Rowell v. Pettijohn*, 816 F.3d

20  73, 80-83 (5th Cir. 2016) (ban on credit card "surcharges" did not implicated First Amendment);

21  *Dana's R.R. Supply v. Att'y Gen. of Fla.*, 807 F.3d 1235 (11th Cir. 2016) (ban on credit-card

22  surcharges coupled with exemption for cash "discounts" did implicate the First Amendment).[5]

23  _____

24  [5] CRA also claims, absurdly, that the Supreme Court granted *certiorari* in *Expressions Hair Design v. Schneiderman*, 808 F.3d 118, because it disagreed with its reasoning and would "in all likelihood" overturn it. Pl.'s Opp. Mot. Dismiss 7, Feb. 21, 2017, ECF No. 27.  The Court

25  granted *certiorari* in *Schneiderman* because there was a three-circuit split over the constitutionality of a law that is in effect in many other states.  And while reports from oral

26  argument are never a guarantee of an appeal's resolution, the argument in *Schneiderman* does not

27  signal a "likelihood" that the Second Circuit will be overturned.  See Ronald Mann, *Argument analysis: Merchants seem to fall short in challenge to New York statute banning credit-card*

28  *"surcharges"* SCOTUSblog (Jan. 11, 2017, 10:49 AM), http://www.scotusblog.com

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4817-2576-4675 v4                  - 13 -              DEFENDANT'S REPLY IN SUPPORT OF
                                                           MOTION TO DISMISS 3:16-CV-06660-JST

The state laws at issue in these decisions banned merchants from imposing a "surcharge" on purchases made with credit cards.  The Eleventh Circuit held that Florida's version of the law implicated the First Amendment because it also expressly *permitted* the giving of "discounts" to those using cash, check or other means of payment that are not credit cards.  *Dana's R.R. Supply*, 807 F.3d at 1242.  The court held that there was no meaningful economic difference between a "surcharge" for one form of payment and a discount for all others, so the only effect of the so-called "dual pricing" ban was to regulate speech.  *Id.* at 1245 ("Questions of metaphysics aside, there is no real-world difference between the two formulations. Accordingly, Florida's no-surcharge law is a restriction on speech, not a regulation of conduct.").

The Second and Fifth Circuits disagreed with the Eleventh Circuit's reading of the laws at issue and with its First Amendment reasoning.  The New York law at issue in *Schneiderman* and the Texas law at issue in *Pettijohn* simply stated that "[i]n a sale of goods or services, a seller may not impose a surcharge on a buyer who uses a credit card for an extension of credit instead of cash, a check or a similar means of payment."  *Pettijohn*, 816 F.3d at 77; *Schneiderman*, 808 F.3d at 124.  Both courts understood these laws to merely prohibit the addition of a credit card surcharge to the single price that was set for a particular product.  So understood, the laws regulated *conduct*, the prices charged for particular goods, rather than the expression used to advertise that price.  *Schneiderman*, 808 F.3d at 130 ("prices, though necessarily communicated through language, do not rank as 'speech' within the meaning of the First Amendment"); *Pettijohn*, 816 F.3d at 82 ("[T]he merchants' assertion Texas' law regulates what they say, rather than what they do, is unavailing.").[6]

While the Second and Fifth Circuits' constitutional reasoning is sounder than the Eleventh

_____

/2017/01/argument-analysis-merchants-seem-fall-short-challenge-new-york-statute-banning-credit-card-surcharges/.

[6] CRA relies on *Italian Colors Restaurant v. Harris*, 99 F.Supp.3d 1199 (E.D. Cal. 2015), in which the court concluded that California's credit-card surcharge law implicated the First Amendment.  But that district court decision came before any circuit court had addressed the issue, addressed the content/expression issue in a scant paragraph, and relied primarily on the district court decision in *Schneiderman*, which the Second Circuit subsequently overturned.  See *id*. at 1207.  The State's appeal of the district-court decision in *Italian Colors* is pending in the Ninth Circuit.

Circuit's, the circuit split over the propriety of credit card surcharge laws is largely based on whether those laws apply only to the addition of a surcharge in addition to a fixed, single price, or whether they bar "dual pricing" schemes in which discounts for cash—which the Eleventh Circuit viewed as economically indistinguishable—are simultaneously permitted.  The Ordinance at issue here is fundamentally different from these laws.  No one can plausibly argue that a menu price is economically or functionally equivalent to a "separately-designated amount" charged by a hospitality employer for service provided by hospitality workers (or one understood by customers to be for these services).  See Complaint, ¶ 42, Nov. 17, 2016, ECF No. 1.  Moreover, unlike the Ordinance, credit card surcharge statutes contained an absolute prohibition against the application of credit card surcharges, rather than a regulation defining the economic consequences of collecting a particular kind of payment.

Regardless of how the credit card surcharges cases are resolved by the Supreme Court or the Ninth Circuit, the Ordinance at issue here regulates commercial conduct and only incidentally implicates covered employers' speech.  It is economic regulation that readily passes rational basis review.  See *Nebbia v. New York*, 291 U.S. 502, 537 (1933).

      2.  <u>If the Ordinance Does Implicate Expression, it is a Valid Regulation of Commercial Speech</u>

"Although the boundary between commercial and noncommercial speech has yet to be clearly delineated, the 'core notion of commercial speech' is that it 'does no more than propose a commercial transaction.'" *Hoffman v. Capital Cities/ABC, Inc.,* 255 F.3d 1180, 1184 (9th Cir. 2001) (quoting *Bolger v. Youngs Drug Prod's Corp.,* 463 U.S. 60, 66 (1983); *Mattel, Inc. v. MCA Records, Inc.,* 296 F.3d 894, 906 (9th Cir. 2002).[7]  The transaction regulated by the Ordinance—and service charges that result from that transaction—are obviously commercial in nature.

---

[7] While the Ninth Circuit has recognized that *Central Hudson* suggested a broader definition of "commercial speech" that included "expression related solely to the economic interests of the speaker and its audience," *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n of New York*, 447 U.S. 557, 561 (1980) it has not applied that definition or retreated from the "core" definition of commercial speech as one proposing an economic transaction.  See *United States v. Schiff*, 379 F.3d 621, 626–27 (9th Cir. 2004).  The service charges that the Ordinance regulates are commercial speech (if they are expression at all) under either definition.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4817-2576-4675 v4     - 15 -     DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS 3:16-CV-06660-JST

CRA claims that the Ordinance regulates non-commercial speech because "a hospitality employer may choose to describe a service charge as a 'service charge imposed in response to and in protest of the City's oppressive minimum wage increase.'" Pl's. Opp. Mot. Dismiss 15 n. 8, Feb. 21, 2017, ECF No. 27.  This reasoning is baseless.  A business cannot avoid the government's broader power to regulate commercial speech by appending a political statement to the end of it, because nothing about the gratuitous political statement would change the government's interest in regulating the commercial speech at issue.  The Supreme Court long ago rejected the notion that commercial speech "link[ed] . . . to a current public debate" would thereby be entitled to greater protection.  *Central Hudson*, 447 U.S. at 563 n.5; see *Va. Bd. of Pharmacy*, 425 U.S. at 764 (giving as examples of *commercial* speech, "a manufacturer of artificial furs [who] promotes his product as an alternative to the extinction by his competitors of fur-bearing mammals" and "a domestic producer [who] advertises his product as an alternative to imports that tend to deprive American residents of their jobs").  Moreover, CRA has brought a *facial* challenge to the Ordinance.  If an individual restaurateur wishes to append a political statement to her service charge and argue that the City is censoring non-commercial speech, she should argue so in an as-applied challenge.

3.   If the Ordinance Regulates Expression, it Targets Misleading Commercial Speech.

Since the Ordinance regulates commercial speech, it is valid if it targets inherently misleading speech.  Even if the speech it targets is only potentially misleading, the Ordinance is still valid if it directly advances a substantial governmental interest and there is a "reasonable fit" between goals and means.  The Ordinance satisfies both of these tests.

a.   Any Speech Targeted by the Ordinance is Inherently Misleading.

To the extent it regulates expression at all, the Ordinance targets commercial speech that is inherently misleading: the imposition of charges that are actually for services provided by hospitality workers, or that are "described in such a way that customers might reasonably believe the amounts are for those services," but are not, in fact, paid to the workers who provide the service.  "When 'advertising is inherently *likely* to deceive *or* where the record indicates that a

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4817-2576-4675 v4                   - 16 -            DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS 3:16-CV-06660-JST

1    particular form of advertising has in fact been deceptive,' the advertising enjoys no First

2    Amendment protection." *American Academy of Pain Management v. Joseph*, 353 F.3d 1099,

3    1107 (9th Cir. 2004) (emphasis added) (quoting *In re RMJ*, 455 U.S. 191, 202-03 (1982)).

4         The Ordinance's definition of a "service charge" makes clear that it targets inherently

5    misleading commercial speech.  CRA cannot reasonably dispute that separately designated

6    charges that are *actually* for service provided by hospitality workers are inherently misleading (in

7    fact, fraudulent) if they are not, in fact, paid to those workers.  See Pl's. Opp. Mot. Dismiss 16,

8    Feb. 21, 2017, ECF No. 27.  It argues that "[b]usinesses could impose a . . . 'service' charge

9    because it costs the business more to . . . serve guests who dine in rather than order carry out

10   food."  Pl's. Opp. Mot. Dismiss 16, Feb. 21, 2017, ECF No. 27.[8]  But determining whether

11   commercial speech is misleading depends on the perspective of the *consumer*, not the business

12   that doing the speech (which obviously has the facts necessary to know what is behind its own

13   label).

14        CRA takes issue with the second definition of a "service charge": one that is "described in

15   such a way that customers might reasonably believe that the amounts" are for service provided by

16   hospitality workers.  But this is the very definition of an inherently misleading charge, if the

17   amounts collected are not actually paid to those workers.  The City is not required to demonstrate

18   that most or all customers are, in fact, misled by the charges, only that such confusion is

19   "inherently likely."  *American Academy of Pain Management*, 353 F.3d at 1107.[9]

20        CRA also claims that the Union has "conceded" that the service charges that the

21   Ordinance regulates are only "potentially misleading" because it recognizes that "'[t]he term

22   _____

23   [8] This example does not do the work that CRA wants it to, because most customers understand
     the additional cost of "dine-in" guests to be based on the service of the waiters and waitresses
24   who serve them.  That is why most people do not leave a significant gratuity when they order
     take-out food.

25   [9] The cases that CRA cites to support its view are off-point.  In *Alexander v. Cahill*, 598 F.3d 79,
26   89 (2d Cir. 2010), the government agency admitted that the regulation applied to only
     "potentially" misleading ads.  In *Grocery Manufacturers Association v. Sorrell*, 102 F.Supp.3d
27   583, 638-39 (D. Vt. 2015), there was no basis for concluding that the term "natural" did not apply
     to the "genetically engineered" foods at issue, and no evidence that use of the term had caused
28   confusion or deception.

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4817-2576-4675 v4                - 17 -                DEFENDANT'S REPLY IN SUPPORT OF
                                                           MOTION TO DISMISS 3:16-CV-06660-JST

'service charge' has no established commercial meaning[.]'" Pl's. Opp. Mot. Dismiss 16-17, Feb.

21, 2017, ECF No. 27.  But the lack of intrinsic meaning to commercial speech *increases* the

likelihood that it will cause deception or confusion.  *Friedman v. Rogers*, 440 U.S. 1, 12-13

(1978) ("Because these ill-defined associations of trade names with price and quality information

can be manipulated by the users of trade names, there is a significant possibility that trade names

will be used to mislead the public."); see *Ass'n of Nat. Advertisers v. Lundgren*, 44 F.3d 726, 732

(9th Cir. 1994).

        Even if the Ordinance's definition of "service charges" did not, on its face, target only

commercial speech inherently likely to mislead, there is ample evidence that use of the term

"service charge" does, in fact, lead to confusion because consumers understand service charges to

go to workers in the same way that the gratuity that the voluntarily leave do.  This point is

illustrated by IRS guidance memos, which equate "service charges" with an "automatic gratuity".

Internal Revenue Service, Topic 761 - Tips – Withholding and Reporting, available at

https://www.irs.gov/taxtopics/tc761.html (recognizing that "service charges" are "sometimes

called *auto-gratuities*").  City and state legislatures have come to the same conclusion.

*Davis v. Four Seasons Hotel Ltd.,* 122 Hawai'i 423, 228 P.3d 303, 313 (2010) (citing Hawai'i

Senate Committee determination that "'it is generally understood that service charges applied to

the sale of food and beverages by hotels and restaurants are levied in lieu of a voluntary gratuity,

and are distributed to the employees providing the service. Therefore, most consumers do not tip

for services over and above the amounts they pay as a service charge.'").  Courts have also

concluded that amounts designated as "service charges" are normally expected to go to servers.

See, *e.g.*, *Copantila v. Fiskardo Estiatorio, Inc*., 788 F.Supp.2d 253, 286 (S.D.N.Y. 2011)

(imposition of service charge violated New York law against employer retaining amount

"purported to be a gratuity," noting that it was "consistent with a general customer expectation

that the Banquet Service Charge is a gratuity").  And CRA itself recognizes risk of confusion

between service charges and tips.  Its website asks, "[w]hat is the solution to avoid confusion

between tips and service charges?" but says that "[t]here are a few options and restaurant owners

may not like any of them."  See http://www.calrest.org/mandatory-service-charges-vs-tips.html

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4817-2576-4675 v4                           - 18 -                    DEFENDANT'S REPLY IN SUPPORT OF
                                                                          MOTION TO DISMISS 3:16-CV-06660-JST

1   (last visited Feb. 18, 2017) (citing as restaurants' unsavory options: "[i]ndicate a 'suggested

2   gratuity' on the customer's receipt but do not add it to the total on the receipt allowing the

3   customer to designate the gratuity voluntarily"; and "[e]liminate all service charges and automatic

4   gratuities.").

5         CRA's claims that it is mere "speculation" or "conjecture" that service charges are seen

6   by consumers as a replacement for gratuity—and that "service charges" "convey only what the

7   charge is for, not to whom the money is going"—are themselves fanciful.

8               b.      Even if the Ordinance Only Regulated "Potentially Misleading"
                        Speech, it Would Easily Pass Muster Under *Central Hudson*.
9

10        Even if the Ordinance only targeted "potentially" misleading commercial speech, it easily

11  passes *Central Hudson* intermediate scrutiny.  See *American Academy of Pain Management*, 353

12  F.3d at 1107.   The Ordinance—like those in other states and cities—has two goals: preventing

13  consumers from being misled about the disposition of service charges and ensuring that service

14  charges are not imposed as a means of creating a *de facto* tip credit against the City's minimum

15  wage.

16        Both government interests are substantial.  There is no support for CRA's notion that

17  governments cannot have a substantial interest in regulating speech that is only potentially

18  misleading.  See *American Academy of Pain Management*, 353 F.3d at 1108 ("There is no

19  question that California has a substantial interest in protecting consumers from [potentially]

20  misleading advertising by medical professionals."); *Lungren*, 44 F.3d 726, 732 (undisputed that

21  "California had a substantial governmental interest in ensuring truthful environmental advertising

22  and encouraging recycling").

23        The City's interest in protecting its minimum-wage legislation is equally substantial.

24  Emeryville, like California, does not set a two-tier minimum wage or permit employers to credit

25  tips against their minimum-wage obligations.  This is mandated by state law.  See *American Hotel*

26  *& Lodging Ass'n*, 119 F.Supp.3d 1177, 1196 (C.D. Cal. May 13, 2015 ("The California Labor

27  Code *prohibits* the state and municipalities from establishing minimum wages that distinguish

28  between tipped and non-tipped workers."); *Henning v. Industrial Welfare Comm'n*, 46 Cal.3d

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4817-2576-4675 v4                    - 19 -                    DEFENDANT'S REPLY IN SUPPORT OF
                                                            MOTION TO DISMISS 3:16-CV-06660-JST

1262, 1279 (1988).  Cities like Emeryville are therefore reasonably concerned that employers of low-wage tipped employees like restaurants will apply a "service charge" and use a portion (or all) of the service charges that customers pay in lieu of gratuity to offset their minimum wage obligations.  This is no speculative threat.  CRA itself asserts that its "[m]embers are similarly situated to other employers in the city that employ persons who receive tips and who may seek to *offset the City's minimum wage increase* by imposing service charges."  See Complaint, ¶ 50, Nov. 17, 2016, ECF No. 1. (emphasis added).

The Ordinance directly advances these interests, and does so in a way that is a "reasonable fit" between the City's goals and its chosen means.  *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 632 (1995); *American Academy of Pain Management*, 353 F.3d at 1111.  CRA's claims to the contrary are all based on its belief that the Ordinance differs from laws in other states that mandate that "service charges" be paid over to employees unless the employer provides an express notification to its customers that the service charge does not go to employees.  Pl's. Opp. Mot. Dismiss 18-19, Feb. 21, 2017, ECF No. 27; see also Pl's. Opp. Mot. Dismiss 31, Feb. 21, 2017, ECF No. 27 (claiming that the "Ordinance provides no method by which the employer can designate a service charge as falling outside the ordinance.").  But this is a willfully obtuse reading of the Ordinance.  If a hospitality employer informs its customers that a "service charge" is not going to its employees, but is instead being retained by management, then the charge is neither actually "for service provided by Hospitality Workers" nor "described in a such a way that customers might reasonably believe that the amounts are for those services[.]"  See Sec. 5.37.04(a)(1).  Even if this were not crystal clear from the Ordinance's language, there would be no reason to read any ambiguity in the Ordinance to *create* a constitutional problem.  *NFIB v. Sebelius*, 132 S. Ct. 2566, 2593 (2012) ("[I]t is well established that if a statute has two possible meanings, one of which violates the Constitution, courts should adopt the meaning that does not do so.").

The Ordinance *does* clarify where service charges are going and *does* require hospitality employers wishing to keep service charges to inform their customers of such intent.  *Cf.* Pl's. Opp. Mot. Dismiss 18-19, Feb. 21, 2017, ECF No. 27.  It does this by creating a default rule that

1   customers can rely on: "service charges" are being paid to service workers (and thus no additional

2   gratuity is necessary) unless their employer tells me otherwise.  This places the burden on the

3   employer to notify customers if it plans to retain the service charges included with the customer's

4   bill.  *Cf.* 12 N.Y.C.R.R. § 146-2.18(b) (establishing rebuttable presumption that "any charge in

5   addition to charges for food, beverage, lodging, and other specified materials or services,

6   including but limited to any charge for 'service' or 'food service,' is a charge purported to be a

7   gratuity.").

8       **C.**      **The Service Charge Requirement Does Not Violate Equal Protection**

9       CRA concedes, as it must, that its equal protection challenge is subject to rational basis

10  review.  It contends, however, that the Ordinance cannot satisfy this standard because:  (1) the

11  Ordinance does not apply to all tipped employees; and (2) the Ordinance exempts governments

12  from its provisions.  Neither argument is persuasive.

13          1.      A Rational Basis Exists for Limiting the Ordinance to Hotels, Restaurants,
                    and Banquet Facilities

14

15  CRA argues that there is no rational basis for Emeryville's decision to limit the Service

16  Charge Requirement to Hospitality Employer.  Pl.'s Opp. Mot. Dismiss 20, Feb. 21, 2017, ECF

17  No. 27.  To support this proposition, CRA cites to *Walgreens Co. v. City and County of San*

18  *Francisco*, 185 Cal.App.4th 424 (2010).  Pl.'s Opp. Mot. Dismiss 20, Feb. 21, 2017, ECF No. 27.

19  *Walgreens* supports the opposite conclusion. In *Walgreens*, the court considered whether an

20  ordinance that prohibited the sale of cigarettes at stores called Pharmacies, but did not prohibit the

21  sale of cigarettes in stores that had pharmacies in them, but did not call themselves Pharmacies,

22  violated the Equal Protection Clause.  *Walgreens*, 185 Cal.App.4th at 428.  The City claimed this

23  distinction was valid because the implied message conveyed by sale of cigarettes at a stored

24  called a "Pharmacy" was different than the implied message conveyed by the sale of cigarettes at

25  stores with pharmacies in them.  *Id.* at 437.  The complaint challenging the ordinance alleged that

26  this basis was false, e.g., that there was no difference in the implied message conveyed by the sale

27  of cigarettes at the two categories of store.  *Id.*  The complaint also contained numerous

28  allegations about the similarities between Walgreens stores and general grocery stores, which

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4817-2576-4675 v4            - 21 -            DEFENDANT'S REPLY IN SUPPORT OF
                                                   MOTION TO DISMISS 3:16-CV-06660-JST

1   undermined the distinction.  *Id.* at 438-439.  Based in large part on those allegations, the Court

2   concluded that Walgreens could proceed on its Equal Protection claims.  *Id.* at 444.

3          Here, there are no such allegations because, in contrast to *Walgreens*, the basis for only

4   including hotels, restaurants and banquet facilities is not a difference in customer perception, it is

5   the fact that service charges are far more common in these hospitality industries. The rationality

6   of this conclusion is bolstered by language in the Santa Monica staff report that CRA references,

7   which states it "is very common for hotels to use service charges, and more restaurants are

8   considering introducing this business practice" and that "hotels often use service charges as a

9   means to offset some administrative or other operational or person."  Local 2850's RJN Exh. 5,

10  Cite of Santa Monica Staff Report.  It is also bolstered by CRA itself, which stated in a memo

11  discussing an IRS policy on mandatory service charges versus tips, that "[t]his policy presents a

12  myriad of problems to operators in the hospitality industry, and in particular to companies that are

13  in the business of hosting banquets, private or similar events because it has long been industry

14  practice for these types of businesses to add a mandatory "gratuity" or service charge to their

15  banquet contracts or invoices."  See California Restaurant Association, Mandatory Service

16  Charges Versus Tips and Surcharges," available at: http://www.calrest.org/mandatory-service

17  charges-vs-tips.html (last visited Feb. 18, 2017).

18         CRA relies on a second-hand report about a study that is not in the record to claim that

19  most tipped employees are "outside of the restaurant industry."  Doc. 27, at 21 (*quoting* Doc. 16-

20  3, Exh. 5).  Even if that were true, the Ordinance does not only cover the "restaurant" industry, it

21  covers hotels and banquet facilities as well.  And a comprehensive economic study has concluded

22  that the food-service industry is the primary employer of tipped workers:  "The restaurant

23  industry is an intense user of both minimum-wage and tipped-wage workers, with more than 60

24  percent of tipped workers employed in food service.  The full-service restaurant sector has grown

25  about 86 percent from 1990 to 2013, while overall growth in the private sector was up 24

26  percent—illustrating why it is increasingly important to raise wages for these workers."  Sylvia

27  Allegretto and David Cooper, TWENTY-THREE YEARS AND STILL WAITING FOR CHANGE: WHY

28  IT'S TIME TO GIVE TIPPED WORKERS THE REGULAR MINIMUM WAGE (Economic Policy Institute

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4817-2576-4675 v4                          - 22 -          DEFENDANT'S REPLY IN SUPPORT OF
                                                               MOTION TO DISMISS 3:16-CV-06660-JST

1    2014), at 7, available at: http://www.epi.org/files/2014/EPI-CWED-BP379.pdf.  The same report

2    concludes, based on an analysis of census data, that classifications covered by the Ordinance

3    make up over 70% of tipped employees nationally.  See *id*. at Table A-2, p. 23.

4         In order to make out an equal protection claim, the burden is on CRA to "negate every

5    conceivable basis that might support the legislative classification."  *Garcia v. Four Points*

6    *Sheraton, LAX*, 188 Cal.App.4th 364, 383 (2010); *FCC v. Beach Communications*, 508 U.S. 307,

7    315 (1993); *Walgreens*, 185 Cal.App.4th at 435.  Not only has CRA failed to satisfy that burden,

8    its own statements regarding what constitutes industry practice in the hospitality industry prove

9    that the City's decision to limit the Ordinance to the hospitality industry was a rational one.  As

10    *Walgreens* made clear, to survive rational basis review, the legislative choice need only be "based

11    on rational speculation" it does not need to be supported by "evidence or empirical data."

12    *Walgreens*, 185 Cal.App.4th at 436.  That standard is plainly satisfied here.  The Ordinance

13    targets restaurants, hotels, and banquet facilities because those are the employers that most

14    frequently use service charges.  In that sense, the Ordinance looks virtually identical to the

15    Ordinances that were upheld in *Fortuna Enters., L.P. v. City of L.A.,* 673 F.Supp.2d 1000 (C.D.

16    Cal. 2000), *Garcia*, and *R.I. Hosp. Ass'n v. City of Providence,* 667 F.3d 17 (1st Cir. 2011).  In

17    each of those cases, the Court rejected an equal protection challenge to ordinances that only

18    targeted a segment of an industry because the legislative body identified the need to be greatest in

19    that segment of the industry.  That is precisely what the Ordinance does.  It targets the hospitality

20    industry because that is where the need is greatest.  This kind of incremental approach to a

21    problem does not violate the equal protection clause.  See *RUI One v. Corp. v. City of Berkeley*,

22    371 F.3d 1137, 1154.

23         2.    <u>A Rational Basis Exists for Exempting Government Employees</u>

24         CRA also takes issue with the portion of the Ordinance that excludes government agencies

25    from the definition of Hospitality Employer.  This exclusion is based on the determination that

26    employees of government agencies do not receive or rely on, income from tips or gratuities.

27    CRA claims that this argument is not "compelling", and suggests that the basis for this exclusion

28    is inaccurate because the City must have "contemplated the possibility that there could be

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4817-2576-4675 v4      - 23 -      DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS 3:16-CV-06660-JST

1   governmental employers who operate banquet facilities".  But this is pure speculation.  CRA

2   provides no evidence that there are any government agencies in the City that run banquet facilities

3   and impose service charges.  Even if there were, the reason governmental agencies are excluded

4   is because their employees do not receive or rely on income from tips and gratuities in the same

5   way that employees of restaurants, hotels, and banquet facilities do.  This "rational speculation" is

6   sufficient to satisfy the equal protection clause, particularly since CRA has done nothing to negate

7   it.  *Walgreens*, 185 Cal.App.4th at 441.

8      None of CRA's equal protection arguments have any validity.  As CRA itself has

9   acknowledged, imposing service charges that go to the employer, not the employee is a

10  longstanding practice in the hospitality industry.  Therefore the City had a rational basis to limit

11  the Ordinance to that industry.  CRA's Third Cause of Action for violations of equal protection

12  should be dismissed.

13  **II.    THE SERVICE CHARGE REQUIREMENT IS NOT PREEMPTED BY FEDERAL OR STATE LAW**

14

15     CRA's theories that the Ordinance is preempted by various state and federal tax and labor

16  laws are completely unfounded.  CRA is confused both about the scope of the laws it claims

17  preempt the Ordinance and about the scope of the Ordinance itself.

18     **A.    The Ordinance is Not Preempted by Federal Tax Law**

19     CRA claims that the Ordinance is preempted because it "disrupts" the IRS's requirements

20  for withholding of taxes from non-tip wages by requiring employers to treat service charges in the

21  same way they treat tips, but prohibiting them from withholding taxes from other, non-service

22  charge wages, as the Internal Revenue Code requires.  Pl's. Opp. Mot. Dismiss 25, Feb. 21, 2017,

23  ECF No. 27 (*citing* 26 U.S.C. § 3102(c)(1))  This argument is baseless.

24     The Ordinance does not say that service charges must be treated in the same way as tips; it

25  says that they must be "*paid* over in [their] entirety" to covered employees by "not later than the

26  next payroll[.]"  Sec. 5-37.04(b)(1).  This is most reasonably interpreted as permitting employers

27  to withhold taxes directly from service-charge income, which must be paid to employees as

28  wages.

1   Even if the Ordinance treated service charges in the same way as gratuities, nothing in the

2   Ordinance prevents covered employers from withholding taxes from the non-service-charge

3   portion of wages.  CRA claims that Section 5.37.04(b)(4) of the Ordinance does this, but that

4   section reads: "No hospitality employer or agent thereof shall deduct any amount from wages due

5   an employee on account of a service charge[.]"  There is no basis for reading the term "wages

6   due" an employee to include federal taxes that are required to be withheld.  Those amounts are

7   not "wages due" to an employee, but are "taxes due" to the federal government.  CRA has again

8   misread the Ordinance in order to create a constitutional problem where none exists.

9   Indeed, California Labor Code § 351 contains a similar mandate that "[n]o employer or

10   agent shall . . . *deduct any amount from wages* due an employee on account of a gratuity."

11   (emphasis added).  CRA claims that the City's citation to California Labor Code § 351

12   demonstrates "a lack of understanding as to how tip income is taxed."  Doc. 27, at 25.  But it is

13   CRA that misses the point.  Under CRA's construction of the Ordinance, the Labor Code would

14   *also* prohibit employers from withholding taxes on gratuities from employees' non-tip wages

15   ("deduct[ing] any amount from wages due")—something that no one has previously suspected the

16   Labor Code of doing.  If CRA's construction of the Ordinance were accepted, both the Labor

17   Code and the Ordinance would prohibit any amounts paid to employees as gratuities from being

18   taxed at all.  Such is not the law.  Employers have been complying with the Labor Code, service

19   charge requirements like those contained in the Ordinance, and federal tax laws for years with no

20   conflict.

21   **B.    The Ordinance is Not Preempted by the FLSA.**

22   CRA maintains that the Ordinance is preempted by the Fair Labor Standards Act and that

23   the Court must give deference to Department of Labor's interpretations of that statute.  These

24   arguments are wildly off the mark and betray a fundamental misunderstanding of the relationship

25   between the FLSA and state and local wage standards.

26   First, there is no basis for CRA's belief that the DOL, in the course of determining

27   employers' federal minimum-wage obligations and the scope of the available tip credit, was

28   actually establishing some unassailable, federal employer "property right" to service charges.  *Cf.*

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4817-2576-4675 v4          - 25 -          DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS 3:16-CV-06660-JST

Pl's. Opp. Mot. Dismiss 3; 27, Feb. 21, 2017, ECF No. 27.  Congress enacted the FLSA to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a).  The Act's goal is not to grant immutable property rights to employers at the sake of their employees.

Nor was the FLSA intended to displace state and local laws that set higher or more comprehensive wage standards.  That is why the Act contains a express savings clause: "[n]o provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter[.]" 29 U.S.C. § 218(a).  As CRA admits, the FLSA merely sets a national floor from which states may enact legislation that is more protective, both in its substantive benefits and in the scope of its coverage.  Pl's. Opp. Mot. Dismiss 25, Feb. 21, 2017, ECF No. 27; *Pacific Merchant Shipping Ass'n v. Aubry*, 918 F.2d 1409 (9th Cir. 1990).

The regulations that CRA cites, and the DOL interpretations of those regulations, have to do with the treatment of tips and service charges for purposes of the FLSA's tip credit against federal minimum-wage requirements.  See Pl's. Opp. Mot. Dismiss 26-27, Feb. 21, 2017, ECF No. 27.  But these regulations and opinion letters have no application in California, where employers are prohibited from "crediting" gratuity toward minimum wages and required to pay the state minimum wage, even to tipped employees.  See Labor Code § 351; *Henning*, 46 Cal.3d at 1279.  CRA's argument that the Court should defer to DOL interpretation of these regulations makes no sense in a State (and City) in which the FLSA's lower minimum wage and tip-credit system are superseded by more beneficial state and local law.  See Cal. Labor Code § 1205(b).  CRA has not, and cannot, point to any impediment to its members complying with Emeryville's minimum-wage and service-charge requirements while simultaneously complying with the FLSA.

Other courts that have entertained arguments like the ones CRA makes here have squarely rejected them.  *Luiken v. Domino's Pizza, LLC*, 654 F.Supp.2d 973, 981 (D. Minn. 2009) (rejecting argument that state provision barring crediting of "delivery charge" against minimum-wage obligations conflicted with FLSA); *Davis v. Four Seasons Hotel Ltd.*, 810 F.Supp.2d 1145,

1   1155 (D. Haw. 2011) (Hawaii service-charge statute "does not conflict with FLSA regulations

2   differentiating compulsory service charges from a tip.  The FLSA does not prohibit service

3   charges from being distributed to employees as tip income.").  These rulings did not turn on the

4   fact that the statutes at issue permitted employers to expressly state that service charges would not

5   go to employees, *cf.* Pl's. Opp. Mot. Dismiss 27-28, Feb. 21, 2017, ECF No. 27, but on the fact

6   that the FLSA does not preclude states from adopting more stringent minimum wage protections.

7   **C.    The Ordinance is Not Preempted by State Sales Tax Law**

8   CRA's claim that the Ordinance is preempted by Board of Equalization Regulation 1603

9   fares no better.  That regulation does not define service charges as the "property" of employers,

10  nor does it say anything about whether or not service charges must be paid to employees.  It

11  merely distinguishes between voluntary gratuities and mandatory service charges for purposes of

12  the State's imposition of sales tax.  18 C.C.R. § 1603(h) ("[a] mandatory payment designated as a

13  tip, gratuity, or service charge is included in taxable gross receipts, *even if it is subsequently paid*

14  *by the retailer to employees*.") (emphasis added).  On its face, Regulation 1603 is indifferent to

15  service charge allocation.  Whether service charges are allocated to the employer or the employee

16  has absolutely no relationship to the charges' taxability under state sales tax law.

17  Moreover, the fact that the BOE considers service charges to be "taxable gross receipts"

18  does not make those amounts inalienable employer property.  *Cf.* Pl's. Opp. Mot. Dismiss 26-27,

19  Feb. 21, 2017, ECF No. 27.  Indeed, under state and local laws, employers must routinely use

20  their gross receipts to pay other statutorily required minimum wages, overtime, and employee

21  benefits.  IRS Tax Guide for Small Business, Publication 334 (2016); Cal. Rev. & Tax Code, §

22  6012(a)(2).  California sales tax law even requires employers, who impose a "health surcharge" in

23  compliance with the City of San Francisco's employment regulation, to include the surcharge in

24  their gross receipts and collect and pay sales tax on the charge, despite acknowledging that the

25  charge must be paid to employees in its entirety.  BOE Publication 115, Tips, Gratuities, and

26  ///

27  ///

28  ///

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4817-2576-4675 v4                          - 27 -               DEFENDANT'S REPLY IN SUPPORT OF
                                                                    MOTION TO DISMISS 3:16-CV-06660-JST

1   Service Charges (May 2015).  Employers are often required to include revenue in their taxable

2   gross receipts that they are legally obligated to pay to their employees.[10]

3       Putting aside CRA's breathless talk of "municipal transmutation of property" and jailing

4   restaurant patrons "for refusing to pay what the City has functionally ordained as a tip," there is

5   no impediment to employers complying with the Ordinance and Regulation 1603.  An employer

6   covered by the Ordinance can add a "service charge" to its customer bill and then collect sales tax

7   on that additional amount – just as restaurants that *voluntarily* distribute service charges to their

8   employees in jurisdictions that lack a law similar to the Ordinance have routinely done for years.

9   See *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F.Supp.2d 901, 929-930 (S.D.N.Y. 2013) (service

10  charges part of taxable gross receipts even if given to employee.)  The sales tax is paid by the

11  customer as part of their bill and then used by the employer to satisfy its sales tax obligation.

12  This arrangement has never created a conflict when applied to taxable service charges.

13      **D.     The Ordinance is Not Preempted by California Labor Code §§ 350-356.**

14      CRA's contention that the Ordinance is preempted by the California Labor Code

15  provisions dealing with employers' treatment of gratuities has already been conclusively rejected

16  by the California Court of Appeal.  *Garcia*, 188 Cal.App.4th at 377-79.  CRA provides no reason

17  to override this settled interpretation of state law.

18      The court of appeal in *Garcia* correctly interpreted Labor Code §§ 350-356 as regulating

19  "gratuities"—something different from the "service charges" regulated by a Los Angeles

20  ordinance substantially similar to the Ordinance here.  As the court recognized, "[a] gratuity is not

21

22  [10] CRA cites *Davis v. 2193 Niagara Street* 2016 U.S. Dist. Lexis 98351 (W.D.N.Y. 2016), but
    that case actually supports the Ordinance.  There, the defendant employers argued that a New

23  York law requiring service charges to be paid to employees unless employers disclosed to their
    customers that the charge was retained by the business and not shared with staff was preempted

24  under federal employment tax and state sales tax laws.  *Id.* at *8-9.  The court disagreed and held
    that the fact that the "mandatory charge may be subject to both withholding taxes, whether paid

25  by Defendants or Plaintiffs, as well as New York sales tax paid by Defendants" does not
    "establish that it is impossible to comply with both federal and state tax laws."  *Id.* at *9.

26  Accordingly, the court concluded that service charges could be part of employers' taxable gross
    receipts for sales tax purposes and be subject to federal withholdings, because they were legally

27  required to be paid to employees, without creating a conflict.  *Id.*  There, as here, the payment of
    mandatory service charges to employees is completely compatible with federal and state tax laws.

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4817-2576-4675 v4                     - 28 -                     DEFENDANT'S REPLY IN SUPPORT OF
                                                            MOTION TO DISMISS 3:16-CV-06660-JST

1    a service charge.  A service charge is a separately designated amount collected by a hotel from

2    patrons that is part of the amount due the hotel for services rendered, rather than something 'over

3    and above the actual amount due.'"  *Garcia*, 188 Cal.App.4th at 377 (*quoting* Labor Code §

4    350(e)).  In other words, a "gratuity" regulated by Labor Code §§ 350 et seq. is an amount over

5    and above the amount that the customer is required to pay (the "actual amount due"); it is a

6    voluntary payment.  The DLSE opinion letter that CRA cites is consistent with Garcia's

7    recognition that Labor Code § 350 does not regulate service charges and so there is no conflict

8    between that section and a local law that <u>does</u> regulate service charges, like the Ordinance.  DLSE

9    Op. Letter No. 2000.11.02, at p. 2.[11]

10        The *Garcia* court also rejected the contention that Labor Code §§ 350 *et seq*. defined

11   service charges as employer property.   *Garcia*, 188 Cal.App.4th at 377 ("The definition of

12   gratuity in section 350, subdivision (e) does not define employers' property rights; it establishes

13   the meaning of 'gratuity' as that term appears elsewhere in the statute."); *Id.* ("The legislative

14   history does not suggest the Labor Code sections governing gratuities set property lines between

15   an employer and employee; the line always has been drawn to define an employees' right to

16   gratuities."); *Id.* at 381 ("The Legislature . . . has not expressed a paramount concern to ensure

17   that employers have absolute ownership of business revenue designated as a 'service charge.'").

18   Accordingly, there is no conflict between local laws regulating the disposition of service charges

19   and Labor Code §§ 350 *et seq.*

20        As a final gambit, CRA claims that *Garcia*'s ruling is undermined by *O'Connor v. Uber*

21   *Technologies, Inc*., 2013 WL 6354534, No. C-13-3826-EMC (Dec. 5, 2013).  *O'Connor*

22   addressed a different question: whether Uber's practice of "falsely advertising that *gratuity* is

23   included in the fare, even though the full gratuity is not passed along to the drivers," violated

24   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.

25   _____

26   [11] CRA again mischaracterizes this opinion letter as "acknowledging that service charges are
     employer *property* under California labor law." Pl's. Opp. Mot. Dismiss 34, Feb. 21, 2017, ECF

27   No. 27.  The opinion letter does no such thing.  It states that service charges are not "gratuities"
     because they are *mandatory* charges.  In interpreting what a "gratuity" is under Labor Code §

28   350, it does not establish some implicit, inalienable employer right to retain service charges.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4817-2576-4675 v4                    - 29 -          DEFENDANT'S REPLY IN SUPPORT OF
                                                         MOTION TO DISMISS 3:16-CV-06660-JST

1    *O'Connor*, 2013 WL 6354534, at *1, 7 (emphasis added).  The Court "reject[ed] Defendants'

2    argument that the included gratuity charged by Uber is the equivalent of a mandatory 'service

3    charge,' which the Court in *Garcia* found not to be a gratuity within the meaning of the Labor

4    Code." *Id*. at *10.  Nor did the Court question *Garcia's* ruling that the Labor Code did not

5    preempt Los Angeles' regulation of service charges.  *Id*. *O'Connor* was mistaken to say that

6    *Garcia*'s ruling was based solely on the ability of local governments to set higher minimum-wage

7    standards and that its determination that service charges are not gratuities under Labor Code §

8    350 was *dicta*.  See *id*.; *Garcia*, 188 Cal.App.4th at 377.  But the Court immediately made clear

9    that "[e]ven if it were not *dicta*, the hotel service charges in Garcia are distinguishable from

10   Uber's inclusion of 'gratuity' in its charges." *O'Connor*, 2013 WL 6354534, at *10. *O'Connor*

11   does not deal with "service charges."  It stands for the unremarkable principle that an employer

12   who tells customers that their "gratuity" is included in the price of the ride violates the UCL if it

13   does not remit that "gratuity" to its drivers.[12]

14                                   **CONCLUSION**

15          For the foregoing reasons, Emeryville respectfully requests that this Court grant its

16   Motion to Dismiss.

17   Dated: February 28, 2017                    BURKE, WILLIAMS & SORENSEN, LLP

18

19                                               By: */s/ J. Leah Castella*
                                                     J. Leah Castella
20                                                   Benjamin L. Stock
                                                     Attorneys for Defendant
21                                                   CITY OF EMERYVILLE

22   Dated: February 28, 2017                    McCracken, Stemerman & Holsberry, LLP

23

24                                               By: */s/ Paul L. More*
                                                     Paul L. More
25                                                   Attorneys for Intervenor
                                                     UNITE HERE Local 2850

26

27   _____
     [12] Of course, if CRA were correct that *O'Connor*'s reasoning applies to mandatory "service
28   charges," then the Ordinance's service-charge protections would be extended statewide through
     Labor Code §§ 350-356, an outcome that one would presume CRA wishes to avoid.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4817-2576-4675 v4                  - 30 -        DEFENDANT'S REPLY IN SUPPORT OF
                                                     MOTION TO DISMISS 3:16-CV-06660-JST